**ORAL ARGUMENT NOT YET SCHEDULED**

No. 15-7028

_____

**IN THE**

# United States Court of Appeals for the District of Columbia Circuit

LUCY Y. LU, *et al*

Plaintiffs-Appellants,

v.

MARK LEZELL

Defendant-Appellee

On Appeal from the

**United States District Court for the District of Columbia**

**Case No. 1:11-cv-1815 (Hon. James Boasberg)**

_____

# APPELLANTS'CORRECTEDOPENING BRIEF

_____

Ning Ye, Esq.
Counsel for the Appellants for the Record
36-26A Union Street
Suite 3 F
Flushing, NY 11354
Tel.: (718) 308-6626
Facsimile: (718) 228-5816
Email: ynyale@aol.com

August13, 2015

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28.1(a)(1), the undersigned counsel for Appellantsin the above-captioned matter submits this Certificate of Parties, Rulings, andRelated Cases.

**(A) Parties and amici**

Plaintiffs in the court below and Appellants in this Court are:

Lucy Yingqing Lu, Afshan Afsharnia, and Oklahoma Shelf Exploration Development Corp. (OSED)

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, the undersigned counsel further submits that:

Lucy Yingqing Lu is a natural person and a DC resident, she is a Plaintiff and Appellant here in this instant appeal;

Afshin Afsharnia is a natural person and a resident of the Commonwealth of Virginia, he is a Plaintiff and Appellant here in this instant appeal; Oklahoma Shelf Exploration Development Corp. (OSED) is a privately owned commercial and business corporation which is situated at Oklahoma City, Oklahoma State.Oklahoma Shelf Exploration Development Corp. (OSED) has no parent company and not a publicly owned corporation.

Defendant in the court below and Appellee in this Court is Mark L. Lezell, a natural person and a resident of the State of Maryland.

No amici curiae have appeared in this case

**(B) Rulings Under Review.** Appellants seek review of the District Court's Judgment on March 6, 2015 (Docket 162) as the direct or indirect outcome of erroneous Jury Instruction (Doc 156/ JA 54); Minute Order discharging Juror Frederick Carver in the mid of jury deliberation on March 4, 2015; Trial Court's Memorandum and Order dated 01/25/2013, dismissing "State Common Law Claims" (Docket 53) ; Memorandum and Order dated 05/27/2014, dismissing "State  Common Law Claims"

(Docket 113); Erroneous Jury Instruction (Doc 156/ JA 54)

**(C) Related Cases.** There are two related cases in the next-door court room: U.S. Bankruptcy Court under the Hon. Martin Teel. (Lucy Lu, et al v. Mark Lezell; 15-104 and Lucy Lu v. Isam Ghosh, 15-103) These two cases were Petitions for Involuntary bankruptcy initiated by petitioners *pro se* starting 02/26/2015. This undersigned made a special appearance on behalf of the petitioners under urgent call on March 2, 2015, the same morning of the trial date for case 11-1815. Lucy Lu, et al v. Mark Lezell (15-104) was dismissed with prejudice in June, with the penalty of $10,630.00 fees, for filing an involuntary bankruptcy without contingency, and for this undersigned to "have *initiated* the bankruptcy proceedings and *signed* the petition" . This undersigned was held for jointly and severally liable for the penalty of $10,630.00.This undersigned filed a Motion to Reopen and Reconsider, being denied in July. An NOA will soon be filed. Lucy Lu, et al v. Isam Ghosh (15-104), *pro se,* is still pending disposition.

To the best of counsel's knowledge, there is no other relatedcases except the Bankruptcy cases, currently are pending in this Court or in any other federal court of appeals,nor in any other court in the District of Columbia./s/Ning Ye, Esq. Statement of Jurisdiction

*Counsel for Appellants*

## TABLE OF CONTENTS

1. **Statement of Jurisdiction**                                    **1**

**2. Statement of the issues**                                    **1**

**3. Statement of the Case**                                    **2**

**4. Standard of Review**                                    **12**

**5. Argument**                                    **13**

**5.1. Summary of Arguments**                                    **13**

**Argument I: <u>Arguments I: In A Jury Trial that Requests for 8-Juror Unanimous Vote, A Discretional Discharge of a Selected Juror Prior to Jury Deliberation without Just Cause is An Abuse of Discretion</u>**                                    **14**

**Argument II:<u>Argument II: The Jury Was half-Blindfolded involving in the March 2015 Trial Because the Lower Court Abused Its Discretion by Having Summarily Dismissed All Other Claims in the TAC with Prejudice</u>**                                    **18**

Argument III: **<u>Instead of"1" or "0" , 1 +1 +1 Sho ul d Be "3 ", the Trial Co urt's 0 1/ 25 /20 13 a nd 05/ 27/ 20 14 Pretrial Summary Judgment Should be Reversed</u>**                                    26

**Argument IV: <u>Reversible Errors Regarding Jury Instruction</u>**                                    30

**<u>Argument V: Trial Court Erred by Its Refusal to Help the Jury</u>**                                    **37**

7. **<u>CONCLUSION</u>**                                    38

8. **<u>STATEMENT OF RELATED CASES PER 2nd CIRCUIT</u>**                                    **39**

9. **<u>Certificate of Compliance</u>**                                    40

10. **<u>CERTIFICATE OF SERVICE</u>**                                    41

## TABLE OF AUTHORITIES

BECK v. PRUPIS (98-1480) 529 U.S. 494 (2000)-------------------------------------1
Halberstam v. Welch 705 F. 2d 472, DC Cir. 1983-------------------------------------1
Lucy Lu, et al v. Mark Lezell, et al-------------------------------------------------------2
Durland v. United States, 161 U.S. 306, 313 (1896).-------------------------------9
CroixlandProperties Ltd. v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999) ---------12
(Sparrow v. United Air Lines, Inc., 216. F.3d 1111, DC Cir.2000) ------------------12
Kassem v. Wash. Hosp. Ctr., 513 F.3d 251, 253 (D.C.Cir.2008).--------------------12

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507

U.S. 163, 164(1993),-----------------------------------------------------------------------13

Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979).----------------------13

Perez v. Marshall, 119 F.3d 1422, 1426 (9th Cir.1997)-------------------------------13

United States v. Shenberg, 89 F.3d 1461, 1472 (11th Cir.1996)---------------------13

Johnson v. Booker T. Washington Brd. Serv., 234 F.3d501,507(11th Cir. 2000)-- 13

*SEDIMA, S.P.R.L. v. IMREX CO., et al.473 U.S. 479, 1985, ------------------13

Crocker Nat. Bank v Rockwell Int'l Corp. (555 F. Supp. 47 (N.D. Cal.1982) ---13

BECK v. PRUPIS (98-1480) 529 U.S. 494 (2000)------------------------------------14

Halberstam v. Welch 705 F. 2d 472, DC Cir. 1983------------------------------------14

*Turner v. State of Louisiana* 472, 85 S.Ct. at 549------------------------------------16

*Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)---16

Gibson v. Clanon, 633 F.2d 851, 854 (9th Cir.1980), cert. denied, 450 U.S. 1035, 101

S.Ct. 1749, 68 L.Ed.2d 231(1981).----------------------------------------------------16

Schad v. Arizona,501 U.S. 624, 634 n. 5, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) -16

United States v. Araujo, 62 F.3d 930 (7th Cir.1995)---------------------------------16

Brecht v.Abrahamson,507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)-16

United States v. Essex, 734 F.2d 832 (D.C.Cir.1984)-------------------------------17

United States v. Spence 163 F.3d 1280, 11th Cir. 1998 ----------------------------17

United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.1977), cert. denied, 434 U.S.

818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).-------------------------------------------17

Murray v. Laborers Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir.1995) --17

United State v. Ross, 886 F.2d 264, 267 (9th Cir.1989).-------------------------------18

United States        v. Thomas, 116 F.3d 606, 618 (2d Cir.1997)----------------------18

United States v. Thomas, 116 F3d 606, 2nd Cir. 1997.-----------------------------------18

Lewis v. Denison, 2 App.D.C. 391 (1894).--------------------------------------------------23

*Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 319-20 (D.C. 2008)-----------24

Hobson v. Wilson, 237 U.S.App.D.C. 219, 253, 255 n. 113, 737 F.2d 1, 35, 37 n. -24

Jones v. Meridian Towers Apts., 816 F.Supp. 762, 770-71 (D.D.C.1993) ------------24

*Weisberg v. Williams, Connolly & Califano, 390 A.2d 992, 996 (D.C.1978) ------25
Puchner v. Bache Halsey Stuart, Inc., 553 So.2d 216, 21 Fla. 3d DCA 1989---------26
Green v. Bartel, 365 So.2d 785, 788 (Fla. 3d DCA 1978) ------------------------------26
Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192, 1204 (D.C.1984) ------------------26
*Diamond v. Davis, 680 A2d 364 DC Court of Appeals, 1996   ---------------------26
Atchinson v. District of Columbia, 73 F.3d 418, 421-22 (D.C. Cir. 1996------------27
Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983) ---------------------------27
Calhoun v. Johnson, 632 F.3d 1259, 1261 (D.C.Cir.2011)------------------------------28
Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1292 (D.C .Cir.1998) ----------------------28
First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968),---------29
ANDERSON v. LIBERTY LOBBY, INC., 477 U.S. 242 (1986) (1986)------------29

LLP v. St. Paul Fire & Marine Ins. Co., 870 A.2d 58, 62 (D.C. 2005) --------------29

Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156
F.3d 1284, 1288 (D.C. Cir.1998) -----------------------------------------------------------29
Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir.1998) ----------------------29
*SEDIMA,  S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, 105 S.Ct. 1985----------29
*United States v.Turkette, 452 U.S.576,585,101S. Ct.2524, 69 L.Ed.2d246(1981) 30
*Wall Data Inc. v Los Angeles Cnty Sheriff's Dep't, 447 F.3d 769,784 (9thCir.2006) 30
Boyd v. United States 116 U.S. 616, 1886. --------------------------------------------------31
*SEDIMA,  S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, (1985),------33, 34, 35, 37

*Crocker Nat. Bank v Rockwell Int'l Corp.(555 F. Supp. 47 (N.D. Cal.1982,)-------33-

United States v. Thordarson, 646 F.2d at 1328 n.10;-----------------------------------33

United States v. Campanale, 518 F.2d at 363-64. --------------------------------------33

United States v. Thordarson, 646 F.2d at 1329 n.10-----------------------------------33

United States v. Campanale, 518 F.2d 352, 363-64 (9th Cir. 1975), -----------------34

United States v. Thordarson, 646 F.2d 1323, 1328, n.10 (9th Cir. 1981)------------34

United States v. Turkette, 452 U.S. 576, 585 (1981)--------------------------------34

*United States v. Ward, supra,* 448 U.S., at 248-251, 100 S.Ct., at 2641-2642-------36

*Reiter v. Sonotone Corp.,* 442 U.S. 330, 344 (1979). ----------------------------------37

***United States v. Turkette,* 452 U.S. 576, 586-587 (1981)---------------------------36, 38**
***Haroco, Inc. v. American National Bank & Trust Co. of Chicago------------------36***

*Alcindore v. United States, 818 A.2d 152, 155 (D.C. 2003)-------------------------36
*Caribbean Broad. Sys.,Ltd.v. Cable & Wireless PLC, 148 F.3d 1080, 1086
(D.C. Cir. 1998)---------------------- -------------------- ------------------------------------36
*Atchinson v. District of Columbia, 73 F.3d 418, 421-22 (D.C. Cir. 1996)---------36
*Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983) p35-------------------36

## Statutes,  Regulations and Legislative Records:

28 U.S.C. § 1291                                                          1

Racketeer Influenced and Corrupt Organizations Act ("RICO")

18 U.S.C. §§  1961-1968                                                   1, 33

28 U.S.C. § 1254                                                         1

18 USC § 1341(mail and wire fraud)                                      1

28 USC § 1331 Federal Question Jurisdiction                             1

28 USC § 1332, Diversity of Citizenship Jurisdiction                    1

18 U.S.C. § 1961(1)(B). 18 U.S.C. § 1962. 18 U.S.C. § 1964(c).

Racketeer Influenced and Corrupt Organizations Act ("RICO")            1

28 USC § 1367                                                           1

Rule 12(b)(6), Fed. R. Civ. Pr.                                         12

D.C. Code § 12-301(7)                                                   24

S.Rep. No. 91-617, p. 158 (1969)                                       34

## Glossy:

JA:  Here means Appellant's Appendix

S/L: Statutory Limitation

TAC: Third (3rd) Amended Complaint

RICO: Racketeer Influenced and Corrupt Organizations Act

OSED: Oklahoma Shelf Exploration and Development LLC.

1. **Statement of Jurisdiction**

This Court has appellate jurisdiction under 28 U.S.C. § 1291. Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 This Court has jurisdiction to review RICO case pursuant to 28 U.S.C. § 1254 and 18 USC § 1961-1968 in conjunction to 18 USC § 1341(mail and wire fraud). Court's jurisdiction also rests on 28 USC § 1331 Federal Question Jurisdiction, and 28 USC § 1332, Diversity of Citizenship Jurisdiction, and supplemental jurisdiction over dismissed remaining claims rests upon 28 USC § 1367.      ,

2. **STATEMENT OF THE ISSUES**

Must private parties in Civil RCO case prove to Jury that Defendant's "enterprise" has *committed at least two criminal acts* punishable under State or Federal law in past 10 years?

Was such a burden of proof of the Defendant's criminal acts are "clear on its face" that trial court's rejection to plaintiffs' pray for clarification by helping the jury better understand that the criminality element should be "liberally interpreted" and "punishable" should be distinguished from "conviction" appears a proper rejection?

1+1+1=? Or in alternative, 5-2=? Answer: 3? 1? Or 0?

Can a fully blindfolded or half blindfolded jury be expected to render a correct, and enlightened verdict in support of a fair judgment?

If the final judgment has fatally failed to address all the remaining legal issues in the grievance, whether a civil tort coupled with an apparent and straightforward breach of contract in absence of RICO, such as a case shown in BECK v. PRUPIS (98-1480) 529 U.S. 494 (2000), did the trial court act properly to extinguish all included "common law claims" against the victims given to civil conspirators defrauding in concert, starting from breach of contract? Instead, should the trial court take the multi-claim complaint as an integrated one and presenting all tortfeasors to Jury for the latters' acting in concert to commit a trespass, in pursuance of a common design, were held liable for the entire result." W. Prosser, Law of Torts Sec. 46, at 291 (4th ed. 1971). Halberstam v. Welch 705 F. 2d 472, DC Cir. 1983

Should such jury verdict be set aside due to erroneous jury instruction and mishandling the jury deliberation?

Did trial court's grant of defendants motion for summary judgment on "common law" cause of actions enumerating from count 2 through count 6 based upon DC's 3-year statutory limitation an action of dumping bathing water together with babies?

If Defendants, having acted in concert by breaching of contract f o r  u n j u s t  e n r i c h m e n t  by way of civil conspiracy and civil fraud, should be allowed to hide themselves under the nutshell of RICO's higher evidence bar?

Should such perpetrators be licensed to take unjust enrichment by defrauding each and every victim without having to disgorge what they devoured?
Under the Circumstances, whether trial Judge's grant of Defendants' Rule 12b 1 and b6 Motion for Summary Judgment for the majority part of the complaint, leaving RICO alone for trial would result in a fair trial to the Plaintiff-victims, by its entirety, or by the trial of RICO part alone?

Whether it is proper for the trial judge to initiate a removal of a sitting juror before jury deliberation while voting needs unanimity?

## **3. Statement of of the Case**

The underlying case is Lucy Lu, et al v. Mark Lezell, et al, involving six (6) counts claims brought by *three surviving Plaintiffs* by Third Amended Complaint (hereinafter "TAC") *JA83* with the U.S. District Court for the District of Columbia, on 10/31/2012, bearing docket number 11-cv-1815. JA83 The three named plaintiffs are as follows: Lucy Yingqing Lu, Afshin Afsharnia, and Oklahoma Shelf Exploration and Development LLC (hereinafter "OSED").JA 18, 25,27 These three plaintiffs jointly brought the following six counts of claims against Defendant Mark Lezell: 1. RICO Violation; 2. Breach of Contract 3. Civil Conspiracy; 4. Breach of Fiduciary Duty; 5. Negligence; 6. Fraud and Intentional Misrepresentation. JA78-81, 33, 43

For the most relevant part to help understand the merits of the underlying case, we first briefly introduced Plaintiff OSED as an overture to start the entire parts:

On or about May 18, 2011, Mr. Mark Lezell, falsely representing himself as an attorney at law in good standing, approached the management of OSED, a Oklahoma based business corporation, lobbied and "lured" the latter to take a dream

deal: He and His men would find an investor who would make a $10 million cash capital investment into OSED in exchange for OSED's 40% outstanding share of stocks, within a magically brief period of 30 days. To substantiate such an exciting and thrilling transaction, what OSED needs to do is only to put $50,000.00 into "Attorney" Lezell's "escrow account""to confirm OSED's serious standing and intention to proceed with such matters (JA 278-280) with GFC (meaning: "Geneva Financial Consultants, LLC, a VA corporation as the conspirators' straw front running entity--added). OSED insisted that before payment is made, OSED and "Escrow Holder" Mark Lezell must first ink an Escrow Agreement. JA 278 With OSED's persistence, a written Escrow Agreement was concluded between OSED and Escrowee Mark Lezell. JA 278 The mutually agreed and executed "Escrow Agreement", for the relevant part, provides "in the event that $10 Million Equity Investment does not occur on or before June 25, 2011, the escrow funds will be returned in their currency of Fifty Thousand Dollars ($50,000) to OSED by the Escrow Agent ("Mark Lezell", added), (See Copy of Agreement as JA 278-281) OSED's President Steve Merrill, acting as **the *principal***, and Defendant Mark Lezell, acting as an ***escrow agent***, signed the Agreement on May 18, 2011. JA 281, Defendant Mark Lezell thereafter received $50,000 from OSED.

As of June 25, 2011 and thereafter, understandably, there was no such a fancy "$10Million Equity Investment" input for the OSED, had ever occurred, not a penny finds its trace. JA 298-301 Being a practicing lawyer working in financial areas, Defendant Mark Lezell knew or should have known that signing of the Escrow Agreement and receiving excrow funds into his holding account, he was, and should be, acting as a dutiful agents owing fiduciary duties to OSED, the principal. Such an occurrence--there was no trace of such a $10 million-- was known should have been predicted by Defendant Lezell at the first place. Defendant Mark Lezell knew or should have known there was no such a $10million potential investment at the place, and there was no such a ghost investor at any place any time. He knew or should have known that it was a Ponzi-Plus Scheme that he and his collaborator

Isam Ghosh, the President of the GFC, working together to "lure" such $50,000.00 hard cash from the OSED's bank account, and being converted into the joint pocket of his and Mr. Isam Ghosh's. JA240-244

Consequently, OSED found, on and after June 25, 2011, that the $50,000 escrow fund was gone, and no penny was left. JA170 As of this date when this Brief is being drafted, Plaintiff OSED did not receive any penny from its escrow agent Mark Lezell. JA 286-287 During the period from June through August , 2011, OSED made frequent efforts contacting Defendant Lezell demanding Mark the funds back. OSED's efforts ended up finding that Mark Lezell simply vanished. JA240-244

On October 31, 2012, approximately 16 month after an accrual of the cause of action, OSED joined itself as a plaintiff into the 3rd Amended Complaint, which involved 6 counts of claims in 84 paragraphs, being alleged and realleged from paragraph 1 through Paragraph 79 explicitly, and paragraph 84, the last one, implicitly. Plaintiff OSED's brief and precise allegation of claims was set forth in a ten line in that TAC. JA92, 241

After numerous procedural maneuver back and forth between two parties, the OSED's case, together with two other joining Plaintiffs, were presented to a jury trial during the period from March 2, through March 4, 2015.JA 52 However, the trial Court prepared for the counsels "jury instruction" JA54, which was presented by the Court to the jury. The Jury instruction addressed with focus upon Plaintiffs' burden of proof, stating that : Plaintiffs must "prove a conspiracy in violate RICO, Plaintiff must prove that Lezell conspired with Ghosh and did himself participated in the (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."JA 61

Those instructions have alerted the jury of lay persons with only knowledgeable coach juror number 0320, JA275-277 who was chosen by the court there as an experienced practicing attorney, that this is not simply a breach of contractual duties, breach of an agent to principal, servant to master, fiduciary duties, not even a simple civil

conspiracy to loot money. A conspiracy must be in RICO violation, taking inference from "racketeering activity".

To prove this first element, the Court furnished Jury Instruction continued, "Plaintiff must prove that Lezell was "employed by or associated with a ***criminal enterprise*** and participated directly or indirectly in the conduct of its affairs. Plaintiff *must* prove that Lezell participated in the ***operation or management of the enterprise itself."JA61-62***

To prove a pattern of racketeering activity, Plaintiff must prove that the enterprise committed *at least **two criminal*** racketeering acts within a ten-year period. ***Racketeering acts are those punishable under state or federal criminal law***, including mail and wire fraud." (Trial Court Jury instruction, Doc 156, pp7-8, JA232-233 emphasis added) **JA 62**

After the trial Judge presented such a lengthy laundry list of the Plaintiffs'"must prove" every element of RICO, particularly its confusing parts overlapping the federal and state criminal law, for at least two criminal activities, punishable under state and federal criminal law, the Court furnished Jury Instruction immediately presented to the Jury another lengthy laundry list of "insufficiency to find "guilty"JA63, 64:

" It is not enough to merely prove two isolated acts over a ten-year period, however. A single scheme with a single injury to a single victim does not constitute a RICO violation…..Simple business disputes or *simple business fraud is not enough*." RICO "acts""must have same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events.…past conduct that by its nature projects into the future with a threat of repetition", (you name it! Added--)(Trial Court Jury instruction, Doc 156, pp8, JA 64,

None of the Plaintiffs were, or had been, a career criminal prosecutor, neither did they have an access to the State or National treasury to reach limitless resources to launch any criminal investigation or have any fruit being yielded from such an

5

criminal investigation that "sufficiently" enabled them to prove Defendant's "at least two criminal acts in RICO peculiar conspiracy enterprise", punishable by state or federal criminal law" JA62

From that jury instruction, none of the jurors had chance to encounter Plaintiffs other counts of the claims that do not coerce these plaintiffs to prove "every element" of Defendants'"***at least twice commission of such a peculiar crimes punishable by Federal or State Criminal law***", JA 62 such as: 2. Breach of Contract 3. Civil Conspiracy; 4. Breach of Fiduciary Duty; 5. Negligence; 6. Fraud/Intentional Misrepresentation? J A  6 8  The Jury did not have a chance to view these ordinary civil wrongs without ultra-complicated RICO stuff that Plaintiff must prove its criminal offense.

The Jury did not have chance to see such ordinary civil wrongs because the Trial Judge Boasberg had twice dismissed all non-criminal, non-RICO civil claims with prejudice in both interlocutory Orders (Order and Memorandum granting Defendant's Motion to Dismiss by part on 01/25/2013, Doc 53, JA19; and Doc 113, dated 05/27/2014, JA29) in accommodating the Defendant's Motion to Dismiss Doc.JA107, and Defendant's Motion for Summary Judgment. JA160

   The Trial Judge twice dismissed Plaintiffs' Claims for Count 2 through Count 6, because the Trial Court simply accepted and affirmed Defendant Lezell's twisted arguments that the Plaintiffs Complaint should be dismissed with prejudice for violation of the DC's 3-yr statutory Limitation. (JA 19, 29)

     Here, we are faced with mathematic issue again: Citing DC's three year statutory limitation here may be risky venture: Let's count with our fingers and extra fingers: Three year S/L means 36 months. The earliest date for the OSED to find a breach is no earlier than June 25, 2011, approximately 16 months and 6days or so that had lapsed from the date of October 30, 2012, the day when OSED started bringing the legal action together with other named plaintiffs in case 11-1815. Judicial notice may easily be taken that 16 month is younger than 36 months. For obvious reason, Plaintiff OSED's Claims-counts from 2-6 were not, and should not be, time barred

under DC's 3-year S/L. much less with Oklahoma State's 5-year S/L for breach of written contract (05/18/2011 Escrow agreement is a written contract.).

To rationalize such a miscalculation and misinformation, Defendant Lezell argued that OSED's was time-barred for prejudice because 1st Plaintiff Lucy Lu's non-RICO counts were time-barred by District of Columbia's 3-year S/L because accrual of Lu's cause of action, which was June 2008, ranging from count #2 through count #6, consequently, every plaintiff's inclusion in Plaintiff Lu's counts from #2 through #6, included in TAC got time barred altogether. JA90 While cause of action for count 2-6 were raised by Lu alone in her original complaint filed in October 13, 2011, having completely blurred a plain truth that as of the date of 10/31/2012, the lone plaintiff complaint had been amended to add OSED and Mr. Afsharnia in the action 11-1815 . It is no longer a one-person's action. JA18, 27, 31 Defendant further argued that in the 3rd Amended Complaint, Claims number 2 through 6 was the claims raised by Plaintiff Lu only.JA93 Two other named plaintiffs, Afsharnia and OSED whose 3-5year S/L was apparently not expired, and could not certainly be deemed time-barred, "did not" raise Claims 2-6, they were therefore precluded.

According to Defendant's argument, the TAC is still Plaintiff Lu's one-person Complaint addressing Claim #2 through #6. District Court ruled in Defendants favor, consequently, all three plaintiffs, together with Plaintiff Lu's counts #2 through #6 were twice dismissed with prejudice. JA 19, 29 The only remaining cause of action, RICO, whose S/L was for 4 years, survived the summary judgment and brought to the jury trial.

The jury of 7 found that evidence is not sufficient to prove RICO violation. Plaintiff lost the case. JA 53 This instant appeal (15-7028) stemmed from one of the numerous similar white collar schemes of a pattern of fraudulent conversions of the victims money into the perpetrators' pockets by pretence, a widely infected epidemic of frauds through out numerous such states as Virginia, District of Columbia,

Oklahoma, Colorado, Texas, etc, JA 236, by a ring of high IQ Ponzi-Plus Schemes handlers.

The carefully designed and devised Ponzi Plus scheme* has a unified input price tag, the dollar amount for each scheme victim, individual or corporation, rich or poor alike: $50,000.00. Uniformed formality and term: a month long hot money lending arrangement, coupled with truckloads of such documents as promissory notes, proof of pledges, sureties, secondary or multi-layer guarantor

and guarantors, offer of collateral of a piece of real property as the pledge to principal pay back together with $20,000.00 to 25,000.00 or even greater amount return, normally for such a short and brief period of 30 days!. The gene modified cash growth mill offers such magic visual and sensual stimulating illusion that the hot lender's dollar can grow by itself in such an accelerating speed. Additionally, such a magic is risk free! Many victims from the District of Columbia, Virginia, Colorado, Oklahoma, Texas, etc, JA 236 cannot resist such a great temptation and get entrapped.

---

**\*Ponzi scheme** is a fraudulent investment operation where the operator, an individual or organization, pays returns, with promised lucrative profits, to its investors from capital paid to the operators by new investors, rather than from profit earned by the operator. Operators of Ponzi schemes usually entice new investors by offering higher returns, in the form of short-term returns that are either abnormally high or unusually consistent.(Wikipedia).Ponzi schemes occasionally begin as legitimate businesses, until the business fails to achieve the returns expected. Appellee Lezell-Ghosh started a Ponzi-Plus operation which only takes the form of short-term returns with promised abnormally high interests, imitating Ponzi Scheme. Unlike Ponzi Scheme Operators who paid senior investors with junior's late-arriving money. The Ponzi-Plus scheme designed and devised by Lezell-Ghosh-Other unnamed devoured every entrapped "lender's" money without giving back a penny (with Lucy Lu's exception). That means, the conspirators steal all defrauded "lenders" money without disgorging a penny to the victim. Therefore, the gene-modified local Ponzis, the master-minders of such newly emerged Ponzi Plus scheme appear more evil in comparison to the one invented by Mr. Charles Ponzi, the forefather of notorious Ponzi Scheme.

The scheme was achieved by the perpetrators by using several of their such straw companies as "Westin Development, LLC" and "Geneva Financial Consultants, LLC". Additionally, to catch up the victims eyeballs in enhancing their confidence, the Ponzi-Plus schemers used their co-conspirator, Appellee Mark Lezell's bar license as a promotional instrument to lure, regardless the Appellee was already disbarred or not. Defendants-Appellees successful stories in circling hard cash from the "donors" pockets prompted such a universally acclaimed Judge James Boasberg to write down the following impressive comments in his May 27, 2014 Memorandum Opinion: "It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments." Citing Durland v. United States, 161 U.S. 306, 313 (1896). JA 29 The ultimate results of such beautiful alluring is almost all the lenders ended up finding their lent-out hard cash ended up with $0 in return with voluminous guarantee paperwork that became piece of scraps.

Appellant-Plaintiff Lucy Lu, Afshin Afsharnia, Earnest Bridge (whose complaint was dismissed with prejudice by Judge Boasberg earlier and not included in the scope of this appeal), Oklahoma Shell Exploration development Corp. (OSED) are the similarly situated four victims among dozens, if not hundreds.

Plaintiff-Appellant Lucy Lu, may be the only exception who, like sun rises from the West, received $8000.00 JA128, 132, 286, in hard cash from her "escrow agent" Mark Lezell's "escrow bank account", for her $50,000.00, 30-day hot cash lending game. (The piecemeal return had concealed the perpetrators' real intention originally designed retarded the Plaintiff's legal action plan. JA 128, 132, 286

Defendant Mark Lezell, then an attorney of good standing (not yet being disbarred then), acting as the front runner for Lezell-Ghosh enterprise, approached Lucy Lu, guided Lucy Lu to enter into a lucrative $50,000.00 (JA 284) hot money "loaning" arrangement, with a promissory notes attached with deed of trust having

collateral of real property as the pledge. JA503 The term for the loan's maturity was only 30 days. Plaintiff Lucy Lu was promised with timely pay off the principal plus $23,000.00 interests, that 46 % monthly interests(JA599) rated amount to an annual yielding of interests rate of 600% approximately. *JA534* Mr. Lezell, through various email communications, instructed Lucy Lu to wire such a $50,000.00 into Defendant Mark Lezell's "escrow account". JA284, 531  Doing so, Defendant Mark Lezell concealed the fact that a person standing behind the front runner is Mr. Isam Ghosh, by whom, Plaintiff Lu had already been defrauded and had already won a lawsuit in the Fairfax Virginia for the judgment award of $250,000.00. **JA 137** On June 30, 2008, the date in paying back what promissory note provided amount: $73,000.00 ($50,000.00 principal + $23,000.00) became of maturity, Defendant, defaulted. *JA531*

The same story happened to 2nd victim in this instant appeal. Appellant Afshin Afsharnia was approached by Appellee Mark Lezell in 2008 and was lured to have entered into such a repeatedly cloned $50K hot money "lending" scheme JA140-143 and 144, *492-494* with a promise in return
of $70,000.00, in a promissory note with the collateral of either one of two properties. JA140, 144, 495,495 The too-good-to-true drama also ended up with victim's getting zero penny back, neither either of the properties painted on a piece of scrap paper.JA140, 144, 496,498

The 3rd Plaintiff-Appellant OSED is a corporation in the state of

Oklahoma. Again, the front runner Mr. Mark Lezell, then disbarred, approached Mr. Michael Woods, the VP of the OSED, introducing himself as a lawyer of good standing, defrauding the victim that Geneva Financial Consultants, LLC might generate $10,000,000.00 cash investment into OSED from a European financier in exchange of OSED's 40% corporate shares. The bubble made to lure that $50K hard cash for such a fabricated big cake of $10,000,000.00 was great and hard to resist for such a capital thirsty business entity. JA92, 240-244, 278,  For the escrowee to

start working on the loan project, OSED was requested to put the magic dollar amount, i.e., $50K into Mr. Mark Lezell's escrow account. This one is hard to swallow because the potential "beneficiary" of that fabricated $10Million loan demanded that Mr. Mark Lezell must conclude a written escrow agreement with the OSED before OSED released $50,000.00 to Mr. Lezell.      No matter how hard it was, Mark Lezell swallowed that hard shell nut anyway and $50,000.00 was deposited into Mr. Mark Lezell's "escrow account" in May 2011. The Escrow contract provided that if the $10,000,000.00 cash investment in exchange for OSED's 40% share did not go through, Mr. Lezell must return that $50,000.00to OSED.

What followed that deposit of $50,000.00 into now Appellee's account was logically simple and leaving zero space for any further imagination: Both $10,000,000.00 investor as a completely fabricated fiction and that $50,000.00 as concrete cash, together with the receiving "escrowee", "attorney" Mark Lezell, were gone without trace. JA 240-244; 258, 278,

Such a development is logically natural and simple: All the complicated, multi-layer guarantee, promises, deeds of trust, colorful pictures of fancy buildings as collateral in guaranty of the promissory notes, fancy fiction bubble of 7- digit cash inflow, 600% annual yielding interests rates as the return for for a 30-day hot lending, all evaporated together with the lender/escrowors' hard cash money. Disappeared are the escrowee, straw companies, and the owner of these straw companies: Mr. Isam Ghosh.

On 12/19/2012, the Plaintiff Lu, by her counsel Randy McRae, filed a Third Amended Complaint, instead of an amended Motion to Intervene as a 3rd party joinder, apparently following the trial court's advice. JA 83; The Complaint filed by Plaintiff Lu include the following Six (6) counts:

1. RICO violation; 2. Breach of Contract; 3. Civil Conspiracy; 4. Breach of Fiduciary Duties; 5. Negligence; 6. Fraud/Intentional Misrepresentation. JA 83. For the most part, attorney Mr. McRae simply copied his first amended Complaint, JA 3,

including having copied without correction of its numerical typographical errors in enumerating the 6 counts, except for the addition addressing the claims of the added Plaintiff Afsharnia (Paragraph 33) JA 90-91, and Plaintiff OSED (paragraph 43, JA 92) .

Upon Defendants motion, the lower court summarily dismissed all counts except for the count of RICO on January 25, 2013. (Doc53)JA19

On both June 26, 2013 and July 2nd, 2013, Plaintiff moved for Default Judgment against Isam Ghosh, for following two counts: Federal RICO, and State Claim of Civil Conspiracy. On July 19, 2013, Judge Boasberg entered an Default Judgment granting Plaintiffs' [62] Motion for Default Judgment. Judgment is ENTERED against Defendant Ghosh in the following amounts: $126,000 in favor of Plaintiff Lu, $210,000 in favor of Plaintiff Afsharnia, and $150,000 in favor of Plaintiff OSED.

With all exchanges and continuing embattlement, Defendant Lezell filed a Motion for Summary Judgement seeking to dismiss the TAC (JA90) repeatedly for seven consecutive times and got rejected by the Clerk of the Court for QC, and finally got docketed. On May 27, 2014, Judge Boasberg granted Defendant Lezell's Motion for the most part, leaving civil Rico for jury trial. JA205

During the period from March 2 through March 4, 2015, with replacing counsel as this undersigned, taking the place of Mr. Randy McRae, who suddenly became unavailable in starting October 2014, took place. This undersigned enter his appearance on December 15, 2014 facing such urgent situation of facing jury trial. With three full-day jury trial, the Jury rendered a verdict for the defendant-appellee JA53, under very complicated circumstances.

## 4. Standard of Review

We review de novo the district court's dismissal of the remaining claims under Rule 12(b)(6). See, e.g., CroixlandProperties Ltd. v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999) (Sparrow v. United Air Lines, Inc., 216. F.3d 1111, DC

Cir.2000) We review a district court's dismissal of a complaint for failure to state a claim de novo. Kassem v. Wash. Hosp. Ctr., 513 F.3d 251, 253 (D.C.Cir.2008). In so doing, we must treat the complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993), and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979). See Croixland Properties, 174 F.3d at 215.2

"On direct review, a district court's decision to excuse a juror for just cause is reviewed for abuse of discretion." Perez v. Marshall, 119 F.3d 1422, 1426 (9th Cir.1997) and United States v. Shenberg, 89 F.3d 1461, 1472 (11th Cir.1996)

Questions of subject matter jurisdiction are reviewed de novo. ... The grant or denial of summary judgment is reviewed de novoDismissal of pendent common law claims. Reviewed for abuse of discretion. Johnson v. Booker T. Washington Broad. Serv., 234 F.3d 501, 507 (11th Cir. 2000)

## 5. ARGUMENTS:
Summary of Arguments

The Judgment must be reversed and the case must be remanded for a new trial because the Jury instruction given by the Trial Court involved a reversible error which improperly directed the Jury that Plaintiffs must meet their burden of proof proving Defendant had committed at least two criminal punishable under Federal or State Law,JA60-61, in violation of SEDIMA, S.P.R.L. v. IMREX CO., et al.473 U.S. 479, 1985, see also Crocker Nat. Bank v Rockwell International Corp. (555 F. Supp. 47 (N.D. Cal.1982) .

Additionally, jury instruction has apparently failed to allow the Jury to have an opportunity to catch and comprehend much simpler and plainer tort in concert, such as civil conspiracy and civilfraud, both are actionable torts in the district of Columbia, behind the superficial breach of Escrow contracts for purposefully evasion of return the defrauded cash from the victims-plaintiffs.     Therefore, the

final judgment has fatally failed to address all the remaining issues as whether a civil tort coupled with an apparent and straightforward breach of contract in short of RICO, such as a case shown in BECK v. PRUPIS (98-1480) 529 U.S. 494 (2000), should the grievance of the victims by civil conspirators in concert, starting from breach of contract as of 'joint tort' triggering vicarious liability for concerted action. All persons who acted in concert to commit a trespass, in pursuance of a common design, were held liable for the entire result." W. Prosser, Law of Torts Sec. 46, at 291 (4th ed. 1971). Halberstam v. Welch 705 F. 2d 472, DC Cir. 1983 Should such a misguided, misinformed jury verdict be reversed and the case should be remanded for a new trial?

The Jury was not given a full picture of the totality of the case involving such contents as of Breach of Contract; Civil Fraud not necessarily satisfying the stringent criteria of RICO, with Trial Judge's long list of exclusions in jury instruction, and joint tort in concert as civil conspiracy is because the trial Court had erroneously dismissed all these related claims and counts for violations of DC's 3-year statutory limitation. Assuming one of the three Plaintiffs in the instant action was declared to have run afoul with the DC 3-year Statutory Limitation, without due concern of Defendants' on-going, and practically effective concealment, should the other Plaintiffs, such as Plaintiff OSED, whose cause of all actions and claims was one-year young, showing written contract being violated in apparently joint fraud and conspiracy in concert, not necessarily meet the high entry level of RICO, also be kicked out for summary dismissal?

## Arguments I: In A Jury Trial that Requests for 8-Juror Unanimous Vote, A Discretional Discharge of a Selected Juror Prior to Jury Deliberation without Just Cause is An Abuse of Discretion

Appealed is a final judgment based upon a jury verdict in favor of Defendant.

According to the trial Court's Jury instruction, the 8-member jury must reach an unanimous vote. A 4-4 or 7-1 will be a hang jury. (See Jury Instruction ECF Doc. 156, 03/.04/2015, JA54)

The Jury deliberation held on March 4, 2015 took hours, during which there happened with the report of hang-jury, and the deliberating Jury's demand to review Exhibits 7, JA493, 497, and Exhibits 9, JA450-451, both were presented in direct and cross examination, precisely pinpointing Defendant-Appellee's Lezell's ugliest behavior in strongly luring the Plaintiff to get into such a Ponzi-Plus scheme he and his co-conspirators formed. The trial Judge did have discretional power to decide whether or not to allow the deliberating Jury to view these trial evidence apparently critical to weighing the merits of the case.

As an experienced trial judge, the Hon. Boasberg would certainly be capable of sensing the heavy weight of these two explosively powerful evidence in delicately affecting the slight balance of the voting results, and hardening or softening possibly the mind of the undecided jurors. Such an evidence in apparently hostile to the Defendant would certainly be duly helpful to the Plaintiffs.      Judge Boasberg, by exercising his discretional power, flatly rejected the Jury's request.      Again, these two pieces of critical evidence in Plaintiffs' favor, given to the pretrial preclusion of many relevant evidence of highly probative value, should have been provided to deliberating jury upon the latter's demand and Judge Boasberg did not allow the Jury to review the evidence that had been displayed during the trial to the jury with the Court Permission. Trial Judge's bar on showing these evidence has changed such delicate balance of the jury decision, leading to Plaintiffs' evidence insufficiency in winning the jury verdict with the following added circumstances:

The Plaintiffs failure to weed out Juror 320, an experienced practicing attorney in DC out of the jury;

A. That Juror, had apparently used his law expertise to persuade the super majority to change their mind to focus upon only one issue: whether Plaintiffs' (surviving) evidence, alone upon trial exhibits evidence, rather than the totality of the evidence involving Party-witnesses in court testimony under oath, is adequate enough to support a verdict in favor of Plaintiffs.

B. Jury deliberation on March 4, 2015, Thursday, was scheduled to be continued for the next day (Friday), due to an imprecise weather forecasting about the

snow storm upcoming, Juror #320 urged to have a half hour extension of March 4th deliberation in order to abruptly wrap up the jury voting on the same day. The deliberation was continued for possibly more than 90 minutes, turning out the rush voting in favor of the Defendant.

On March 2, 2015, during the Jury selection, Juror number 0022, Federick Carver, an NIH scientist, told Judge Boasberg about his schedule to attend his friend's funeral, praying for relief. Judge did not approve. When the three-day trial drew to the end, prior to jury deliberation, Judge Boasberg, *sua sponte*, without motion, suddenly declared that Juror Carver be discharged without just reason. Such a no-longer necessary, improper decision had obviously changed the voting ratio, and resulted in unfair outcome to Plaintiffs. Trial Judge's removal of a juror at the end of the trial and during the Jury deliberation and jury voting, without just cause, may have destroyed an impartial jury, frustrated jury integrity, particularly in case of occurrence of an hang jury.

> "The requirement that a jury's verdict `must be based upon the evidence developed at the trial' goes to the fundamental integrity of *all* that is embraced in the constitutional concept of trial by jury."*Turner v. State of Louisiana* 472, 85 S.Ct. at 549 (quoting *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)). The danger of compromising this integrity is never greater than when the process is contaminated by outside influences. *See id.; Gibson v. Clanon,* 633 F.2d 851, 854 (9th Cir.1980), *cert. denied,* 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231(1981).

Supreme Court has indicated that the right to a unanimous jury: "is more accurately characterized as *a due process right*..."Schad v. Arizona,501 U.S. 624, 634 n. 5, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) "It is a reversible error to dismiss a juror before jury deliberation without just cause." United States v. Araujo, 62 F.3d 930 (7th Cir.1995) It is because such errors "`infect the entire trial process'" that they require reversal without regard to the evidence in a particular case. Neder, 527 U.S. at 8, 119 S.Ct. 1827 (quoting Brecht v.Abrahamson,507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

The error here — depriving a defendant of the verdict of eight jurors to form or

not to form the unanimity of the jury verdict, without his consent or any finding of good cause — is such an error. D.C. Circuit had imposed on trial judges an affirmative duty to investigate the circumstances surrounding a missing juror's absence before continuing with jury deliberation. United States v. Essex, 734 F.2d 832 (D.C.Cir.1984)

In light of our conclusion the district court abused its discretion by dismissing the juror without just cause, we need not reach the several other arguments asserted by appellant on appeal. The judgment of the district court is reversed and the case is remanded for a new trial. United States       v. Spence 163 F.3d 1280, 11th Cir. 1998 "…noting only that the improper influence of even one juror taints a verdict." United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.1977), cert. denied, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).

The U.S. District may, under exceptional circumstances, remove a juror from deliberating jury only for "just cause".  Although "just cause" generally focuses on sickness, family emergency, or juror misconduct, it "embraces all kinds of problems--temporary as well as those of long duration--that may befall a juror during jury deliberations." Murray v. Laborers Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir.1995) (internal quotations and citation omitted), cert. denied, --- U.S. ----, 116 S.Ct. 1847, 134 L.Ed.2d 948 (1996); see also McFarland, 34 F.3d at 1512 ("While appellant correctly asserts that 'just cause' encompasses primarily physical incapacity or absence due to religious observance, the excusing of a juror who had previously advised the court and counsel of his  lengthy vacation plans does not constitute an abuse of discretion." ).

In this instant case, during the jury celection session on March the 2nd, 2015, Mr. Frederick W. Carver, an NIH scientist, with Juror number 0022, requested for Judge's discharge of him for the reason of his friend's funeral. Judge Boasberg denied the request.  Mr. Carver then obeyed the order and patiently sat in the jury for all three days jury trial, without raising any new request for leaving the jury. While at the end of the trial of the afternoon of March 4, 2015, without Juror Carver's motion, the Court removed Juror 0022.

Because the district court was in the "best position" to evaluate the jury's ability to deliberate, and the incident clearly was affecting the jury, the court did not abuse its discretion in finding just cause to remove both jurors. United State v. Ross, <u>886 F.2d 264</u>, 267 (9th Cir.1989).

Deliberating juror is accused of attempting jury nullification, the trial judge is faced with a "delicate and complex task," in that he or she must adequately investigate the allegations, but also must take care to respect the principle of United States v. Thomas, 116 F.3d 606, 618 (2d Cir.1997) jury secrecy. We hold that in analyzing the evidence obtained from investigation, the trial judge must apply a heightened evidentiary standard: a deliberating juror *must not be dismissed* where there is any reasonable possibility that the impetus on the juror's views of the sufficiency of the evidence. Once the trial court has applied the correct standard, the court's conclusion as to whether the juror should be dismissed is reviewable only for abuse of the discretion. Here, the trial court based its decision to dismiss deliberating juror on very limited evidence, and there is no indication that it applied a heightened evidentiary standard in making the dismissal decision. The verdict is therefore must be reversed. The Court of Appeals concluded that because Elmore's appeal implicates her constitutional rights to a fair and impartial jury, appellate review should be de novo. The District Court may under no circumstances remove a juror just to break the deadlock. United States v. Thomas, 116 F3d 606, 2nd Cir. 1997.

## <u>Argument II: The Jury Was half-Blindfolded involving in the March 2015 Trial Because the Lower Court Abused Its Discretion by Having Summarily Dismissed All Other Claims in the TAC with Prejudice</u>

The threshold question appears a little bit hard , answering such a difficult question, one must have at least a kindergarten level of IQ: How Many Plaintiffs were seen in the 3rd Amended Complaint (TAC) followed with a "full-fledge" jury trial starting March 2, 2015 in case 11-1815?

Let's count now using our fingers: Plaintiff Lucy Lu at first, laterr added with Plaintiff Afshin Afsharnia, Plaintiff Oklahoma Shelf Exploration and Development LLC

18

(OSED). We found we still have two fingers left unused for counting, the equation is 1 (Lu) +1(Afsharnia)+1(OSED)=? Plaintiffs' answer: =3;  Defendant's gave his equation to the Trial Court: "0".

Both parties have to bring this world's toughest mathematic question into higher authority for answer: The answer was finally rendered in two decisions: 1+1+1=1. One plaintiff (Lu) was left intact in the adjudication for "common law cause of action" ranging count 2 through count 6. JA 29, 68  That one person's common law claims were summarily dismissed for violation of DC's 3-year statutory of limitation. JA 36, In some cases, the luring process was lasting either close or exceeded 30 days already. In case of OSED, how could an individual reasonably expect that the paperwork for a $10 Million investment being finalized within such a short period of 30 days? But still one after another falling into such a primitively designed Ponzi-plus scheme in several states.

Equaly clear is the number of the participants on the Plaintiff's side after plaintiffs' aborted efforts to file the 3rd party intervention.  The TAC involved three additional Plaintiffs. In paragraph 33 and paragraph 43, the TACJA 90, 92, also roughly presented the brief and concise fact allegation addressing these added plaintiffs' grievance and claim, in incorporated into the entire Complaint, regardless whether plural norm (grammatically right) or singular norm (grammatically erroneous) was adopted by the drafter of the TAC JA83.

"The second cause of action – for breach of contract – appears to only apply to Plaintiff Lu. See Third Am. Compl., ¶¶ 66-68" (Judge Boasberg's Order and Memorandum granting Defendant Mark Lezell's Rule 12b(1) and b(6) Motion for Summary Judgment to Dismiss Complaint, dated 01/25/2013, page 7, emphasis added). Plaintiffs, in their Opposition to Motion for Summary Judgment has expanded with details of Plaintiffs causes of actions No.2 through No.6, say, "common law claims". Plaintiff OSED was 16month young.

First of all, the Lower Court's isolation of two other Plaintiffs, Plaintiff Afshin Afsharnia, and Plaintiff OSED., (hereinafter OSED) from the Group Plaintiffs in 3rd

Amended Complaint appears to be a fatal error that appears        unconscionable and
inconceivable.        With the inclusion of the OSED and Afsharnia, the second cause of
action, all the rest causes of action, would no longer "only applied" to Plaintiff Lucy
Lu.    From the context of the TAC, they should be applied to all plaintiffs, all three
plaintiffs.

In case of OSED, the Statutory limitation was good for all six claims causes of actions.
Defendant's Breach of contract occurred in June 2011.    After exhaustion of all non-
judicial remedy efforts, Plaintiff OSED's initiating its legal action by joining this
underlying case 11-1815 no later than October 2012, given to the fact that DC
Statutory limitation for breach of contract is three years, i.e., Plaintiff had until June
19, 2014, to initiate Breach of Contract Action against Defendant Mark Lezell. While
it may wait until June 19, 2016 to initiate breach of contract action against Defendant
Mark Lezell, if Statutory limitation of the State of Oklahoma were adopted by the trial
Court to compute the time frame for S/L. (Oklahoma has 5-year statutory limitation
for breach of written contract.)

Amended Complaint should be deemed and construed as one, rather than a
messy concoction of unrelated piecemeals.  The textual content of the Complaint had
contained a 10-full line, approximately half page size "plain and concise" factual
allegation specifically addressing  Plaintiff OSED's factual allegation of its grievance
in Paragraph 43 of the 3rd Amended Complaint, JA 92, and 8 line addressing Plaintiff
Afsharnia's factual allegation of his grievance for Paragraph 33, JA 90-91..

Trial Court was fully aware that the TAC had reformed the prior Complaint making
the number of Plaintiffs within the same framework of several co-existing claims,
requests for reliefs, from singular into plural:

"Court ultimately permitted a Third Amended Complaint to be filed on October 31.
See ECF No. 37. This pleading added three other Plaintiffs: Oklahoma Shell
Exploration and Development, LLC ; Bridges Financial, LLC; and Afshin Afsharnia.
After neither Defendant (neither Defendant Lezell nor Defendant Isam Ghosh—
added) responded, the Clerk entered default." See ECF No. 39

Defendant-Appellee admitted: "Mr. Lezell, and any defendant, should have the opportunity to fashion written discovery, and take depositions, informed as to which plaintiff is seeking what in damages." However, Defendant-Appellee Lezell chose to continue misleading the trial Court:

"Indeed, it is well established that, absent specific damages sought, a claim or action cannot proceed." p12 JA30, 32,76 Yet records show that Plaintiff(s--added) included all these "Specific damages sought" in the textual content while the Complaint stated that"Plaintiff(s—absentmindedly omitted and now added) repeat(s) and re-allege(s) all of the allegations above as if fully alleged herein" starting paragraph 54, (TAC page 13) JA 31, covering paragraph 1 through paragraph 84, including those "repeated and re-alleged paragraph 33 (addressing Plaintiff Afshin Afsharnia) and paragraph 43 (Addressing Plaintiff OSED), paragraphs numbered 1-78 as if fully set forth herein."

(TAC pp 92-90) of the TAC as an integrated one.

Unfortunately, Defendant-Appellee's apparently twisted mis-information was readily adopted by the trial court. Judge Boasberg's finding might have mirrored to Defendant-Appellee's misleading statement in his Motion to dismiss: "Indeed, Count I (civil RICO conspiracy), as pled, Paras. 33-34, addresses Ms. Lu's claims only." (Defendant Mark Lezell's Motion to Dismiss; ECF Document 50, Filed 12/19/2012, p10).  Judge Boasberg found:

"The second cause of action – for breach of contract – appears to only apply to Plaintiff Lu. See Third Am. Compl., ¶¶ 66-68 (emphasis added)." JA 32-40

 "Although this count ("Count 2, "Breach of Contract") , like much of the Third Amended Complaint, remains poorly pled and confusing, it appears the main contention is Defendants' failure to return a $50,000 escrow deposit. Id. Lezell argues that, whatever the merits of this claim may be, it is barred by the three-year statute of limitations for such causes of action. Plaintiffs do not respond to this argument either and have thus conceded it. Even if they had not, Lezell is correct." Document 53 Filed 01/25/13, page 7, emphasis added. It appears while choosing to use the plural terms, the Hon. James Boasberg, the trial judge, might have been fully aware plaintiffs, not

just single Plaintiff Lu, should be bound together in TAC as a group of similarly situated alleged victims suffering from the same subtly "$50,000.00" white-collar scheme, in plural term, as the Judge now precisely inked.

Named Plaintiff(s) in the TAC should include, if not, should be judicially construed, to include all named plaintiffs not only for the sake of the TAC's context, but also for the broad based circumstances in and out of the TAC, which had apparently been sensed and caught by the Trial Judge whose ultraintelligence on top-notch level has been nationally acclaimed.

Therefore, as a preliminary, threshold issue, Plaintiffs' claim for Breach of Contract, should not exclude Plaintiff Afsharnia and Plaintiff OSED. The records show that for many places in the paper trail, both Defendant Lezell and Judge Boasberg, used plural terms in description of the Plaintiffs.   In this light, Defendant Lezell was not correct, neither was the Hon. Boasberg, the Trial Judge.

Noticeably, if Judge Boasberg had really taken the typographical errors in the TAC so seriously by following the Defense counsel's misleading information so consistently without appearing self-contradiction, He should have thrown out the other two co-Plaintiffs from the survival circle of the remaining civil RICO at the first place as a consistent, logical disposition, given to Defendant Lezell's same misleading tactics to the trial Court addressing Count one in TAC:

"Indeed, Count I (civil RICO conspiracy), as pled, Paras. 54- 64, addresses Ms. Lu's claims only." (Defendant Mark Lezell's Motionto Dismiss; ECF Document 50, Filed 12/19/2012, p10, emphasis added) JA 205

Defendant Lezell might have been "correct" again, because Plaintiffs' counsel Mr. Randy McRae made the same typo error again: Paragraph 63: "Plaintiff (without "s" following the subjective norm—added) assert claims against these RICO Defendants…" (TAC p14, JA 97). A singular norm was erroneously used to present "Plaintiff(s—added) again.

At this point, Judge Boasberg refused to be chained by Defendant's counsel Mr. Peter Goldman.    Instead, the Trial Court made up mind passing the heavy responsibility of

RICO accusation, given to the serious nature of the ring's well known geographically broad infection that might even involving on-going criminal investigation, to the shoulder of a carefully selected and empanelled jury.

Consequently, with Mr. McRae's same typographical error in place without ordering him to correct or to perfect its text, Judge Boasberg held:

"Defendant Lezell has now moved to dismiss, arguing that the RICO claim is insufficiently pled and that one Plaintiff and two other counts should also be dismissed. The Court agrees with all but the RICO argument."

The Trial court is erroneous to grant the Defendant's Motion for Summary judgment to Dismiss all five (5) "State Claims" ranging from breach of Contract, to that of "Civil Fraud and Misrepresentation" for violation of DC's 3-year statutory limitation, addressing to Plaintiff Lucy Lu only, yet throwing out all other Plaintiffs for the same reason by simply excluding them out of the action. Consequently, none of these five causes of action were presented to the jury.

In the District of Columbia, the statute of limitations for professional negligence, fraud,and civil conspiracy is three years, and pursuant to the District's "discovery rule,""the bar of the statute of limitations will not commence to run in equity until the fraud has been discovered, or until such time as by the use of ordinary care it might reasonably have been discovered."Lewis v. Denison, 2 App.D.C. 391 (1894). The court further explained that the plaintiff bore the burden Id., at 375 of showing that (1) the defendant kept the fraud concealed, or the fraud was self-concealing; (2) the plaintiff did not discover the fraud within the limitations period; (3) the plaintiff did not "discover any facts sufficient to put him upon inquiry, which if followed with ordinary diligence would have led to its discovery" within the limitations period. Id., at 393.

In case of OSED, its #2-#6 claims in joining the TAC was apparently not time-barred and should not be subject to summary dismissal as a prima facie matter.

As to whether or not the other Plaintiffs were time barred by the DC 3-year statutory Limitation,   and therefore should be be summarily dismissed with prejudice for

violation of the DC's 3-year statutory limitation, should have been a triable issue. Because it is not clear whether the theory of equitable tolling was applicable. In the District of Columbia, the statute of limitations for breach of contract is three years, and it begins to run at the time of the breach if the breach was known to the victim in such a circumstances of apparently a fraudulent concealment. See D.C. Code § 12-301(7); Murray      v. Wells Fargo Home Mortg., 953 A.2d 308, 319-20 (D.C. 2008).

In this underlying case, the Breach in civil conspiracy, intentional concealment of the perpetrators fraud, and piecemeal performance in concealing the perpetrators' real intention, all these circumstances had complicated the matter, that retarded the victims' full knowledge and comprehension of what was exactly going on. There  as here, Defendant Lezell-Ghosh' fraud and fraudulent concealment of their wrongdoing under thick layers of alluring land deals as pledge for promissory notes covering up their real intention to permanently deprive Plaintiffs-victims money $50,000.00 from each had delayed accrual of their cause of action until such time as they had something close to actual notice of those causes of action. Theycan now rely on several cases decided by the federal courts of this jurisdiction, starting with Hobson v. Wilson, 237 U.S.App.D.C. 219, 253, 255 n. 113, 737 F.2d 1, 35, 37 n. 113 (1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Under that line of cases, "a defendant who has engaged in fraudulent concealment, in order to make out a defense based on the plaintiff's lack of due diligence, must show something closer to actual notice than the merest inquiry notice that would be sufficient to set the statute of limitations running in a situation untainted by fraudulent concealment." Riddell      v. Riddell Washington Corp., 275 U.S.App.D.C. 362, 373, 866 F.2d 1480, 1491 (1989); see also Jones v. Meridian Towers Apts., 816 F.Supp. 762, 770-71 (D.D.C.1993) (describing Riddell as imposing a "heightened notice" standard for fraud cases). Based on those cases, Appellant Lu contend that the limitations period could not have begun to run until she had "something closer to actual notice" of her cause of action. According to Lu, only such a quantum of information could have triggered a duty to investigate further Appellees' role in such civil conspiracy.

24

"a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing" (citing Bussineau, supra, 518 A.2d at 425)), and Weisberg v. Williams, Connolly & Califano, 390 A.2d 992, 996 (D.C.1978) ("[O]ne well established defense to a claim of fraudulent concealment is that the plaintiff knew, or by the exercise of due diligence could have known, that he may have had a cause of action."') (quoting Westinghouse Electric Corp.v. City of Burlington, 122 U.S.App. D.C. 65, 67, 351 F.2d 762, 764 (1965)).

(1) the statute of limitations in cases such as this begins to run when a plaintiff either has actual knowledge of a cause of action or is for some reason charged with knowledge of that cause of action; (2) a plaintiff has some duty to investigate to determine possible causes of action; and (3) if a plaintiff has not acquired actual knowledge of a cause of action only because of his failure to meet that duty to investigate, the plaintiff is nevertheless charged with that knowledge. The parties do not agree on (a) the level of actual or chargeable knowledge required to begin the running of the statute of limitations; or (b) the scope of the duty to investigate, which is sometimes expressed in two segments: (i) the quantum of knowledge required to trigger the duty to investigate, and (ii) the amount of diligence that must be exercised in conducting the investigation once it is triggered.

While fraudulent concealment efforts were in place to prevent the potential Plaintiffs' from immediate action was in place, the 3-year statutory limitation should be reasonably tolled.  Here as well as there, the fact issues as to whether the Plaintiff knew or should have known such a concealment and factual truth behind concealment has been normally deemed as a factual issue should be presented for "trial of facts", i.e., should be presented to the Jury, rather than being preempted or concealed from Jury.  Summary Judgment to pre-dismiss is improper.

What is "reasonable under the circumstances" is a highly factual analysis. The relevant circumstances include, but are not limited to, the conduct and misrepresentations of the defendant, and the reasonableness of the plaintiff's reliance on the defendant's conduct and misrepresentations. Under our cases, the relevant facts may be such that it

er

may be reasonable to conduct no investigation at all. Thus, whether an exhaustive investigation would have uncovered the claim is not necessarily relevant, unless the only reasonable investigation under the circumstances would have been an exhaustive one (Diamond v. Davis, 680 A2d 364 DC Court of Appeals, 1996.First Federal Savings & Loan Ass'n.     v. Dade Federal Savings & Loan Ass'n., 403 So.2d 1097, 1100 (Fla.App. 5 Dist.1981). "Whether an individual, by the exercise of reasonable diligence, should have known he had a cause of action against the defendant is, ordinarily, an issue of fact which should be left to the [trier of fact]." Puchner v. Bache Halsey Stuart, Inc., 553 So.2d 216, 21 Fla. 3d DCA 1989); accord Green v. Bartel, 365 So.2d 785, 788 (Fla. 3d DCA 1978) ("Whether the plaintiff discovered, or by due diligence should have discovered the existence of the cause of action ... was a question of fact ... and it has been held that genuine issues relating to such question of fact are to be determined by the trier of facts ...").The law of the District of Columbia so addressed that "When accrual actually occurred in a particular case is a question of fact." See, Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192, 1204 (D.C.1984) That is to say, the job in trial of facts should be patiently left for the Jury, together with their trial of the RICO violation for the case of 11-cv-1815.     In the foregoing light, the Trial Judge's premature dismissal of the three Plaintiffs' causes of actions in the TAC enumerated from Count 2 through Count 6, all had been tainted with bad smell of fraudulent concealment and civil conspiracy, by precluding them from being presented to the Jury, is erroneous, and absurd.  They are erroneous in case of Plaintiff Lu, and even greatly erroneous in case of OSED. Judge Boasberg's Pretrial Summary Judgments dated 01/25/2013 (Dco #53 JA19 ) and 05/27/2014 (Doc 113, JA29)to dismiss Plaintiffs TAC regarding counts #2 through counts #6 with prejudice should be reversed and the case should be remanded for a new trial.

## ARGUMENT III: Instead "1"  or "0" , 1+1+1 Should Be " 3" , The  Trial Court's 01/25/2013 and 05/27/2014 Pretrial Summary  Judgment Should be Reversed

"The first question the Court must answer is to whom the state-law claims refer. Althought is difficult to make out what, exactly, each Plaintiff alleges in the Third Amended Complaint,several factors convince the Court that *Lu is the sole Plaintiff* bringing the state-law claims, andthus the statute-of-limitations analysis need not account for the other Plaintiffs."Judge Boasberg Memo and Oder Granting Summary Judgment by Part in favor of Defendant on 05/27/2014, Doc. 113,P8 JA37 On October 13, 2011, Plaintiff Lucy Lu filed a Complaint against Defendant Mark Lezell and Isam Ghosh with the U.S. District Court for the District of Columbia, bearing case number 11-cv-1815, raising RICO violation and 5 other

causes of action, all allegedly tainted with bad smelled Defendants' fraudulent
concealment of material facts in their jointly engaged civil conspiracy.

Given to the fact for the record that two later included Plaintiffs did present their
factual allegation in TAC in Para 33 and Paragraph 43, in addition to the TAC's catch-
all clause by repeating and realleging Paragraph first (para 1) through paragraph last
(Para 84), the remaining issue would be, whether these singled-out, not to be counted,
Plaintiffs' factual allegation is or not, sufficient and adequate to survive the Motion to
exclude them as Plaintiffs regarding cause actions #2 through #6, rather than whether
their isolated individual allegation has addressed cause of action. True, due to
Plaintiff's prior counsel's certain degree of absent-mindedness, probably having
occurred with extremely unusual neurological conditions under extreme pressure not
related to this instant case, the TAC was poorly, very poorly drafted, as we may have
to concur. With the opinion given by both the Hon. Trial Court and Peter Goldman,
Esq. counsel for the Defendant. Yet an imperfected allegation alone may not be a
sufficient legal basis for pretrial summary dismissal.For instance, Failure to plead
fraud with particularity likewise does not support a dismissal      To the contrary, leave
to amend is " 'almost always' " allowed        with prejudice.      Luce v. Edelstein,
802 F.2d 49, 56 (2d        to cure deficiencies in pleading fraud. Cir.1986) (quoting 2A
J. Moore & J. Lucas, Moore's Federal Practice, ¶ 9.03 at 9-34 (2d ed. 1986)). Such a
factual allegation may be perfected with the following discovery and be perfected
other way around later. Caribbean Broad. Sys.,Ltd.v. Cable & Wireless PLC, 148 F.3d
1080, 1086 (D.C. Cir. 1998) ("[A] plaintiff need not allege all the facts necessary to
prove its claim.");Atchinson v. District of Columbia, 73 F.3d 418, 421-22 (D.C. Cir.
1996) ("A complaint ... need not allege all that a plaintiff must eventually prove ....");
Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983) ("The Federal Rules of
CivilProcedure do not require a claimant to set outthe precise facts on which the claim
is based.... 'Notice pleading' is sufficient.")

But our role is not to speculate about which factual allegations arelikely to be proved
after discovery. See Twombly, 550 U.S. at 556. The only question before us is

whether Harris alleged facts that, taken as true, render his claim of retaliation plausible. 'the two most common legitimate reasons' " for termination and also give rise to a reasonable inference of pretext, George, 407 F.3d at 412 (quoting Stella, 284 F.3d at 145), Therefore, simply excluding parties from a docketed Complaint for their factual allegation in non-comprehensive nature, or taking it like nothing for the records may not be in conformity with the judicial culture of this judicial circuit, given to the Court's "strong preference for deciding cases on their merits" "should reflect our judicial system's strong presumption in favor of adjudications on the merits" Jackson

v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980); Shepherd  v. Am. Broad. Cos., 62 F.3d 1469, 1475 (D.C. Cir. 1995)And as this court has repeatedly held, for instance, " '[u]sually,  proffering evidence from which a jury could find that [the employer's] stated reasons were pretextual will be enough to get a plaintiff's claim to a jury.' " Calhoun v. Johnson, 632 F.3d 1259, 1261 (D.C.Cir.2011) (quoting George, 407 F.3d at 413 (internal quotation marks omitted)); see Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1292 (D.C .Cir.1998) (en banc).

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes. More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party. In First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968), where the issue was whether there was a genuine factual dispute as to the existence of a conspiracy. We noted Rule 56(e)'s provision that a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" We observed further that Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. At the summary judgment stage, the trial judge's function is not himself to weigh the evidence [477 U.S. 242, 243]     and determine the truth of the matter but to determine whether there is a genuine issue for trial. There is no such issue unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. ANDERSON v. LIBERTY LOBBY, INC., 477 U.S. 242 (1986) (1986)

Accepting Plaintiffs' allegations "in a light most favorable to the nonmoving party," Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co., 870 A.2d 58, 62 (D.C. 2005)

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." LibertyLobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir.1998) (en banc).

None of these guidelines were followed while the trial court dismissed majority part of violation of statutory of limitation, leaving the "un-pled" Parties singled out for exclusion from the picture. Wherefore, in the foregoing light, these two summary judgments being entered by the Hon. James Boasberg, the trial Judge may need to be reversed and vacated, a new trial on the common law issues may need to be ordered

for the interests of justice.

## Argument IV: Reversible Errors Regarding Jury Instruction

The trial court written jury instruction did not explicitly impose such burden of proof upon Plaintiffs requesting the latter to offer proof that Defendant "enterprises" had at least two "criminal convictions" during the past ten years. However, the Jury Instruction held that plaintiffs must prove that the Defendant's enterprise should have two commissions of criminal offenses under the state and federal law.

Counsel for the Plaintiff s immediately prayed to the trial court to give the jury better directions and clarifications regarding such a component in proof of the case as the prerequisite criminal offense components by insertion of such well informed guidance: JA 499, 610

Criminal offenses means that such offenses "could be punishable, rather they had already been punished. SEDIMA S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, 105 S.Ct. 327587 L.Ed.2d 346, 1985  Proof  of defendants' criminal offense component in RICO case should be "liberally interpreted"; United States v. Turkette, 452 U.S. 576, 585, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).

Plaintiffs made such a pray at the first time, first place (JA 499, 610)upon receiving the Court provided Jury Instruction, is because they understand it would be extremely difficult, or utterly impossible,  private party Plaintiffs to take and accomplish such a responsibility to prove the defendants criminally guilty in civil RICO litigation.   Such a task, evidence wise, may even be a steep burden for USDOJ.  Therefore, without the foregoing requested clarification added into the Jury Instruction, such a prerequisite may have well been perceived by the jury as proof of "criminal records", proof of "criminal convictions".

For unknown reasons, the Trial Court rejected Plaintiffs' humble, proper, necessary and reasonable request, because the Court believed all these "are clear on its face" (to jury? Added)    JA 610

Courts review *de novo* whether a jury instruction misstates the law. *See Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769,  784 (9th Cir. 2006).

The Jury instruction given by the Trial Court may have been erroneous while it improperly imposed the civil RICO Plaintiffs with a mission impossible to prove before the jury that Defendant Mark Lezell's enterprise is a "criminal enterprise" that had committed *at least **two criminal*** racketeering acts within a ten-year period." See Court furnished Jury Instruction pp 7-8, JA 61, 62 **Further, the Trial Court may have been irreparably, fatally and reversibly erroneous when it refused to consider Plaintiffs' well grounded, legitimate pray for specific insertions and additions in the jury instruction.**

"To prove this first element, the Court furnished Jury Instruction continued, "Plaintiff must prove that Lezell was "employed by or associated with a ***criminal enterprise*** and participated directly or indirectly in the conduct of its affairs. Plaintiff *must* prove that Lezell participated in the ***operation or management of the enterprise itself."***

To prove a pattern of racketeering activity, Plaintiff "***must prove*** that the enterprise committed *at least **two criminal*** racketeering acts within a ten-year period. ***Racketeering acts are those punishable under state or federal criminal law***, including mail and wire fraud." (Trial Court Jury instruction, Doc 156, pp7-8, JA 61, 62, emphasis added) The Trial Court's imposition of the Mission Impossible upon private plaintiff in civil RICO suit has been encountered with Plaintiffs' pray for addition, insertion and modification:

"after Boyd versus United States, a Supreme Court landmark case, the RICO had been liberally interpreted…can you increase,insert the following sentence at the second line of page 8 (of the Jury Instruction—added): "**The term 'punishable' means acts that *can be or should* be punished. It does not mean punishment has already taken place**." JA 610

Court: THE COURT: Okay. I think it's clear on its face.("Clear", yet take no action in response to Plaintiffs' appropriate request.-added)JA610

MR. YE: Okay. Concerning the RICO enterprise in which appear (a pre-added) requisite, as I mentioned in Boyd v. United States in the mail fraud and the wire fraud

was – becomes the necessary, an inclusive elements for RICO. So, can you, in the nature of RICO case, can you put the following sentence, that RICO should be liberally interpreted. And citing the, you know, Congressional Record on public law number 91-452, Section 9048."

THE COURT: "I think that's for courts. Hold, that's for courts*. *I don't think it's appropriate in a jury instruction.*" JA 610

From the history of evolution of RICO starting its formation stage, e.g., legislative debate on the floor, to numerous judicial precedents among different judicial circuits, the issue addressing "criminality elements" in private civil RICO suits has never been "clear on its face" for too many circumstances, while different judicial circuits have yet to reach a uniformity addressing the issue, even though there are several leading authorities by the Supreme Court in place, such an ambiguous issue has never been so clear to such a level of "clear by itself on its face", much less for the lay jurors, among whom, many could inevitably be the first timers hearing about the term "RICO". "The civil action RICO is defined in 18 U.S.C.A. § 1964 (c):

---

* This undersigned has still not quite understood Judge Boasberg's ruling "for courts, not for jury". Does it mean the Trial Court kept the door of JNOV open? Yes, highly likely for Defendant only:
Minutes before jury deliberation, Mr. Peter Goldman, counsel for the defendant, made a surprising move by filing a motion seeking for summary judgment to dismiss Plaintiff Afsharnia's case, by rescuing 1/3 of the stake from expecting loss of jury verdict. The court appears more optimistic:
The Court: "And so, whether they've made out a RICO claim, I'm *quite skeptical here*. And I don't think a grant of the motion would be error. … (It appears an U-turn of the court from its position that Defendant "implemented criminal decision" JA 40) I'm going to hold the motion in abeyance, ending the jury verdict. *If* the jury issues a plaintiff's verdict, I will absolutely give you an opportunity to brief this…"JA 599
Goldman: "it (Afsharn's part from the case of trio—added) should not go to the jury. And I think it's problematic if it does."……
THE COURT: I agree. I think it's very thin, as I said, because this is a nuanced area of the law and difficult to make rulings on at this point without briefing and……" JA604
The Court: "(Motion -added) be raised in the event of an adverse verdict (against defendant—added)."JA605

'Any person injured in his business or property by reason of a violation of section 1962 of this chapter may . . . recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .' Section 1962 has four subparts and generally prohibits the use of income obtained from a pattern of racketeering activity…. Because of the vagueness of this language, courts continue to struggle with its interpretation." SEDIMA, S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, (1985),

Therefore, it obvious that without trial court's offering the road map, the issues could be more blurred and the jury could have completely lost in jungle there as here. Plaintiff's pray for the drafting author's offering to the sitting jury with precise and non-restrictive road map based upon several controlling legal authorities,  JA 609-611, is a reasonably and proper efforts of due diligence in court room.  Without such instruction of clarification as being sought by Plaintiffs' counsel, nothing would be "clear on its face", while it has never been clear to many experienced jurists, much less to jury.

8 U.S.C. § 1962(c). An enterprise is any legal entity or "group of individuals associated in fact." 18 U.S.C. § 1961(4). An enterprise has engaged in a pattern of racketeering if it has committed at least two acts of racketeering in ten years. 18 U.S.C. § 1961(5). Acts of racketeering include securities fraud, wire fraud, and fraud involving use of the mails. 18 U.S.C. § 1961(1)(B). § 1962. and § 1964(c).

In Crocker Nat. Bank v Rockwell International Corp. (555 F. Supp. 47 (N.D. Cal.1982,)   "On its face RICO is not limited to persons or activities commonly associated with organized crime, and the Court of Appeals for the Ninth Circuit has refused to apply such a limitation." Citing United States v. Thordarson, 646 F.2d at 1328 n.10; United States v. Campanale, 518 F.2d at 363-64. the court held that no connection to organized crime is required for a civil RICO action.

Courts have acknowledged that RICO has a broad reach. United States v. Thordarson, 646 F.2d at 1329 n.10. The jury instruction amounted to an assertion that for some reason this case is not within that reach, but they have not established a way to

distinguish this case from others and have not shown that Congress intended the result the author of this jury instruction seek for, and for the benefits of the defendant.

**"The language of RICO gives no obvious indication that a civil action can proceed only after a criminal conviction. The word "conviction" does not appear in any relevant portion of the statute. See §§ 1961, 1962, 1964(c)**…. As defined in the statute, racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he *could be*. SESEDIMA, S.P.R.L., S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, 105 S.Ct. 327587 L.Ed.2d 346, 1985; See also S.Rep. No. 91-617, p. 158 (1969): "a racketeering activity . . . must be an act in itself *subject to* criminal sanction" (emphasis added). Thus, a prior conviction-requirement cannot be found in the definition of "racketeering activity." Nor can it be found in § 1962, which sets out the statute's substantive provisions. Indeed, if either § 1961 or § 1962 did contain such a requirement, a prior conviction would also be a prerequisite, nonsensically, for a criminal prosecution, or for a civil action by the Government to enjoin violations *that had not yet occurred.*"

It is clear that Congress intended RICO to aid, if not accomplish, the elimination of organized crime in the United States. Organized Crime Control Act of 1970, Pub. L. No. 91-452, Sec. 904(a), 84 Stat. 922, 923 (1970). Congress did not, however, limit the scope of RICO to persons connected with organized crime, United States v. Campanale, 518 F.2d 352, 363-64 (9th Cir. 1975), or even to those activities that are commonly thought of as racketeering, United States v. Thordarson, 646 F.2d 1323, 1328, n.10 (9th Cir. 1981). Instead, Congress focused on particular activities and provided remedies against persons engaging in them.

An enterprise is any legal entity or "group of individuals associated in fact." 18 U.S.C. § 1961(4). An enterprise has engaged in a pattern of racketeering if it has committed at least two acts of racketeering in ten years. 18 U.S.C. § 1961(5). Acts of racketeering include securities fraud, wire fraud, and fraud involving use of the mails. 18 U.S.C. § 1961(1)(B)

The key purpose of RICO's civil remedy is to "divest the association of the fruits of its ill-gotten gains. (not necessarily "criminally gotten gains", added)" United States v. Turkette, 452 U.S. 576, 585, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981). This purpose would be severely undermined if persons who suffered direct harm from racketeering activity as defined by the statute could not recover in the absence of a showing of some "special" harm or some overall anti-competitive effect. Such a rule would leave money derived from actions prohibited by RICO precisely where Congress did not intend it to remain, in the hands of RICO violators.

The trial court furnished jury instruction in the underlying civil RICO trial proceedings, involved sufficient words and phrases addressing RICO's legal technicalities, yet it did not reflect the trial Court's any efforts to give the jury any enlightening road map, being quoted in foregoing precedents, neither would the Court allow any remedial efforts from Plaintiffs.

As the U.S. Supreme Court made it clear, there is no requirement that a private action under § 1964(c) can proceed only against a defendant who has already been convicted of a predicate act or of a RICO violation. A prior-conviction requirement is not supported by RICO's history, its language, or considerations of policy. To the contrary, every indication is that no such requirement exists. Accordingly, the fact that respondents have not been convicted under RICO or the federal mail and wire fraud statutes does not bar petitioner's action. SESEDIMA, S.P.R.L., S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, 105 S.Ct. 327587 L.Ed.2d 346, 1985

Additionally, the term "violation" does not imply a criminal conviction. See *United States v. Ward,* 448 U.S. 242, 249-250, 100 S.Ct. 2636, 2641-2642, 65 L.Ed.2d 742 (1980). It refers only to a failure to adhere to legal requirements.

That the offending conduct is described by reference to criminal statutes does not mean that its occurrence must be established by criminal standards or that the consequences of a finding of liability in a private civil action are identical to the

consequences of a criminal conviction. Cf.*United States v. Ward, supra,* 448 U.S., at 248-251, 100 S.Ct., at 2641-2642

Finally, we note that a prior-conviction requirement would be inconsistent with Congress' underlying policy concerns. Such a rule would severely handicap potential plaintiffs. A guilty party may escape conviction for any number of reasons—not least among them the possibility that the Government itself may choose to pursue only civil remedies. SEDIMA, S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, 105 S.Ct. 327587 L.Ed.2d 346, 1985, citing Cf. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 344, 99 S.Ct. 2326, 2333, 60 L.Ed.2d 931 (1979).

**"In sum, we can find no support in the statute's history, its language, or considerations of policy for a requirement that a private treble-damages action under § 1964(c) can proceed only against a defendant who has already been criminally convicted. To the contrary, every indication is that no such requirement exists. Accordingly, the fact that Imrex and the individual defendants have not been convicted under RICO or the federal mail and wire fraud statutes does not bar SeSeSedima, S.P.R.L., S.P.R.L.'s action."** SEDIMA, S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, 105 S.Ct. 327587 L.Ed.2d 346, 1985.

Se*cond Circuit goes further. Its precedent rejected a requirement of an organized crime nexus. 741 F.2d, at 492; see Moss v. Morgan Stanley, Inc., 719 F.2d 5, 21* (CA2 1983) ***United States v. Turkette,*** **452 U.S. 576, 586-587, 101 S.Ct. 2524, 2530-2531, 69 L.Ed.2d 246 (1981), but also of its express admonition that RICO is to** ***"be liberally construed to effectuate its remedial purposes,"*** **Pub.L. 91-452, § 904(a), 84 Stat. 947. The statute's "remedial purposes" are nowhere more evident than in the provision of a private action for those injured by racketeering activity.** ***United States v. Turkette,*** **452 U.S. 576, 586-587, 101 S.Ct. 2530-2531, 69 L.Ed.2d 246 (1981)**

**Yet Congress wanted to reach both "legitimate" and "illegitimate" enterprises.** ***United States v. Turkette, supra.*** **The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. "[T]he fact that RICO has been applied in situations not expressly anticipated by Congress**

**does not demonstrate ambiguity. It demonstrates breadth." *Haroco, Inc. v. American National Bank & Trust Co. of Chicago, supra,* at 398.**

None of these balanced measures were taken by the trial court.

## Argument V: Trial Court Erred by Its Refusal to Help the Jury

The trial court's rejection to allow Plaintiff proposed insertions and modification to be incorporated into the jury instruction may be part of the Trial Court's consistent omission to extend necessary helps to jury to allow the latter to better understand their job in complicated civil RICO. In the mid of the jury deliberation,  Court was requested by the deliberating jury for viewing of Plaintiffs' impeachment evidence exhibits number 7 and 9.  The Court flatly rejected without explanation.

The jury requested exhibits were Defendant Mark Lezell's two emails alluring, and urging the victims-plaintiffs to speed up wiring funds into his "escrow account" with warning that promised "benefits" could be unavailable if not promptly "wiring". Evidence was shown to the jury and Mr. Lezell read those emails to the jury during the trial.  The trial Court may decline the Jury's Request for viewing a piece of evidence within the Court's discretion. However, the Court flat rejection to help forgetful jury to review such evidence  to have Juror's memory refreshed upon request, much less to offer any assistance to help the deliberating juror to have her confusion clarified regarding certain possibly decisive information in exposure of the Defendant Lezell's wrongdoings, may not be proper.  Here, court's omission, may be a reversible error: "When a jury asks for guidance on a specific issue, the trial court is obligated to respond with "'concrete accuracy'" to the jury's question. Alcindorev. United States, 818 A.2d 152, 155 (D.C. 2003) (quoting Whitakerv. United States, 617 A.2d 499, 501 (D.C 1992)). Similarly, "[w]hen a jury sends a note which demonstrates that it is confused, the trial court must not allow that confusion to persist; it must respond appropriately." Id. In some cases, the nature of the question asked or the confusion expressed may be such that simple referral to the original instructions is appropriate because the judge knows that the answer to the question is readily to be found there or that rereading the instructions is likely to clear the confusion. However, referral to

theoriginal instruction cannot be adopted as a reflexive response (even if the original instruction was proper) because a jury's question that comes after instruction suggests that — at least in the jurors' estimation — the original instructions have not provided sufficient guidance of the law the jury is to apply to the evidence presented at trial.

Whether the trial court's response referring the jury to reread the initial instruction was adequate to the task in this case depends on what the jury's note asked, and whether (and, if so, how clearly) the original instructions addressed the jury's query distinct concepts, amenable to different standards of proof, is susceptible to misinterpretation, particularly by a layperson, which could lead to a fundamental misunderstanding of what the law requires. See, e.g., Story Parchment Co.v. Paterson Parchment Paper Co., 282 U.S.555, 563 (1931)

The trial court's such selected omissions, in addition to its aggressive action to grant summary judgment covering the most part of Plaintiffs' claims, being put together, have resulted in very prejudicial outcome to the grieved plaintiffs, paving the ways for those Ponzi-Plus conspirators to escape all legal consequences, together with the loots of unjust enrichment.

## 6. <u>CONCLUSION</u>

Wherefore, in the foregoing light, Appellants respectfully pray that the March 4, 2015 final judgment be reversed and vacated. This case should be remanded for a new trial of which all wrongfully dismissed causes of actions be properly adjudicated. Appellants humbly pray for all other relief this Honorable court finds it appropriate. Due to a very sophisticated nature of this multifaceted case, an oral argument may help further clarify the complicated issues and ramifications. Therefore, an Oral Argument is hereby respectfully prayed.

Respectfully submitted by,


Ning Ye, Esq., Counsel for the Appellants
36-26A Union Street, Suite 3F
Flushing, NY 11354
Telephone: 718-308-6626; Facsimile: 718-228-5816
Email: ynyale@aol.com

STATEMENT OF RELATED CASES PER 2nd CIRCUIT

This undersigned counsel for the Petitioner/Appellant, hereby solemnly states that the following most critical cases, among all legal authorities within this judicial circuit, is as follows, inter allia:

*SESEDIMA, S.P.R.L., S.P.R.L. v. IMREX CO., et al. 473 U.S. 479, 105 S.Ct. 327587 L.Ed.2d 346, 1985.
*United States v. Turkette, 452 U.S. 576, 585, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981)
*Alcindore v. United States, 818 A.2d 152, 155 (D.C. 2003)
*Caribbean Broad. Sys.,Ltd.v. Cable & Wireless PLC, 148 F.3d 1080, 1086 (D.C. Cir. 1998)
*Atchinson v. District of Columbia, 73 F.3d 418, 421-22 (D.C. Cir. 1996)
 *Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983) p35

Respectfully submitted:


/s/Ning Ye, Esquire Counsel for the Appellants

Certificate of Compliance

This undersigned hereby certifies on this 13th day of August, 2015, he completed the Appellants' Correctional Opening Brief, 39 pages in total, excluding prefix and suffix, by word count from 13,987 words, excluding words un-counted in Cover, Table of Contents, Table of Authorities and all suffix attachment, less than the ceiling of 14000 wordsfor opening brief pursuant to FRAP32（a）(7). Consequently, the format of the Petitioner's Brief has been in full compliance with the type-set, Times New Roman 14, double spaced, and word format, with 13978  words (Excluding  words  contained in  cover,  all  tables,  all Certifications and footnotes) and pursuant to FRAP32（a）(7)（b）and ( c)，  Local Rules of this Honorable Court. attached to this Opening Brief separately with ECF Broadcasting system.


/s/Ning Ye, Esq.

CERTIFICATE OF SERVICE

This is to certify that I have this 13th day of August, 2015 served a copy of this Opening Brief and Appellants' Appendix to the counsel of record in the foregoing matter on behalf of Appellee Mark Lezell via the Clerk's ECF Broadcasting systems.

This undersigned further certifies that he will also cause to serve with two copies of the physical hardcopy of this Brief, finally compiled, indexed, together with two physical copies of the Joint Appendix, by USPS postage prepaid, priority Mail to:

Peter Goldman, Esq.
524 King Street
Alexandria, VA 22314

_____
_/s/Ning Ye, Esquire  Counsel for the Appellant
 36-26A Union Street, Suite 3F
 Flushing, NY 11354
 Telephone: 718-308-6626
 Facsimile: 718-228-5816 Email:
 ynyale@aol.com