ORAL ARGUMENT NOT YET SCHEDULED
No. 15-7028

_____

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

LUCY Y. LU, *ET AL.*,

Plaintiffs-Appellants,

v.

MARK LEZELL

Defendant-Appellee

On Appeal from the

United States District Court for the District of Columbia

Case No. 1:11-cv-1815 (Hon. James Boasberg)

_____

**APPELLANTS' APPENDIX**

_____

Ning Ye, Esq.
Counsel for the Appellants for the Record
36-26A Union Street
Suite 3 F
Flushing, NY 11354
Tel.: (718) 308-6626
Facsimile: (718) 228-5816
Email: ynyale@aol.com

August 10, 2015

1

# TABLE OF CONTENTS

Trial Court's ECF Docket ---------------------------------------------3

Final Judgment----------------------------------------------------18

Trial Court's Order and Memorandum to Dismiss Common Law
Claims from Count #2 through Court 6, dated 01/25/2013------------19

Trial Court's Order and Memorandum to Dismiss Common
Law Claims from Count #2 through Court 6, dated 05/27/2014-----29
Trial Court's Order to Dismiss the Motion to Intervene -------------48

Selected Minutes Order--------------------------------------------52

Jury Verdict----------------------------------------------------- 53

Jury Trial Instruction---------------------------------------------54

Jury Trial Exhibits---------------------------------------------- 65

Plaintiff Lucy Lu's Amended Complaint------------------------------68

Plaintiffs' 3rd Amended Complaint-----------------------------------83

Plaintiff's Motion to Intervene------------------------------------100

Defendants' Lezell and Ghosh Motion to Dismiss-------------------107

Plaintiff's Opposition to Defendant's Motion to Dismiss-----------122

Defendants' Answer to the Complaint-------------------------------146

Defendant Lezell's Motion for Summary Judgment-----------------160

Plaintiff's Opposition to Motion for Summary Judgment----------210

Plaintiff's Surreply opposing Motion for Summary Judgment-----245

Complaint------------------------------------------------------265

Jury Panel Sheet------------------------------------------------ 275

OSED-Lezel Escrow Agreement------------------------------------ 278

Proof of Appellant Lucy Lu's Transfer of the Cash to Lezel's
Escrow Account-------------------------------------------------- 282
Lezell's Instruction for Money Transfer to Lucy Lu-------------- 284

05/28/2008 Email Transaction b/t Lezel and Lu------------------- 286

Trial Transcript for March 3, 2015-------------------------------- 289

Trial Transcript for March 3, 2015 -------------------------------- 487

2

1:11-cv-01815-JEB LU et al v. LEZELL et al

James E. Boasberg, presiding
Date filed: 10/13/2011
*Date terminated: 03/06/2015*
Date of last filing: 03/25/2015

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| | *Filed:* | 10/13/2011 | ⬤Summons Issued |
| | *Entered:* | 10/14/2011 | |
| 1 | *Filed:* | 10/13/2011 | ⬤Complaint |
| | *Entered:* | 10/14/2011 | |
| 2 | *Filed:* | 10/13/2011 | ⬤Notice of Related Case |
| | *Entered:* | 10/19/2011 | |
| 3 | *Filed &* *Entered:* | 11/09/2011 | ⬤Motion to Dismiss/Lack of Jurisdiction |
| | *Terminated:* | 12/07/2011 | |
| | *Filed &* *Entered:* | 11/10/2011 | ⬤Notice of QC |
| 4 | *Filed &* *Entered:* | 12/07/2011 | ⬤Order on Motion to Dismiss/Lack of Jurisdiction |
| 5 | *Filed &* *Entered:* | 12/20/2011 | ⬤Motion for Leave to File |
| | *Terminated:* | 01/05/2012 | |
| 6 | *Filed &* *Entered:* | 12/21/2011 | ⬤Memorandum in Opposition |
| 7 | *Filed &* *Entered:* | 12/27/2011 | ⬤Supplemental Memorandum |
| | *Filed &* *Entered:* | 12/28/2011 | ⬤Notice of Corrected Docket Entry |
| 8 | *Filed &* *Entered:* | 12/29/2011 | ⬤Motion to Amend/Correct |
| | *Terminated:* | 12/30/2011 | |
| | *Filed &* *Entered:* | 12/30/2011 | ⬤Notice of QC |
| | *Filed:* | 01/05/2012 | ⬤Leave to File Denied |
| | *Entered:* | 01/11/2012 | |
| 9 | *Filed &* *Entered:* | 01/05/2012 | ⬤Order on Motion for Leave to File |

| | | | |
|---|---|---|---|
| 10 | *Filed:* *Entered:* *Terminated:* | 01/19/2012 01/20/2012 03/16/2012 | Motion for Leave to File |
| 11 | *Filed & Entered:* | 02/02/2012 | Memorandum in Opposition |
| 12 | *Filed & Entered:* | 02/09/2012 | Reply to opposition to Motion |
| 13 | *Filed & Entered:* | 02/11/2012 | Surreply |
| | *Filed & Entered:* | 03/16/2012 | Set/Reset Deadlines |
| 14 | *Filed & Entered:* | 03/16/2012 | Order on Motion for Leave to File |
| 15 | *Filed & Entered:* | 03/16/2012 | Memorandum in Opposition |
| 16 | *Filed & Entered:* | 03/16/2012 | Amended Complaint |
| 17 | *Filed & Entered:* *Terminated:* | 03/31/2012 05/22/2012 | Motion for Miscellaneous Relief |
| 18 | *Filed & Entered:* *Terminated:* | 04/27/2012 04/30/2012 | Motion to Withdraw as Attorney |
| 19 | *Filed & Entered:* *Terminated:* | 04/27/2012 04/30/2012 | Motion for Extension of Time to File Response/Reply |
| | *Filed & Entered:* | 04/30/2012 | Order on Motion to Withdraw as Attorney |
| | *Filed & Entered:* | 04/30/2012 | Order on Motion for Extension of Time to File Response/Reply |
| | *Filed & Entered:* | 04/30/2012 | Set/Reset Deadlines |
| | *Filed & Entered:* | 05/04/2012 | Order on Motion to Withdraw as Attorney |
| 20 | *Filed & Entered:* *Terminated:* | 05/04/2012 05/04/2012 | Motion to Withdraw as Attorney |
| 21 | *Filed & Entered:* *Terminated:* | 05/18/2012 05/22/2012 | Motion to Intervene |
| 22 | *Filed & Entered:* | 05/18/2012 | Motion for Discovery |

| | | | |
|---|---|---|---|
| | *Terminated:* | 05/22/2012 | |
| [23](#) | *Filed & Entered:* | 05/18/2012 | Motion for Discovery |
| | *Terminated:* | 05/29/2012 | |
| [24](#) | *Filed & Entered:* | 05/18/2012 | Motion to Intervene |
| | *Terminated:* | 05/29/2012 | |
| | *Filed & Entered:* | 05/22/2012 | Order |
| [25](#) | *Filed & Entered:* | 05/22/2012 | Order on Motion for Miscellaneous Relief |
| [26](#) | *Filed & Entered:* | 05/29/2012 | Order on Motion for Discovery |
| [27](#) | *Filed & Entered:* | 05/29/2012 | Memorandum & Opinion |
| [28](#) | *Filed & Entered:* | 06/01/2012 | Mail Returned |
| [29](#) | *Filed & Entered:* | 06/01/2012 | Mail Returned |
| [30](#) | *Filed & Entered:* | 06/06/2012 | Mail Returned |
| [31](#) | *Filed & Entered:* | 06/06/2012 | Mail Returned |
| | *Filed & Entered:* | 08/29/2012 | Order |
| | *Filed & Entered:* | 08/29/2012 | Set/Reset Deadlines |
| [32](#) | *Filed & Entered:* | 09/07/2012 | Mail Returned |
| [33](#) | *Filed & Entered:* | 09/12/2012 | Mail Returned |
| [34](#) | *Filed & Entered:* | 09/14/2012 | Response to Order to Show Cause |
| | *Filed & Entered:* | 09/17/2012 | Order |
| | *Filed & Entered:* | 09/17/2012 | Set/Reset Deadlines |
| [35](#) | *Filed & Entered:* | 09/27/2012 | Mail Returned |
| [36](#) | *Filed & Entered:* | 10/30/2012 | Motion for Leave to File |
| | *Terminated:* | 10/31/2012 | |

|    | Filed & Entered: | 10/31/2012 | Order on Motion for Leave to File |
|----|------------------|------------|-----------------------------------|
| 37 | Filed & Entered: | 10/31/2012 | Amended Complaint |
| 38 | Filed & Entered: | 10/31/2012 | Motion for Entry of Default |
|    | Terminated: | 11/14/2012 | |
| 39 | Filed & Entered: | 11/13/2012 | Clerk's Entry of Default |
|    | Filed & Entered: | 11/14/2012 | Order on Motion for Entry of Default |
| 40 | Filed & Entered: | 11/19/2012 | Notice of Appearance |
| 41 | Filed & Entered: | 11/19/2012 | Motion to Set Aside Default |
|    | Terminated: | 12/19/2012 | |
| 42 | Filed & Entered: | 11/20/2012 | Motion for Leave to File |
|    | Terminated: | 12/19/2012 | |
| 43 | Filed & Entered: | 11/21/2012 | Motion for Sanctions |
|    | Terminated: | 12/19/2012 | |
| 44 | Filed & Entered: | 12/03/2012 | Memorandum in Opposition |
| 45 | Filed & Entered: | 12/04/2012 | Memorandum in Opposition |
| 46 | Filed & Entered: | 12/05/2012 | Memorandum in Opposition |
|    | Filed & Entered: | 12/06/2012 | Order |
| 47 | Filed & Entered: | 12/06/2012 | Reply to opposition to Motion |
| 48 | Filed & Entered: | 12/06/2012 | Reply to opposition to Motion |
|    | Filed & Entered: | 12/07/2012 | Set/Reset Hearings |
| 49 | Filed & Entered: | 12/11/2012 | Reply to opposition to Motion |
|    | Filed & Entered: | 12/19/2012 | Order on Motion to Set Aside Default |
|    | Filed & Entered: | 12/19/2012 | Status Conference |

| | | | |
|---|---|---|---|
| [50] | *Filed:*<br>*Entered:*<br>*Terminated:* | 12/19/2012<br>12/20/2012<br>01/25/2013 | Motion to Dismiss |
| [51] | *Filed &*<br>*Entered:* | 01/08/2013 | Memorandum in Opposition |
| [52] | *Filed &*<br>*Entered:* | 01/17/2013 | Reply to opposition to Motion |
| | *Filed &*<br>*Entered:* | 01/25/2013 | Set/Reset Deadlines |
| [53] | *Filed &*<br>*Entered:* | 01/25/2013 | Memorandum & Opinion |
| [54] | *Filed &*<br>*Entered:* | 01/31/2013 | Answer to Amended Complaint |
| | *Filed &*<br>*Entered:* | 02/01/2013 | Order |
| | *Filed &*<br>*Entered:* | 02/01/2013 | Set/Reset Hearings |
| [55] | *Filed &*<br>*Entered:* | 02/12/2013 | Meet and Confer Statement |
| | *Filed &*<br>*Entered:* | 03/04/2013 | Scheduling Conference |
| | *Filed &*<br>*Entered:* | 03/04/2013 | Order |
| | *Filed &*<br>*Entered:* | 03/04/2013 | Set/Reset Deadlines |
| | *Filed &*<br>*Entered:* | 03/04/2013 | Set/Reset Deadlines |
| [56] | *Filed &*<br>*Entered:* | 03/04/2013 | Scheduling Order |
| [57] | *Filed &*<br>*Entered:* | 03/18/2013 | Rule 26a1 Statement |
| [58] | *Filed &*<br>*Entered:* | 03/18/2013 | Rule 26a1 Statement |
| [59] | *Filed &*<br>*Entered:* | 04/04/2013 | Rule 26a2 Statement |
| | *Filed &*<br>*Entered:* | 04/18/2013 | Order |
| | *Filed &*<br>*Entered:* | 04/23/2013 | Order |
| [60] | *Filed:*<br>*Entered:*<br>*Terminated:* | 04/25/2013<br>04/26/2013<br>05/06/2013 | Motion to Appoint Counsel |

| | | |
|---|---|---|
| *Filed &*<br>*Entered:* | 04/26/2013 | Order |
| *Filed &*<br>*Entered:* | 04/30/2013 | Order |
| *Filed &*<br>*Entered:* | 05/01/2013 | Order |
| *Filed &*<br>*Entered:* | 05/03/2013 | Order |
| *Filed &*<br>*Entered:* | 05/03/2013 | Set/Reset Deadlines |
| 61 | *Filed:*<br>*Entered:*<br>*Terminated:* | 05/03/2013<br>05/06/2013<br>05/06/2013 | Motion to Dismiss |
| | *Filed &*<br>*Entered:* | 05/06/2013 | Order on Motion to Appoint Counsel |
| | *Filed &*<br>*Entered:* | 06/24/2013 | Order |
| 62 | *Filed &*<br>*Entered:*<br>*Terminated:* | 06/26/2013<br><br>07/19/2013 | Motion for Default Judgment |
| | *Filed &*<br>*Entered:* | 06/27/2013 | Order |
| | *Filed &*<br>*Entered:* | 06/27/2013 | Telephone Conference |
| | *Filed &*<br>*Entered:* | 06/27/2013 | Set/Reset Deadlines/Hearings |
| 63 | *Filed &*<br>*Entered:* | 06/27/2013 | Notice (Other) |
| 64 | *Filed &*<br>*Entered:* | 07/02/2013 | Supplemental Memorandum |
| 65 | *Filed &*<br>*Entered:*<br>*Terminated:* | 07/09/2013<br><br>07/10/2013 | Motion for Protective Order |
| | *Filed &*<br>*Entered:* | 07/10/2013 | Order on Motion for Protective Order |
| | *Filed &*<br>*Entered:* | 07/12/2013 | Order |
| | *Filed &*<br>*Entered:* | 07/16/2013 | Order |
| | *Filed:*<br>*Entered:* | 07/16/2013<br>07/17/2013 | Telephone Conference |
| 66 | *Filed &* | 07/18/2013 | Response to Document |

8

| | | | |
|---|---|---|---|
| | *Entered:* | | |
| [67](#) | *Filed & Entered:* | 07/18/2013 | Response to Document |
| | *Filed & Entered:* | 07/19/2013 | Order |
| [68](#) | *Filed & Entered:* | 07/19/2013 | Order on Motion for Default Judgment |
| [69](#) | *Filed & Entered:* | 07/21/2013 | Response to Document |
| | *Filed & Entered:* | 07/22/2013 | Set/Reset Deadlines |
| [70](#) | *Filed & Entered:* | 07/22/2013 | Clerk's Judgment |
| [71](#) | *Filed & Entered:* | 07/29/2013 | Response to Document |
| | *Filed & Entered:* | 07/31/2013 | Order |
| [72](#) | *Filed & Entered:* *Terminated:* | 07/31/2013 09/20/2013 | Motion for Attorney Fees |
| [73](#) | *Filed & Entered:* | 08/09/2013 | Memorandum in Opposition |
| | *Filed & Entered:* | 08/20/2013 | Order |
| | *Filed & Entered:* | 08/20/2013 | Telephone Conference |
| | *Filed & Entered:* | 08/20/2013 | Set/Reset Deadlines |
| [74](#) | *Filed & Entered:* *Terminated:* | 08/20/2013 08/30/2013 | Motion for Attorney Fees |
| | *Filed & Entered:* | 08/27/2013 | Order |
| | *Filed & Entered:* | 08/27/2013 | Set/Reset Hearings |
| [75](#) | *Filed & Entered:* | 08/30/2013 | Order on Motion for Attorney Fees |
| | *Filed & Entered:* | 09/03/2013 | Set/Reset Deadlines |
| | *Filed & Entered:* | 09/10/2013 | Order |
| | *Filed &* | 09/10/2013 | Order |

| | *Entered:* | | |
|---|---|---|---|
| | *Filed:* *Entered:* | 09/16/2013 09/17/2013 | Telephone Conference |
| [76](#) | *Filed &* *Entered:* | 09/20/2013 | Order on Motion for Attorney Fees |
| | *Filed &* *Entered:* | 10/10/2013 | Status Conference |
| | *Filed &* *Entered:* | 10/11/2013 | Set/Reset Deadlines |
| [77](#) | *Filed &* *Entered:* | 10/11/2013 | Order |
| [78](#) | *Filed &* *Entered:* *Terminated:* | 11/12/2013 12/02/2013 | Motion for Attorney Fees |
| [79](#) | *Filed &* *Entered:* | 11/20/2013 | Memorandum in Opposition |
| [80](#) | *Filed &* *Entered:* | 12/02/2013 | Order on Motion for Attorney Fees |
| [81](#) | *Filed &* *Entered:* *Terminated:* | 12/15/2013 12/16/2013 | Motion for Summary Judgment |
| [82](#) | *Filed &* *Entered:* *Terminated:* | 12/15/2013 12/16/2013 | Motion for Summary Judgment |
| [83](#) | *Filed &* *Entered:* *Terminated:* | 12/15/2013 12/16/2013 | Motion for Summary Judgment |
| [84](#) | *Filed &* *Entered:* *Terminated:* | 12/15/2013 12/16/2013 | Motion for Summary Judgment |
| [85](#) | *Filed &* *Entered:* *Terminated:* | 12/15/2013 12/16/2013 | Motion for Summary Judgment |
| [86](#) | *Filed &* *Entered:* *Terminated:* | 12/15/2013 12/16/2013 | Motion for Summary Judgment |
| [87](#) | *Filed &* *Entered:* *Terminated:* | 12/15/2013 12/16/2013 | Motion for Summary Judgment |
| | *Filed &* *Entered:* | 12/16/2013 | Notice of QC |
| | *Filed &* | 12/16/2013 | Notice of QC |

| | *Entered:* | | |
|---|---|---|---|
| | *Filed & Entered:* | 12/16/2013 | Notice of QC |
| 88 | *Filed & Entered:* *Terminated:* | 12/16/2013 05/27/2014 | Motion for Summary Judgment |
| 89 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 90 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 91 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 92 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 93 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 94 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 95 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 96 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 97 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 98 | *Filed & Entered:* | 12/16/2013 | Large Additional Attachment(s) |
| 99 | *Filed & Entered:* | 12/17/2013 | Large Additional Attachment(s) |
| 100 | *Filed & Entered:* | 12/17/2013 | Large Additional Attachment(s) |
| 101 | *Filed & Entered:* | 12/17/2013 | Large Additional Attachment(s) |
| | *Filed & Entered:* | 01/08/2014 | Notice of Corrected Docket Entry |
| 102 | *Filed & Entered:* *Terminated:* | 01/08/2014 01/08/2014 | Motion for Summary Judgment |
| 103 | *Filed & Entered:* | 01/08/2014 | Supplemental Memorandum |
| 104 | *Filed & Entered:* | 01/14/2014 | Response to motion |
| 105 | *Filed &* | 01/23/2014 | Reply to opposition to Motion |

11

| | | | |
|---|---|---|---|
| | *Entered:* | | |
| [106](#) | *Filed & Entered:* | 02/12/2014 | Surreply |
| [107](#) | *Filed & Entered:* *Terminated:* | 02/13/2014 05/27/2014 | Motion to Strike |
| [108](#) | *Filed & Entered:* | 02/27/2014 | Memorandum in Opposition |
| [109](#) | *Filed & Entered:* *Terminated:* | 02/27/2014 05/27/2014 | Motion for Leave to File |
| [110](#) | *Filed & Entered:* | 02/28/2014 | Memorandum in Opposition |
| [111](#) | *Filed & Entered:* | 03/08/2014 | Reply to opposition to Motion |
| [112](#) | *Filed & Entered:* | 05/27/2014 | Order on Motion for Summary Judgment |
| [113](#) | *Filed & Entered:* | 05/27/2014 | Memorandum & Opinion |
| | *Filed & Entered:* | 05/28/2014 | Set/Reset Hearings |
| | *Filed & Entered:* | 06/06/2014 | Order |
| | *Filed & Entered:* | 06/06/2014 | Status Conference |
| [114](#) | *Filed & Entered:* | 06/06/2014 | Order |
| [115](#) | *Filed:* *Entered:* | 06/06/2014 06/09/2014 | Case Referred to Magistrate Judge |
| [116](#) | *Filed:* *Entered:* | 06/06/2014 06/09/2014 | Case Referred to Magistrate Judge |
| | *Filed & Entered:* | 06/10/2014 | Set/Reset Hearings |
| [117](#) | *Filed & Entered:* | 06/11/2014 | Order |
| | *Filed & Entered:* | 07/28/2014 | Settlement Conference |
| | *Filed & Entered:* | 08/05/2014 | Order |
| | *Filed & Entered:* | 08/08/2014 | Order |
| | *Filed &* | 08/08/2014 | Telephone Conference |

| | | | |
|---|---|---|---|
| | *Entered:* | | |
| | *Filed &*<br>*Entered:* | 09/11/2014 | Order |
| | *Filed &*<br>*Entered:* | 09/11/2014 | Status Conference |
| | *Filed &*<br>*Entered:* | 09/16/2014 | Order |
| | *Filed:*<br>*Entered:* | 09/16/2014<br>09/17/2014 | Telephone Conference |
| | *Filed &*<br>*Entered:* | 09/17/2014 | Set/Reset Hearings |
| | *Filed &*<br>*Entered:* | 09/17/2014 | Order |
| | *Filed &*<br>*Entered:* | 10/08/2014 | Order |
| | *Filed &*<br>*Entered:* | 10/08/2014 | Telephone Conference |
| | *Filed &*<br>*Entered:* | 11/20/2014 | Order |
| | *Filed &*<br>*Entered:* | 11/20/2014 | Status Conference |
| 118 | *Filed &*<br>*Entered:* | 12/01/2014 | Notice of Appearance |
| 119 | *Filed &*<br>*Entered:* | 12/15/2014 | Notice of Appearance |
| | *Filed &*<br>*Entered:* | 12/18/2014 | Order |
| | *Filed &*<br>*Entered:* | 12/18/2014 | Status Conference |
| 120 | *Filed &*<br>*Entered:* | 12/18/2014 | Mail Returned |
| 121 | *Filed &*<br>*Entered:*<br>*Terminated:* | 01/06/2015<br><br>02/03/2015 | Motion for Order of Sale |
| 122 | *Filed &*<br>*Entered:* | 01/08/2015 | Response to motion |
| | *Filed &*<br>*Entered:* | 01/12/2015 | Notice of Corrected Docket Entry |
| 123 | *Filed &*<br>*Entered:* | 01/12/2015 | Reply to opposition to Motion |
| 124 | *Filed &*<br>*Entered:* | 01/12/2015 | Reply to opposition to Motion |

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 01/13/2015 | Order |
| [125](#) | *Filed & Entered:* | 01/13/2015 | Surreply |
| | *Filed & Entered:* | 01/14/2015 | Order |
| | *Filed & Entered:* | 01/14/2015 | Set/Reset Deadlines |
| [126](#) | *Filed & Entered:* *Terminated:* | 01/14/2015 01/20/2015 | Motion for Leave to File |
| [127](#) | *Filed & Entered:* *Terminated:* | 01/16/2015 02/04/2015 | Motion in Limine |
| [128](#) | *Filed & Entered:* | 01/16/2015 | Response to Document |
| [129](#) | *Filed & Entered:* | 01/16/2015 | Reply to opposition to Motion |
| [130](#) | *Filed & Entered:* *Terminated:* | 01/16/2015 02/04/2015 | Motion in Limine |
| | *Filed & Entered:* | 01/20/2015 | Order on Motion for Leave to File |
| | *Filed & Entered:* | 01/20/2015 | Notice of QC |
| [131](#) | *Filed & Entered:* | 01/20/2015 | Surreply |
| [132](#) | *Filed & Entered:* | 01/25/2015 | Pretrial Statement |
| [133](#) | *Filed & Entered:* | 01/26/2015 | Pretrial Statement |
| [134](#) | *Filed & Entered:* | 01/30/2015 | Response to motion |
| [135](#) | *Filed & Entered:* | 02/02/2015 | Response to Document |
| | *Filed & Entered:* | 02/03/2015 | Pretrial Conference - Final |
| [136](#) | *Filed & Entered:* | 02/03/2015 | Pretrial Statement |
| [137](#) | *Filed & Entered:* *Terminated:* | 02/03/2015 02/04/2015 | Motion for Leave to File |

14

| 138 | *Filed & Entered:* | 02/03/2015 | Pretrial Statement |
|---|---|---|---|
| 139 | *Filed & Entered:* | 02/03/2015 | Order on Motion for Order of Sale |
| 140 | *Filed & Entered:* | 02/03/2015 | Order |
| 141 | *Filed:* *Entered:* | 02/03/2015 02/04/2015 | Case Referred to Magistrate Judge |
| 142 | *Filed & Entered:* | 02/04/2015 | Order |
| 143 | *Filed & Entered:* | 02/04/2015 | Order |
| 144 | *Filed & Entered:* | 02/05/2015 | Proposed Voir Dire |
| 145 | *Filed & Entered:* | 02/11/2015 | Proposed Voir Dire |
| 146 | *Filed & Entered:* | 02/11/2015 | Exhibit List |
| 147 | *Filed & Entered:* *Terminated:* | 02/17/2015 03/02/2015 | Motion to Strike |
| | *Filed & Entered:* | 02/18/2015 | Order |
| | *Filed & Entered:* | 02/18/2015 | Set/Reset Deadlines |
| 148 | *Filed & Entered:* | 02/18/2015 | Mail Returned |
| 149 | *Filed & Entered:* | 02/20/2015 | Response to motion |
| 150 | *Filed & Entered:* | 02/21/2015 | Reply to opposition to Motion |
| | *Filed:* *Entered:* | 02/23/2015 03/06/2015 | Settlement Conference |
| 151 | *Filed & Entered:* | 02/23/2015 | Exhibit List |
| 152 | *Filed & Entered:* | 02/25/2015 | Notice of Related Case |
| | *Filed & Entered:* | 02/26/2015 | Notice of QC |
| 153 | *Filed & Entered:* | 02/26/2015 | Notice of Related Case |
| | *Filed &* | 02/27/2015 | Telephone Conference |

| | | | |
|---|---|---|---|
| | *Entered:* | | |
| | *Filed & Entered:* | 02/27/2015 | Order |
| | *Filed & Entered:* | 03/02/2015 | Order |
| | *Filed & Entered:* | 03/02/2015 | Jury Selection |
| | *Filed & Entered:* | 03/02/2015 | Order on Motion to Strike |
| 154 | *Filed & Entered:* | 03/02/2015 | Notice (Other) |
| | *Filed & Entered:* | 03/03/2015 | Jury Trial - Held |
| | *Filed:* *Entered:* | 03/04/2015 03/06/2015 | Jury Trial - Held |
| 156 | *Filed:* *Entered:* | 03/04/2015 03/06/2015 | Jury Instructions |
| 157 | *Filed:* *Entered:* | 03/04/2015 03/06/2015 | Counsel Acknowledgement of Trial Exhibits |
| 158 | *Filed:* *Entered:* | 03/04/2015 03/06/2015 | Jury Notes |
| 159 | *Filed:* *Entered:* | 03/04/2015 03/06/2015 | SIGNATURE PAGE OF FOREPERSON |
| 160 | *Filed:* *Entered:* | 03/04/2015 03/06/2015 | Verdict form |
| 161 | *Filed:* *Entered:* | 03/04/2015 03/06/2015 | SIGNATURE PAGE OF FOREPERSON |
| 162 | *Filed & Entered:* | 03/06/2015 | Clerk's Judgment |
| 163 | *Filed & Entered:* | 03/10/2015 | Motion for Bill of Costs |
| 167 | *Filed:* *Entered:* | 03/11/2015 03/13/2015 | Mail Returned |
| 164 | *Filed & Entered:* | 03/13/2015 | Mail Returned |
| 165 | *Filed & Entered:* | 03/13/2015 | Mail Returned |
| 166 | *Filed & Entered:* | 03/13/2015 | Mail Returned |
| 168 | *Filed:* *Entered:* | 03/18/2015 03/19/2015 | Notice of Appeal |
| 169 | *Filed &* | 03/19/2015 | Transmission of Notice of Appeal and |

| *Entered:* | | Docket Sheet to USCA |
|---|---|---|
| *Filed & Entered:* | 03/25/2015 | USCA Case Number |

Civil Judgment (Rev  DC 03/10)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**MAR 0 6 2015**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

YING QING LU, et al.,

      Plaintiff(s)

        V

MARK LEZELL, et al.,

Civil Action No.   11cv1815 (JEB)

      Defendant(s)

## JUDGMENT ON THE VERDICT
### FOR DEFENDANT

This  cause having been tried by the  Court and a  Jury, before the Honorable

James E. Boasberg _____, Judge presiding, and the issues having been duly

tried and the Jury having rendered its verdict; now therefore, pursuant to the verdict,

IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff(s):

YING QING LU, OKLAHOMA SHELF EXPLORATION AND DEVELOPMENT, LLC, and
AFSHIN AFSHARNIA.

take nothing on the complaint against the defendant(s):

MARK LEZELL.

and that the said defendant(s) have and recover costs from the said plaintiff(s).

ANGELA D. CAESAR, Clerk

Dated: _3/06/2015_____     By: _____Anjanie Desai_____
                                                  Deputy Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **YING QING LU,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | Civil Action No.  11-1815 (JEB) |
| **MARK LEZELL,** *et al.,* | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs are two entities and two individuals who allege that Defendants Mark Lezell and Isam Ghosh defrauded them out of different investments.  They have brought this suit under the Racketeering Influenced and Corrupt Organizations Act and have also alleged several common-law causes of action.  Defendant Lezell has now moved to dismiss, arguing that the RICO claim is insufficiently pled and that one Plaintiff and two other counts should also be dismissed.  The Court agrees with all but the RICO argument.

**I.      Procedural Background**

The procedural history in this matter is somewhat involved.  Ying Qing Lu as the sole Plaintiff filed her initial Complaint in this matter on October 13, 2011.  She asserted causes of action for conspiracy under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, breach of contract, civil conspiracy, breach of fiduciary duty, negligence, and fraud.  <u>See</u> ECF No. 1.  On November 9, Defendants Lezell and Ghosh jointly moved to dismiss, and Plaintiff never responded.  The Court, therefore, on December 7, granted the Motion as

conceded and dismissed the case.  On December 20, Plaintiff filed a Motion for Leave to Late

File her Opposition.  In an Order of January 5, 2012, the Court explained that Plaintiff's

pleading, which was "incomprehensible and incoherent," "never clearly explain[ed] why the

Court should vacate its prior ruling."  See ECF No. 9 at 1.  The Court, accordingly, denied the

Motion without prejudice.

Plaintiff then filed another motion seeking to vacate the dismissal and asking leave to file

an amended complaint, both of which requests the Court granted in a Memorandum Opinion on

March 16, 2012.  See ECF No. 14.  In part, the Court held that the RICO allegations, while thin,

would survive a motion to dismiss.  See id. at 4-9.  Defense counsel subsequently sought to

withdraw, which the Court permitted in Minute Orders of April 30 and May 4.  Plaintiff's

counsel then improperly sought to intervene on behalf of other potential plaintiffs, which the

Court denied in an Order on May 29, explaining, *inter alia*, that the proper course was a motion

to amend complaint.  See ECF No. 27.  After Plaintiff failed to act for three months, the Court,

*sua sponte*, ordered that she show cause why the case should not be dismissed for want of

prosecution.  See Minute Order of Aug. 29, 2012.  Plaintiff responded, and the Court ultimately

permitted a Third Amended Complaint to be filed on October 31.  See ECF No. 37.  This

pleading added three other Plaintiffs: Oklahoma Shelf Exploration and Development, LLC;

Bridges Financial, LLC; and Afshin Afsharnia.  After neither Defendant responded, the Clerk

entered default.  See ECF No. 39.  Defendant Lezell, with counsel reappearing in the case, then

asked the Court to vacate the default.  See ECF No. 41.  The Court ultimately did so during a

hearing on December 19, and it permitted Lezell to file the Motion to Dismiss the Third

Amended Complaint, which is now ripe for decision.  See Minute Order of Dec. 19, 2012.

## II.      Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and she must thus be given every favorable inference that may be drawn from the allegations of fact.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citation omitted).

### III.    Analysis

Lezell sets forth a variety of arguments (some in just a sentence or two) in his Motion to

Dismiss, four of which deserve particular attention.  First, Plaintiffs' RICO claim is insufficiently

pled.  Second, claims by Plaintiff Bridges Financial, LLC are precluded by the Court's prior

Opinion in a related case.  Third, Plaintiffs' contract claim is barred by the statute of limitations.

Fourth, their breach-of-fiduciary-duty count fails to assert a fiduciary relationship.  The Court

will consider each in turn.

### A.    RICO

Lezell's arguments about Plaintiffs' RICO cause of action essentially restate the position

he and co-Defendant Ghosh took on the same question when they opposed Plaintiff Lu's motion

to amend her complaint a year ago.  See ECF No. 11.  And the Court's response is the same.  As

it stated in its Memorandum Opinion then, "Although this is hardly the most complex or

comprehensive of RICO schemes, it appears sufficient at this stage for Plaintiff to clear the

dismissal hurdle for several reasons."  See ECF No. 14 at 7.   The Court also concluded there and

repeats here: "The Court does note that some of Plaintiff's allegations about the other schemes

and victims are somewhat superficial. Should she fail to provide record evidence of these

multiple schemes and victims, Defendants may obtain greater success on a motion for summary

judgment."  Id. at 9.

### B.    Bridges

On July 25, 2011, Plaintiff  Earnest Bridges, represented by Plaintiffs' counsel here, filed

a separate suit against Lezell's law firm and Ghosh's consulting firm, alleging the same facts as

in this case and asserting claims for RICO and other common-law violations.  See Bridges v.

Lezell Law, PC, No. 11-1353, ECF No. 6 (Amended Complaint).  This Court, to whom that case

was also assigned, dismissed the RICO count with prejudice in a Memorandum Opinion.  See

Bridges v. Lezell Law, PC, 842 F. Supp. 2d 261 (D.D.C. 2012) (Bridges I).  Yet, in the guise of

Bridges Financial, LLC, the same RICO claim is now raised again in this suit.

      The doctrine of *res judicata* (or claim preclusion) prohibits Bridges Financial's inclusion

in this suit.  "A subsequent lawsuit is barred by claim preclusion 'if there has been prior litigation

(1) involving the same claims or cause of action, (2) between the same parties or their privies,

and (3) there has been a final, valid judgment on the merits, (4) by a court of competent

jurisdiction.'"  Natural Res. Def. Council v. EPA, 513 F.3d 257, 260 (D.C. Cir. 2008) (quoting

Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006)).  Each of these elements is present

here.

      Whether a case presents "the same cause of action turns on whether [the lawsuits] share

the same nucleus of facts."  Apotex, Inc. v. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004) (citations

omitted).  If a claim could have been raised in an earlier action, but was not, that claim is also

barred under *res judicata*.  See Appalachian Power Co. v. EPA, 251 F.3d 1026, 1033–34 (D.C.

Cir. 2001).  Here, Plaintiffs' Complaint even references the Bridges case several times to make

clear that the conduct is the same.  See Third Am. Compl. at 4, 12, 14.

      In regard to the second prong, *res judicata* binds both the original parties and their

privies.  Natural Res. Def. Council, 513 F.3d at 260.  Privity is not found in merely parallel

interests, but in "the substantial identity of incentives of the earlier party with those of the party

against who[m] *res judicata* is asserted."  Holland v. Apfel, 23 F. Supp. 2d 21, 25-26 (D.D.C.

1998) (citations omitted); see also Patton v. Klein, 746 A.2d 866, 870 (D.C. Cir. 1999) ("A privy

is one so identified in interest with a party to the former litigation that he or she represents

precisely the same legal right in respect to the subject matter of the case," including "those

5

whose interests are represented by a party to the action.") (citations omitted).  Here, privity exists

between Bridges and Bridges Financial.  Indeed, Plaintiffs' Opposition makes no argument to the

contrary nor does it ever claim that there is some meaningful distinction between Bridges the

individual and his company.

Last, there has been a final, valid judgment on the merits by a court of competent

jurisdiction, as this Court dismissed Bridges's RICO claim with prejudice in the prior suit.  See

Bridges I.

That Bridges's current RICO allegation may differ slightly from that presented

previously does not allow him a second bite at the apple.  Claim preclusion "bars relitigation not

only of matters determined in a previous litigation but also ones that a party could have raised."

NRDC v. Thomas, 838 F.2d 1224, 1252 (D.C. Cir. 1988) (emphasis added); see also SBC

Commc'ns Inc. v. FCC, 407 F.3d 1223, 1230 (D.C. Cir. 2005) ("[T]he purpose of claim

preclusion is to prevent litigation of matters that should have been raised in an earlier suit.")

(emphasis in original; citations omitted).

Plaintiffs, it bears mention, have conceded the preclusive effect of Bridges I by failing to

contest Lezell's argument on this point.  See Lewis v. District of Columbia, 2011 WL 321711, at

*1 (D.C. Cir. Feb. 2, 2011) ("'It is well understood in this Circuit that when a plaintiff files an

opposition to a dispositive motion and addresses only certain arguments raised by the defendant,

a court may treat those arguments that the plaintiff failed to address as conceded.'") (quoting

Hopkins v. Women's Div., General Bd. of Global Ministeries, 284 F. Supp. 2d 15, 25 (D.D.C.

2003)).

It should be noted that the only claim Bridges Financial makes here is under RICO.  The common-law claims alleged do not relate to it.  As a result, Bridges Financial will be dismissed as a Plaintiff.

C.      Breach of Contract

The second cause of action – for breach of contract – appears to only apply to Plaintiff Lu.  See Third Am. Compl., ¶¶ 66-68.  Although this count, like much of the Third Amended Complaint, remains poorly pled and confusing, it appears the main contention is Defendants' failure to return a $50,000 escrow deposit.  Id.  Lezell argues that, whatever the merits of this claim may be, it is barred by the three-year statute of limitations for such causes of action.  Plaintiffs do not respond to this argument either and have thus conceded it.  Even if they had not, Lezell is correct.

In the District of Columbia, the statute of limitations for breach of contract is three years, and it begins to run at the time of the breach.  See D.C. Code § 12-301(7); Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 319-20 (D.C. 2008).  Accepting Plaintiffs' allegations "in a light most favorable to the nonmoving party," Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co., 870 A.2d 58, 62 (D.C. 2005), Defendants breached the contract at some point soon after May 29, 2008.  See Third Am. Compl., ¶¶ 39-40 ("On May 29, 2008, at 2:35 a.m., Lezell sent an email to Attorney Tolliver, naming himself, Lezell as the Escrow Agent, and stating verbatim that 'as escrow agent, I undertake to apply the deposited funds subject to the conditions agreed to.'  Mark Lezell thereafter transferred the funds to Isam Gosh [*sic*]/Westin Development, LLC, in clear violation of the emailed escrow instructions and the his [*sic*] representations to the Plaintiff.").  Plaintiffs never state exactly when the transfer occurred, but it appears to have been shortly after May 29 or even the same day.

7

25

The statute of limitations, however, is tolled when the plaintiff does not know, and should not reasonably have known, that an injury has been suffered due to the defendant's wrongdoing. See Lee v. Wolfson, 265 F. Supp. 2d 14, 17 (D.D.C. 2003) (statute of limitations begins to run when "the plaintiff has knowledge of (or by the existence of reasonable diligence should have knowledge of) (1) the existence of injury, (2) its cause in fact, and (3) some evidence of wrongdoing") (citing Bussineau v. President & Dir. of Georgetown Coll., 518 A.2d 423, 425 (D.C. 1986)).

Plaintiff Lu does not argue that she "could not reasonably have discovered the claim at that time; rather, she knew, or reasonably should have known," when she did not receive the $73,000 promised upon her $50,000 deposit to the escrow account.  See Pardue v. Ctr. City Consortium Schools of Archdiocese of Washington, Inc., 875 A.2d 669, 679 (D.C. 2005); see also Toomey v. Cammack, 345 A.2d 453, 455 (D.C. 1975) ("As a general rule, an actionable claim accrues, and the statute of limitations begins to run, when a suit thereon could first be maintained to a successful conclusion.").

Since Lu did not file her Complaint until October 13, 2011, her breach-of-contract claim is untimely.  See Malewicz v. City of Amsterdam, 517 F. Supp. 2d 322, 335 (D.D.C. 2007) ("Dismissal on statute of limitations grounds is . . . appropriate when the complaint establishes the defense on its face.").[1]

D.      Breach of Fiduciary Duty

In the District of Columbia, "[t]he elements of a legally cognizable breach of fiduciary claim are well-established.  [Plaintiff] must allege facts sufficient to show (1) the existence of a

---

[1] There is also a reference in this count to $250,000 that Ghosh owed Plaintiff.  See Third Am. Compl., ¶¶ 67-68, but the Court will not address this because it deals with Ghosh, not Lezell.  See id., ¶¶ 31-32.

fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of the fiduciary duties." Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family Found., Inc., 607 F. Supp. 2d 185, 190-91 (D.D.C. 2009). "To state a claim for breach of fiduciary duty under D.C. law, the claimant must allege the existence of a fiduciary duty and a violation of that duty." Command Consulting Grp., LLC v. Neuraliq, Inc., 623 F. Supp. 2d 49, 54 (D.D.C. 2009). Claimants must also allege facts to establish proximate cause and injury to receive compensatory damages. Id. "[T]he mere existence of a contract does not create a fiduciary duty. A fiduciary relationship could exist, however, where circumstances show that the parties extended their relationship beyond the limits of contractual obligations to a relationship founded upon trust and confidence." Paul v. Judicial Watch, Inc., 543 F. Supp. 2d 1, 6 (D.D.C. 2008).

Defendant correctly argues that Count IV for breach of fiduciary duty does not allege a fiduciary relationship. Although Plaintiffs have also conceded this point – by failing to respond to the argument – they would lose on the merits anyway.

While fiduciary relationships can be difficult to define, and may very well exist between contracting parties, "[o]ne characteristic that District of Columbia courts have traditionally looked for is a 'special confidential relationship' that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind." High v. McLean Fin. Corp., 659 F. Supp. 1561, 1568 (D.D.C. 1987); see also Urban Inv., Inc. v. Branham, 464 A.2d 93, 96 (D.C. 1983). Here, Plaintiff never alleges the existence of such a fiduciary relationship. See Third Am. Compl., ¶ 73. Without a fiduciary relationship, there can be no breach of fiduciary duty.

USCA Case #15-7028      Document #1567800      Filed: 08/13/2015      Page 28 of 145

In any event, just like Plaintiffs' contract claim, this one would also be barred by the same three-year statute of limitations.  <u>See</u> D.C. Code § 12-301(8).  The only allegation of breach of fiduciary duty is Defendants' taking of the escrow deposit and not returning it.  <u>See</u> Third Am. Compl., ¶ 73.  As stated in Section III.C, *supra*, that action occurred in May 2008, more than three years before the filing of this suit in October 2011, and no tolling is applicable.

## IV.    Conclusion

Given that this is Plaintiffs' Third Amended Complaint, her efforts to successfully allege such claims as breach of contract and breach of fiduciary duty have run their course and further amendment should not be permitted.  The dismissal of those claims, consequently, will be with prejudice.

The Court, accordingly, ORDERS that:

1.   Defendant Lezell's Motion to Dismiss is GRANTED IN PART and DENIED IN PART;

2.   The claim of Bridges Financial, LLC is DISMISSED WITH PREJUDICE;

3.   The counts of Breach of Contract and Breach of Fiduciary Duty are DISMISSED WITH PREJUDICE; and

4.   Defendant Lezell shall file an Answer by Feb. 7.

IT IS SO ORDERED.


<u>/s/ *James E. Boasberg*</u>
JAMES E. BOASBERG
United States District Judge

Date:  <u>January 25, 2013</u>

28

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **YING QING LU,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 11-1815 (JEB)** |
| **MARK LEZELL,** *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

"It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments." <u>Durland v. United States</u>, 161 U.S. 306, 313 (1896).  So it was for Plaintiff Ying Qing Lu, who claims that Defendant Isam Ghosh bilked her out of $100,000 in 2003 and a quarter-million in 2005 with the promise of quick and outsized returns. Lu admits that she succumbed to the same temptation in 2008 in the transactions that precipitated this lawsuit.  She alleges here that Ghosh and his co-Defendant, Mark Lezell, violated the Racketeering Influenced and Corrupt Organizations Act and several state laws by a lending scheme to convert her assets to their own use.  Amendments to the Complaint have added new Plaintiffs, who also allege that Defendants' similar conduct victimized them.  A default judgment having since been entered against Ghosh, Lezell moves here for summary judgment on multiple grounds.  With all of the facts now on the record, the Court concludes that Lu's state-law claims are time barred but that the merits of the three Plaintiffs' RICO count are sufficient to proceed to trial.

I.    **Background**

The Court described the procedural history of this case in some detail in its prior Opinion.

See Lu v. Lezell, 919 F. Supp. 2d 1, 2-3 (D.D.C. 2013).  This time around, it need only recount

the highlights, bearing in mind that the facts must be viewed in the light most favorable to

Plaintiffs.  See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).  Plaintiffs filed a Third

Amended Complaint on October 31, 2012, alleging that Lu had been the victim of a scam

encompassing five separate state-law violations and that Defendants had violated RICO in

fraudulently obtaining money from her and three co-Plaintiffs.  In particular, Plaintiffs point to

four transactions that constitute the relevant acts for RICO purposes:

- In May 2008, Lu wired a total of $50,000 to an escrow account held by Lezell, an attorney assisting Ghosh in his transactions.  The purpose of that deposit is not entirely clear from her papers, but she does aver that to date, Ghosh and Lezell have refused to return the money in violation of the terms of their agreement.  See Mot., Att. 1 (Deposition of Ying Qing Lu) at 90, 191.

- Later that month, Lu agreed to lend Ghosh and one of his companies, Westin Development, LLC, another $50,000, with the expectation that she would receive $73,000 in return less than a month later.  The $50,000 was placed into an escrow account held by Lezell.  Although Lezell distributed an $8,000 partial payment to Lu on the appointed date, she never saw another penny.  See id. at 72, 90-91, 141; Opp., Exh. A (Declaration of Isam Ghosh), ¶ 3.

- In June 2008, Ghosh received $50,000 from Plaintiff Afshin Afsharnia by way of Lezell's account, see Opp., Exh. B (Letter from Lezell to Mark Albanese, May 22, 2008). after Lezell had represented to Afsharnia that Ghosh would repay Afsharnia $70,000 one month later.  Afsharnia was never compensated.  See Mot., Att. 5 (Deposition of Afshin Afsharnia) at 64-65.

- In May 2011, Oklahoma Shelf Exploration and Development, LLC (OSED), sent $50,000 to Lezell to help finance another Ghosh project.  Lezell received those funds in escrow before delivering them to Ghosh.  OSED was never repaid.  See Opp., Exh. C (Affidavit of Joseph Shane Jackson), ¶¶ 10, 14-15.

After neither Defendant responded to the Complaint, the Clerk entered default.  See ECF

No. 39.  At Defendant Lezell's request, the Court vacated the default as to him only.  See Minute

Order of Dec. 19, 2012.  (Ghosh never replied, so the entry of default stood as to him.)  The Court then proceeded to consider Lezell's Motion to Dismiss the Third Amended Complaint.

In doing so, on January 25, 2013, the Court dismissed the claim of Bridges Financial, another proposed plaintiff, with prejudice, citing *res judicata*, as the Court had already dismissed a similar claim Bridges had brought in a separate suit.  See Lu, 919 F. Supp. 2d at 4-5 (citing Bridges v. Lezell Law, PC, 842 F. Supp. 2d 261 (D.D.C. 2012)).  It also dismissed Lu's claims for breach of contract and breach of fiduciary duty as running afoul of the applicable statutes of limitations and for Lu's failure to allege all required elements of those causes of action.  See id. at 4-6.  Still standing after that decision were Lu's three state-law counts – alleging professional negligence, civil conspiracy, and fraud – and one count, which Lu brought on behalf of herself and the other Plaintiffs, alleging civil RICO violations.  On July 19 of that year, because Ghosh had still not defended the suit, the Court entered default judgment in the sum of $486,000 against him, which included treble damages.  See ECF No. 68 (Order of July 19, 2013).  Defendant Lezell has now filed a Motion for Summary Judgment asking the Court to reject the rest of the state-law claims as time barred and to find that Plaintiffs have not offered sufficient facts on the record that could support their RICO count.  On the state-law argument, the Court will oblige.  Plaintiffs, however, have done just enough for their RICO claim to survive.

## II.    Legal Standard

Before the Court can reach Defendant's Motion for Summary Judgment, it must address one procedural issue that will directly affect the analysis.  Plaintiffs have asked for leave to file a Sur-Reply to Defendant's Motion.  The decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the Court.  See Am. Forest & Paper Ass'n, Inc. v. EPA, 1996 WL 509601, at *3 (D.D.C. Sept. 4, 1996).  If the movant raises arguments for the first time

in his reply to the non-movant's opposition, the Court may either ignore those arguments in

resolving the motion or provide the non-movant an opportunity to respond to those arguments by

granting leave to file a sur-reply.  Ben–Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir.

2003); Natural Res. Def. Council, Inc. v. EPA, 25 F.3d 1063, 1071-72 n.4 (D.C. Cir. 1994).

Plaintiffs correctly point out that Defendant raised at least one new issue in his Reply: whether

Plaintiffs' Opposition satisfied the requirements of Federal Rule of Civil Procedure 56(c) and

Local Rule 7(h).  That question bears directly on the Court's summary-judgment analysis, and,

as a result, it will grant Plaintiffs' Motion and will consider their Sur-Reply.

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); see also Liberty Lobby, 477 U.S. at 247-48; Holcomb v. Powell, 433 F.3d 889, 895 (D.C.

Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the

litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb,

433 F.3d at 895.

When a motion for summary judgment is under consideration, "[t]he evidence of the

nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty

Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v.

Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).  Indeed, on a motion for

summary judgment, the Court must "eschew making credibility determinations or weighing the

evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).  The nonmoving party's

opposition, however, must consist of more than mere unsupported allegations.  See Fed. R. Civ.

P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  "A party asserting that a fact

cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of

materials in the record" such as affidavits, declarations, or other evidence.  Fed. R. Civ. P.

56(c)(1).

In light of this requirement, and pursuant to Local Rule 7(h) and Federal Rule 56(c), the

Court, in resolving summary-judgment motions, "assumes that facts identified by the moving

party in the statement of material facts are admitted, unless such a fact is controverted in the

statement of genuine issues filed in opposition to the motion."  LCvR 7(h).  These rules "assist[]

the district court to maintain docket control and to decide motions for summary judgment

efficiently and effectively."  <u>Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner</u>, 101

F.3d 145, 150 (D.C. Cir. 1996).  "Requiring strict compliance with the . . . rule[s] is justified

both by the nature of summary judgment and by the rule[s'] purposes . . . .  The procedure

contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes

disputed from undisputed facts, and identifies the pertinent parts of the record."  <u>Id.</u> at 150-51

(quoting <u>Gardels v. CIA</u>, 637 F.2d 770, 773 (D.C. Cir. 1980)).

Defendant argues that Plaintiffs have failed to comply with this requirement, as their

Statement of Material Facts Remaining in Genuine Dispute is inadequate.  He is, for the most

part, correct.  Called on to answer Lezell's detailed, 47-paragraph statement of facts, Plaintiffs

have filed only the most cursory of responses.  Their joint statement includes just four

paragraphs, and their rebuttal to Defendant's filing amounts to two vague statements.  To wit, the

two "facts" that Plaintiffs claim remain in dispute are "[w]hether the forty-six (46) [*sic*] facts

stated by Defendant Lezell as not being in dispute, are really not in dispute" and "[w]hether the

facts asserted via affidavit by Shane Jackson, outweigh the facts submitted by Defendant Lezell

in his affidavit." <u>See</u> Pl. SMF, ¶¶ 1, 4. As "Plaintiff[s] fail[] to cite specific record support for a

number of assertions included in [their] Statement" and "the numbered paragraphs in Plaintiffs'

Statement bear no relationship at all to the numbered paragraphs in Defendant's Statement," the

Court will deem most of Defendant's facts admitted. <u>See Valles-Hall v. Ctr. for Nonprofit</u>

<u>Advancement</u>, 481 F. Supp. 2d 118, 123-24 (D.D.C. 2007). In addition, the Court cannot credit

– even at the summary-judgment stage – Plaintiffs' bald assertions about any incidents not

specifically pled and supported with record evidence, such as the twenty additional alleged RICO

violations mentioned without citation in Plaintiffs' Statement of Material Facts, <u>see</u> Pl. SMF, ¶ 2,

or the two additional incidents of fraud that Plaintiffs assert are the subject of lawsuits in other

jurisdictions but that are not supported with record evidence here. <u>See</u> Opp. at 3-4.

     Plaintiffs have, however, done just enough to place one set of important facts in dispute:

whether Lezell held funds in escrow for some or all of the RICO-predicate transactions.

Although Plaintiffs' Statement of Material Facts is manifestly unhelpful on this point, they have

pointed the Court to two pieces of record evidence to support their claim: a "2008 letter prepared

by Lezell . . . referencing Lezell's holding funds in 'escrow,'" <u>see</u> Opp. at 7-8 (citing May 22,

2008, Letter from Lezell to Albanese); and the Affidavit of Shane Jackson, a member of OSED,

which claims that Lezell was meant to act as "Escrow agent" and would "reimburse" OSED the

full $50,000 if the deal went south. <u>See</u> Jackson Aff., ¶ 9. To be sure, these citations are buried

in Plaintiffs' briefs and not in their statement of facts, but they are specific enough that the Court

is not left to "sift through hundreds of pages of depositions, affidavits, and interrogatories in

order to make [its] own analysis and determination of what may, or may not, be a genuine issue

of material fact." <u>Jackson</u>, 101 F.3d at 150 (quoting <u>Twist v. Meese</u>, 854 F.2d 1421, 1425 (D.C.

Cir. 1988)). As a result, it will take these facts in the light most favorable to Plaintiff.

Notwithstanding that conclusion, the Court notes that this is not the first time Plaintiffs'

attorney has failed to comply with the Court's rules and orders.  See, e.g., Minute Order of

March 4, 2013 (sanctioning counsel for failing to appear at scheduling conference and to follow

other Court requirements); Minute Order of August 20, 2013 (sanctioning counsel for failing to

appear at deposition).  In light of this history, the Court expects full compliance moving forward.

On, now, to the merits.

**III.     Analysis**

As noted, Lezell moves for summary judgment on each of Plaintiffs' remaining counts.

He contends both that Lu's state-law causes of action for professional negligence, civil

conspiracy, and fraud are time barred and that all Plaintiffs' civil RICO count fails on the merits.

Plaintiffs' argument in response often ventures into the nonsensical or the misplaced, but they do

include one or two RICO arguments that hit their mark.  As a result, the Court will grant

Defendant's Motion with respect to the state-law claims, but not as to RICO.

A.  State-Law Claims

In the District of Columbia, the statute of limitations for professional negligence, fraud,

and civil conspiracy is three years, and pursuant to the District's "discovery rule," it begins to

run at the time the right to maintain the cause of action accrues.  See D.C. Code, § 12-301(8); De

May v. Moore & Bruce, LLP, 584 F. Supp. 2d 170, 180 (D.D.C. 2008) (legal malpractice); C&E

Servs., Inc. v. Ashland, Inc., 498 F. Supp. 2d 242, 261 (D.D.C. 2007) (fraud and intentional

misrepresentation); Curtis v. Lanier, 535 F. Supp. 2d 89, 95 (D.D.C. 2008) (civil conspiracy).  In

other words, the statute of limitations begins to run as soon as the plaintiff knows or should have

known of an injury, its cause, and some evidence of wrongdoing.  See De May, 584 F. Supp. 2d

at 180.

The first question the Court must answer is to whom the state-law claims refer.  Although it is difficult to make out what, exactly, each Plaintiff alleges in the Third Amended Complaint, several factors convince the Court that Lu is the sole Plaintiff bringing the state-law claims, and thus the statute-of-limitations analysis need not account for the other Plaintiffs.

First, the incidents underlying all of the state-law claims appear to relate only to Lezell's alleged failure to return certain escrow deposits to Lu, not to the other Plaintiffs.  See Third Am. Compl., ¶¶ 66-68.  Lu made these deposits in her individual capacity, and they were owed back to her alone.  See, e.g., id., ¶ 28 (referring to the $50,000 in question as "Lu's funds").  The only mention of transactions involving the other Plaintiffs in the state-law context, in paragraph 12 of the Third Amended Complaint, alleges a scheme that was "related" for RICO purposes, and not one that appears to give rise to a request for damages in the state-law counts.  The fact that the other Plaintiffs "re-allege[d]" each of Lu's claims "as if fully pled" in the Third Amended Complaint, see Opp. at 5 (citing Third Am. Compl., ¶¶ 54, 65, 69, 72, 75, 79), cannot save Plaintiffs here, as the facts and claims that were re-alleged were specific to Lu.  Lu's own deposition testimony, moreover, bears this out.  See Third Am. Compl., Att. 1 (Deposition of Yu Qing Lu), at 138-139, 151-152, 155 (confirming that Lu is the "Plaintiff mentioned in the state-law causes of action").

Second, these incidents were pled only by Lu in the original Complaint – neither other Plaintiff was even a party to the suit at that time – and they have remained virtually (and, in most places, literally) identical in the Third Amended Complaint.  Compare Compl., ¶¶ 43-44 with Third Am. Compl., ¶¶ 70-71 (civil conspiracy); Compl., ¶¶ 49-51 with Third Am. Compl., ¶¶ 76-78 (negligence); Compl., ¶¶ 53-57 with Third Am. Compl., ¶¶ 80-84 (fraud/intentional misrepresentation).

And finally, Afsharnia and OSED are mentioned by name in the Third Amended Complaint's RICO section, and facts are pled that relate specifically to them. The principle of meaningful variation thus suggests that the sections that do not mention those Plaintiffs do not apply to them.

With that preliminary issue decided, the Court turns now to the limitations chronology. Lu filed her initial Complaint in this case on October 13, 2011. Any action accruing before October 13, 2008, therefore, is time barred. The record unequivocally demonstrates that Lu knew or should have known that something was amiss no later than June 13, 2008. It was by that date that she was supposed to be paid the full sum of $73,000 owed to her. Instead, Ghosh and Lezell by then had only sent her an $8,000, contractually required partial payment. Lu clearly must have been aware of this default in June 2008. And, indeed, it appears that she was, as she acted immediately on the shortfall, contacting Lezell "within days" to inquire about her "escrow money." See Lu Depo. at 73. In addition, she was not the victim of a lack of legal knowledge, as she had representation throughout May and June of 2008. See id. at 115-16.

Nor does Lu argue that she could not have reasonably discovered the claim in May or June of 2008. In fact, her Opposition specifically allows that she filed her Complaint "about 39 months (or, 3 years, 3 months) after [she] could possibly know of the injury and its cause." Opp. at 6. That concession alone is dispositive. She says nothing, furthermore, to suggest that imputing such knowledge to her would be unreasonable, instead invoking on one half of one line "other equitable tolling principles." Opp. at 6. She elaborates on these other principles in the Sur-Reply, arguing that Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143 (1987), stands for "the proposition that where a class action is filed, the statute of limitations is tolled." Sur-Reply at 7 (internal quotation marks omitted). Of course, the Court is not aware of any class

9

action relating to the incidents Lu alleges, and, in any case, <u>Malley-Duff</u> says no such thing.  In that case, the Supreme Court ruled that a standardized, federal, four-year statute of limitations would apply to RICO civil-enforcement actions.  It does not address the statute of limitations for state-law causes of action brought alongside federal RICO claims, and it does not – as far as the Court can tell – mention any equitable tolling principles.

As a result, the Court will grant Defendant's Motion with respect to Lu's state-law claims.

B. <u>RICO</u>

This brings the Court to the main event: Plaintiffs' allegation that Lezell and Ghosh conspired in violation of the Racketeering Influenced and Corrupt Organizations Act.  The RICO-conspiracy statute makes it illegal to conspire to violate the substantive provisions of the law, which, in turn, provide that it is unlawful for anyone "employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c), (d); <u>see also</u> <u>United States v. Eiland</u>, 738 F.3d 338, 360 (D.C. Cir. 2013).  To prove a RICO conspiracy, then, Plaintiffs must show that Lezell participated in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).  Lezell argues both that he did not participate in the conduct of any enterprise that may have violated RICO and that Plaintiffs have not proven a sufficient pattern of racketeering activity.  The Court will address each argument in sequence.

1. *Participation in Conduct of RICO Enterprise*

Even where a defendant's actions constitute a pattern of criminal activity, he cannot be liable under RICO unless he satisfies the first two <u>Sedima</u> elements.  In other words, Plaintiffs

must show that Defendant is "employed by or associated with" an alleged criminal enterprise and "participate[s], directly or indirectly, in the conduct of [the] enterprise's affairs."  18 U.S.C. § 1962(c)).  Lezell argues that because he "was not a member or owner of, officer of, director of, or employee of Westin Development, LLC, and Geneva Financial Consultants, LLC" – Ghosh's companies alleged to have been involved in the plot – he was not "employed by or associated with" the alleged criminal enterprise and cannot be liable for its actions.  Mot. at 36.  In addition, the Court must address whether Defendant was part of an "enterprise."  18 U.S.C. § 1962(c).

Like the rest of RICO, the "participation" and "conduct" requirements have received attention that is somewhat schizophrenic.  It is clear that it is not enough for a defendant to "carry on" or "participate in" an enterprise's affairs through a pattern of racketeering activity; instead, there must be evidence that he "ha[d] some part in directing [the enterprise's] affairs" by "participating in the operation or management of the enterprise itself."  Reves v. Ernst & Young, 507 U.S. 170, 176-79 (1993) (emphasis added).  This means at least that the alleged participant must have been "in cahoots" with those perpetrating the fraud, and "proffer[ing] advice" or "assum[ing] any directive role" is assumed to be enough.  See Grant Thornton, LLP v. Office of Comptroller of the Currency, 514 F.3d 1328, 1333 (D.C. Cir. 2008).  Knowingly implementing criminal decisions or exercising broad discretion also suffices, see Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 165 (2001), though persuading associates to commit acts of racketeering and merely aiding those acts unwittingly do not.  See Vickers Stock Research Corp. v. Quotron Sys., 1997 U.S. Dist. LEXIS 10837, at *9-10 (S.D.N.Y.); First City Nat. Bank & Trust Co. v. Fed. Deposit Ins. Co., 730 F. Supp. 501, 509 (E.D.N.Y. 1990).  In short, this is an issue on which the courts have been, in former Chief Judge Mikva's words, "all over the lot."

<u>Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639</u>, 913 F.2d 948, 957

(D.C. Cir. 1990) (Mikva, J., concurring).

  Lezell seizes on that haziness to argue that as a mere middleman he played no such

leading role.  This reading of the statute and case law, however, proves too restrictive.  Although

Plaintiffs' arguments leave much to the reader's imagination, the Court has determined that they

have offered enough to show that Lezell implemented criminal decisions, <u>see</u> <u>Cedric Kushner</u>,

533 U.S. at 163, in that he received funds from Plaintiffs and improperly distributed them to

Ghosh on at least three occasions.   It concludes, moreover, that there is some evidence to

suggest that he took a "directive role" in fraudulently inducing Plaintiffs to wire those funds.

<u>See</u> <u>Grant Thornton</u>, 514 F.3d at 1333; Lu Depo. at 177; May 22, 2008, letter from Lezell to

Albanese.  And finally, Lezell did this knowingly, as the agreements between Ghosh and

Plaintiffs that he facilitated provided for the return of funds to Plaintiffs after a certain date.  <u>See</u>

<u>Cedric Kushner</u>, 533 U.S. at 163; Opp., Exh. C (Lu Promissory Note) at 1-2; May 22, 2008,

Letter from Lezell to Albanese.  An inference that Lezell knew that it was improper to send the

funds to Ghosh instead is warranted.  To be sure, Lezell has offered some competing evidence to

rebut the conclusion that it was wrong for him to send the funds to Ghosh, <u>see, e.g.</u>, Afsharnia

Depo. at 51, 54 (allowing that Lezell was to send Afsharnia's funds to Ghosh in manner of

typical commercial loan), and that he committed fraud at all.  <u>See, e.g.</u>, Mot., Att. 11 (Deposition

of Mark Lezell) at 284 (disclaiming any decision-making role).  That, however, is a matter for

the finder of fact, not for this Court on summary judgment.

  These facts, taken in the light most favorable to Plaintiffs, are sufficient to satisfy RICO's

"conduct" requirement.  By prompting Plaintiffs to contribute funds to Ghosh's enterprises –

whether via a formal escrow agreement or not – and then facilitating the theft of that money,

Lezell plainly and knowingly participated in the management of the fraudulent enterprise.

Plaintiffs also argue at length that Lezell and Ghosh constitute an "enterprise" separate

from the "persons" and the "pattern" that make it up – an important RICO requirement, see

Boyle v. United States, 556 U.S. 938, 948-49 (2009) – but Defendant has not contested this

point.  And for good reason, as Plaintiffs have the better of that argument as well.  See id. (citing

United States v. Turkette, 452 U.S. 576 (1981)) (An association-in-fact enterprise – the type of

enterprise Plaintiffs allege in this case, see Third Am. Compl., ¶ 17 – is a concept with

considerable "breadth" that simply describes "a continuing unit that functions with a common

purpose."); see also Eiland, 738 F.3d at 360 (quoting Boyle, 556 U.S. at 951) ("[P]roof of a

pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the

existence of an association-in-fact enterprise.").

2.  *Pattern of Racketeering Activity*

Lezell next argues that Plaintiffs have not proven that the disputed transactions amount to

a "pattern of racketeering activity."  To show that such a pattern exists, RICO requires at least

two predicate criminal racketeering acts over a ten-year period.  See 18 U.S.C. § 1961(5).  This

does not necessarily demand proof of, for example, loansharking or extortion.  Instead, the

statute merely requires "acts punishable under certain state and federal criminal laws, including

mail and wire fraud."  Western Associates Ltd. Partnership ex rel. Ave. Associates Ltd. v.

Market Square Associates, 235 F.3d 629, 633 (D.C. Cir. 2001) (citing 18 U.S.C. § 1961(1)(B)).

The Supreme Court has further required that these predicate acts show elements of

"relatedness" and "continuity."  H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S.

229, 239 (1989).  In other words, a plaintiff must show "that the racketeering predicates are

related, and that they amount to[,] or pose a threat of[,] continued criminal activity." Id.

(emphasis omitted).  Although relatedness and continuity have become the *sine qua non* of a

RICO case, the D.C. Circuit "continues to endorse a case-by-case, fact-specific approach" that is

"fluid, flexible, and commonsensical, rather than rigid or formulaic." Western Assocs., 235 F.3d

at 637.  This approach to the pattern requirement "helps to prevent ordinary business disputes

from becoming viable RICO claims." Id.  If, instead, the courts were to recognize a RICO claim

based on simple business fraud, "the pattern requirement would be rendered meaningless." Id.

Defendant makes much of the supposed differences between the underlying acts alleged

here in an effort to convince the Court that they are not "related" for RICO purposes.  The

relatedness requirement, however, is "not a cumbersome one for a RICO plaintiff." Feinstein v.

Resolution Trust Corp., 942 F.2d 34, 44 (1st Cir. 1991).  As long as the predicate acts "have the

same or similar purposes, results, participants, victims, or methods of commission, or otherwise

are interrelated by distinguishing characteristics and are not isolated events," this element is

satisfied. H.J. Inc., 492 U.S. at 240 (internal quotation marks omitted).  These criteria,

moreover, have been generously construed.  As the Third Circuit found in Banks v. Wolk, 918

F.2d 418 (3d Cir. 1990), the "same or similar purposes," for example, can be as generic as the

desire to "defraud[] those who deal[] with" the enterprise; the "results" may be no more than to

have achieved that objective; the "participants" need not be the same over the course of the

scheme; the "victims" may be related to one another only in the sense that "they all were

engaged in business dealings with [and were defrauded by] the [defendants] through [the

enterprise]"; and the "methods of commission" may be similar only by virtue of the fact that they

constitute fraud. Id. at 422-25.  Plaintiffs provide evidence for at least that much here, and, as a

result, they satisfy RICO's "relatedness" requirement.

Plaintiffs will thus prevail on summary judgment if they can show that the scheme alleged had the required continuity.  "Continuity" in this context refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (quoting H.J. Inc., 492 U.S. at 241).  As the Court finds that Plaintiffs have presented evidence sufficient to support a claim of closed-ended continuity, it need not address the open-ended-continuity question.

In determining whether or not a closed-period pattern is established, courts consider several factors: "[T]he number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity."  Edmondson & Gallagher, 48 F.3d at 1265 (quoting Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1411-12 (3d Cir. 1991)).  "[I]n some cases 'some factors will weigh so strongly in one direction as to be dispositive [in favor of RICO liability].'"  Western Assocs., 235 F.3d at 634 (quoting Edmondson & Gallagher, 48 F.3d at 1265).  At the same time, RICO was not "aimed at the isolated offender," Sedima, 473 U.S. at 496 n.14 (quoting 116 Cong. Rec. 35, 193 (1970) (statement of Rep. Poff)), but was instead intended to limit RICO "to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes."  Lipin Enterprises v. Lee, 803 F.2d 322, 324 (7th Cir.1986); see also H.J. Inc., 492 U.S. at 242 ("Congress was concerned in RICO with long-term criminal conduct.").  As a result, "if a plaintiff alleges only a single scheme, a single injury, and few victims it is 'virtually impossible for plaintiffs to state a RICO claim.'"  Western Assocs., 235 F.3d at 634 (quoting Edmondson & Gallagher, 48 F.3d at 1265));

see also Menasco, 886 F.2d at 684 (declining to extend RICO liability where defendants' actions were "narrowly directed towards a single fraudulent goal" and "involved a limited purpose").

In Edmondson & Gallagher, for example, the D.C. Circuit rejected a RICO claim premised on allegations of "a single scheme" with a single set of goals – namely, the Association's attempt to prevent or delay the sale of its building or to extract a "ransom" for allowing the sale to proceed. See 48 F.3d at 1265. The court found it significant, moreover, that the scheme "entail[ed] but a single discrete injury, the loss of the sale (or payment of the ransom), suffered by a small number of victims." Id.; see also Western Assocs., 235 F.3d at 634-35 (finding no pattern where defendants sought to diminish value of partnership interest in single property, only injury was lost value in property, and there was only single victim); E. Sav. Bank, FSB v. Papageorge, No. 13-1147, 2014 WL 910357, at *5 (D.D.C. Mar. 10, 2014) (rejecting RICO claim because "plaintiff has only alleged that the defendants engaged in acts designed to" achieve a "single discrete goal": "obtain[ing] control of the Property from the plaintiff at a low price"). Nor does RICO apply merely because a single, narrow, fraudulent scheme affects numerous plaintiffs. See Lopez v. Council on American–Islamic Relations Action Network, Inc., 657 F. Supp. 2d 104, 115-16 (D.D.C. 2009) (denying RICO claim where defendant misrepresented his bar status on numerous occasions, but as part of one scheme to fraudulently induce clients to retain him).

At the same time, the Supreme Court has declined to read "an organized crime limitation into RICO's pattern concept," H.J. Inc., 492 U.S. at 244, instead opting to interpret the statute perhaps more broadly than Congress expressly intended. See National Organization for Women, 510 U.S. 249, 262 (1994) ("[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.") (quoting

Sedima, 437 U.S. at 499); see also Annulli v. Panikkar, 200 F.3d 189, 199 (3d Cir. 1999)

(because RICO statute is to be read broadly, RICO "may be applicable to many garden-variety

fraud cases") (internal quotation marks omitted).  This has led some courts to allow that a pattern

of racketeering activity may exist where "similar actions [were] taken by the defendants against .

. . other [similarly situated plaintiffs]."  Busby v. Capital One, N.A., 772 F. Supp. 2d 268, 282

(D.D.C. 2011) (citing Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1051 (7th Cir. 1998),

which concluded that plaintiff had adequately pled pattern "by referencing his own experiences

with [defendant] . . . and alleging in some detail that other residents and their relatives also were

victimized by the identical scheme").

        Where, then, does the present case fall?  The courts' vigilance appears to be directed at

cases in which "[i]t is only because of the way in which the [scheme was carried out] that an

event obviously not constituting a pattern can be distorted into one."  Roeder v. Alpha Indus.,

Inc., 814 F.2d 22, 31 (1st Cir. 1987) (finding no RICO liability where one bribe aiming to obtain

contracts related to one government program was divided into three payments and was discussed

in several phone calls and letters); see also Western Assocs., 235 F.3d 637 ("RICO claims

premised on mail or wire fraud must be particularly scrutinized because of the relative ease with

which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not

support it. This caution stems from the fact that [i]t will be the unusual fraud that does not enlist

the mails and wires in its service at least twice.").

        This case does not present that risk.  To be sure, Lezell may not represent the Sopranos-

esque figure that RICO's framers contemplated.  Nonetheless, the dispute here addresses more

than "a single scheme [and] a single injury [with] few victims."  Western Assocs., 235 F.3d at

634 (quoting Edmondson & Gallagher, 48 F.3d at 1265).  Taking the facts as Plaintiffs present

them, Lezell and Ghosh participated in a scheme to induce several different potential victims to

agree to a loan-type agreement (though the agreement would often resemble something less

formal than the typical commercial loan).  Lezell would provide wire instructions to each victim

and instruct the victim how to make a cash deposit (whether in an escrow account or another

holding account).  Finally, rather than hold the deposit per the typical escrow agreement (written

or oral, formal or informal), Lezell would then transfer the money to Ghosh, who would

apparently convert it to his own use.

 Those facts distinguish this scheme from those presented in the cited cases: unlike the

defendants in Edmondson, Lezell and Ghosh did not have only one objective, such as preventing

the sale of a particular asset.  Indeed, the scheme is not alleged to have had a particular goal at all

other than to net illicit gains.  Nor was it carried out by a single perpetrator or against a single

victim, like the schemes in Lopez or Papageorge.  And finally, this is not a case in which the

copious use of communications technology has allowed Plaintiffs to convert ordinary mail or

wire fraud into a RICO claim.  Whereas in Lopez, the court found that even 17 instances of mail

and wire fraud could not support a RICO claim where they were all carried out in service of a

single goal, Lezell and Ghosh employed those methods to defraud three separate Plaintiffs on

three distinct occasions in three different ways.  Viewed in that light, the scheme alleged here,

taken in the light most favorable to Plaintiffs, constitutes a civil RICO violation.  See Feld

Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals, 873 F. Supp. 2d 288, 312-13

(D.D.C. 2012) (allowing RICO claim to proceed where defendants employed two methods of

fraud to achieve several discrete goals); Corley, 142 F.3d 1041 (allowing RICO plaintiffs to go

forward where they made reference to other similarly situated but unrelated victims).   It is thus

up to a jury to weigh the facts and ultimately to decide whether they support that conclusion.

**IV.      Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary

Judgment with respect to Lu's state-law claims, but it will deny the Motion on the RICO count.

A separate Order to that effect will issue this day.


                                   /s/ James E.  Boasberg
                                   JAMES E.  BOASBERG
                                   United States District Judge


Date:  May 27, 2014

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YING QING LU,

       **Plaintiff,**

           **v.**

MARK LEZELL, *et al.*,

       **Defendants.**

Civil Action No.  11-1815 (JEB)

## MEMORANDUM OPINION AND ORDER

Plaintiff Ying Qing "Lucy" Lu brought this action against Defendants Mark Lezell and Isam Ghosh, contending that they had defrauded her out of over $100,000 in connection with an unsuccessful investment.  Three third parties – Oklahoma Shelf Exploration Development, LLC (OSED), Bridges Financial, LLC, and Afshin Afsharnia – who are also represented by Plaintiff's counsel, now move to intervene under Federal Rule of Civil Procedure 24.  Because the Motion was not accompanied by a pleading setting out their claim, as required by Rule 24(c), the Motion will be denied.  Even if the Motion had been properly filed, intervention of right would still be impermissible because Movants have not claimed an interest in the particular property or transaction that is the subject of the suit.  The proper course is for Plaintiff's counsel to seek leave of the Court to amend the Complaint to add these Movants as additional plaintiffs.

**I.     Background**

Plaintiff filed her Amended Complaint in this matter on March 16, 2012.  She asserted causes of action for conspiracy under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.*, breach of contract, civil conspiracy, breach of fiduciary duty, negligence, and fraud/intentional misrepresentation.  See ECF No. 16.  OSED, Bridges, and

Afsharnia have now filed the instant Motion, entitled "2<sup>nd</sup> Motion for Leave to Intervene or In

the Altenative [*sic*] for Joinder." <u>See</u> ECF No. 24.  They seek to "participate in the above

captioned matter" by way of intervention or joinder pursuant to Rules 19, 20, and 24.  <u>Id.</u> at 1.

While the Motion generally asserts the propriety of joinder under Rules 19 and 20, it does not

make any argument as to why these rules would be applicable here.  Rather, Movants present an

argument only for intervention as of right under Rule 24(a)(2) or, alternatively, for permissive

intervention under Rule 24(b).  The Court will thus address only the intervention question.

## II.    Analysis

Rule 24(c) states in relevant part that a motion to intervene "must state the grounds for

intervention and be accompanied by a pleading that sets out the claim or defense for which

intervention is sought."  While the instant Motion contains the grounds for intervention, it is not

accompanied by any pleading – *e.g.*, a complaint.  The Court may "permit[] a degree of

flexibility with technical requirements" when the "position of the movant is apparent from other

filings."  <u>Tachiona *ex rel.* Tachiona v. Mugabe</u>, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002).

In the current Motion, however, the position of Movants is not so apparent.  This omission alone

thus requires a denial of the Motion.

Even if Rule 24(c) had been satisfied, intervention as of right would still fail under Rule

24(a)(2) because Movants have not presented an interest in the particular property or transaction

at issue in the original action.  Intervention as of right is only permissible if the movant "claims

an interest relating to the property or transaction that is the subject of the action, and is so

situated that disposing of the action may as a practical matter impair or impede the movant's

ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R.

Civ. P. 24(a)(2); <u>see also</u> <u>SEC v. Prudential Sec. Inc.</u>, 136 F. 3d 153, 156 (D.C. Cir. 1998)

(requiring as a prerequisite for intervention of right that "the applicant must demonstrate a legally protected interest in the action").  In other words, Movants must demonstrate a "significantly protectable interest" in the present litigation.  Donaldson v. United States, 400 U.S. 517, 531 (1971); see also Voltage Pictures, LLC v. Vazquez, 277 F.R.D. 28, 31 (D.D.C. 2011) (holding that the movant's interest in protecting release of her identifying information and her interest in due process did not warrant intervention).  Movants have failed to demonstrate this interest here.

Movants nevertheless assert that "each has a substantial cash interest in this matter," and that all three are "similarly situated victims of frauds and schemes."  Mot. at 5.  While this may generally be true, such a conclusory statement does not explain in what specific property or transaction they have an interest.  Movants have also not made any claim that their ability to protect their interest would be impeded if they were precluded from intervening.  Put simply, they have not explained how the present action will impair their "cash interest."

Although intervention as of right would fail because Movants have not presented an interest in a particular property or transaction, the Court could still allow permissive intervention in the future under Rule 24(b).  While this is possible, the better course would be for Plaintiff's counsel to seek leave to amend the Complaint to add the additional parties and their claims.  The case remains in the early stages, and Defendants have not even responded to the Amended Complaint.

## III.    Conclusion

For the foregoing reasons, the Court ORDERS that the Motion is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   May 29, 2012

**03/04/2015 Minutes**

**Full docket text:**
Minute Entry for Jury Trial (Day 3) held on 3/04/2015 before Judge James E. Boasberg: Jury Trial resumed and concluded with Seven (7) Jurors. Juror #1 excused. Defendant's Rule 50a Motion for Judgment as a matter of law, HEARD and DENIED WITHOUT PREJUDICE for the reasons stated on the record. Plaintiffs and Defendants rested. Jury Deliberations held and concluded on 3/04/2015, with Seven (7) Jurors. JURY VERDICT RETURNED. Jury panel discharged. Jury Notes (2). (Plaintiff's Witness: Mark Lezell (testimony resumed and concluded); Defendant's Witness: Stephen Merrill (reading of the deposition into the record). (Court Reporter Lisa Griffith) (ad)
.

**Full docket text:**

Minute Entry for Jury Trial (Day 1) held on 3/02/2015 before Judge James E. Boasberg: Jury Selection begun and concluded. Eight (8) jurors selected and sworn. Jury Trial begun and continued to 3/03/2015, at 9:45 AM, in Courtroom 19, before Judge James E. Boasberg. (Plaintiff's Witness: Afshin Afsharnia). (Court Reporter Cathryn Jones) (ad)


MINUTE ORDER:

The Court ORDERS that Defendant's [147] Motion to Strike is GRANTED IN PARTand DENIED IN PART as set forth in open court at the beginning of trial. Signed by Judge James E. Boasberg on 3/2/15. (lcjeb2)

**Full docket text for document 139:**

ORDER: As discussed at today's pretrial conference, the Court ORDERS that: 1) Plaintiffs' [121] Motion for Show Cause is WITHDRAWN; 2) Defendant's [127] In Limine Motion is GRANTED as unopposed; 3) Plaintiffs' [130] In Limine Motion is DENIED; 4) Plaintiffs' [137] Motion for Leave to File is GRANTED; 5) As agreed by the parties, the only transactions on which evidence will be entered are the three between Plaintiffs and Defendants; 6) The only witnesses that Plaintiffs will call at trial are the first six listed on their February 3, 2015, Pretrial Statement; 7) The only exhibits Plaintiffs will introduce in their case-in-chief are Nos. 1-7 and 10-12 on that same Pretrial Statement; and 8) The parties shall deliver to each other and the Court by February 11, 2015, a binder with all of the exhibits each party intends to introduce at trial. Signed by Judge James E. Boasberg on 2/3/15. (lcjeb2)



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAR 0 4 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

YING QING "LUCY" LU, *et al.*,

    Plaintiffs,

        v.

MARK LEZELL,

    Defendant.

Civil Action No. 11-1815 (JEB)

## VERDICT FORM

1.  Have the Plaintiffs proved by a preponderance of the evidence that Mr. Lezell conspired with Isam Ghosh and did himself participate in the conduct of an enterprise through a pattern of racketeering activity?

    _____ YES    ___X___ NO

    *If you answered this question "No," then stop here.  If you answered this question "Yes," then proceed to the next question.*

2.  What amount of damages do you award the Plaintiffs for economic loss?

    $_____

    _____
    Foreperson

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR 0 4 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

YING QING "LUCY" LU, *et al.*,

Plaintiffs,

v.

MARK LEZELL,

Defendant.

Civil Action No. 11-1815 (JEB)

## FINAL JURY INSTRUCTIONS

Ladies and gentlemen, the time has now come when all of the evidence is in.  It is now up to me to instruct you on the law.  Before we talk about the specific claims alleged here and some of the specific issues in this case, I want to take a few moments to talk about some general rules of law.  Some of these will repeat what I told you in my preliminary instructions.

### Function of the Court

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.

It is your duty to accept the law as I instruct you. You should consider all the instructions as a whole. You may not ignore or refuse to follow any of them.

### Function of the Jury

Your function, as the jury, is to determine what the facts are in the case. You are the sole judges of the facts. While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnic origin, or gender. Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide the case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in the case is your sole and exclusive responsibility.

### Party Designations

During the course of the trial, you have heard references to the terms Plaintiff and Defendant. To put it as simply as possible, the Plaintiff is the person who starts a lawsuit and the Defendant is the person who is sued by the Plaintiff.

During your deliberations, however, you must not attach any significance in weighing the evidence to the terms Plaintiff and Defendant. In other words, the fact that the Plaintiffs have filed a lawsuit against the Defendant does not mean that the Plaintiffs are entitled to your verdict or that their evidence is entitled to greater weight than the Defendant's evidence. A Plaintiff must prove every element of his claim against a Defendant by a preponderance of the evidence before he is entitled to prevail.

### Jury's Recollection Controls

If any reference by the court or the attorneys to evidence does not coincide with your own recollection of the evidence, it is your recollection that should control during your deliberations.

### Considering the Evidence in the Case

During your deliberations, you may consider only the evidence or lack of evidence properly admitted in the trial.  The evidence in the case was the sworn testimony of the witnesses and the exhibits that were admitted into evidence.

When you consider the evidence, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in the light of your experience.

## Number of Witnesses

The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side. You should consider all the facts and circumstances in evidence to determine which of the witnesses are worthy of greater belief. You may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side. Indeed, the testimony of a single witness, which you believe to be the truth, is enough to prove any fact.

If, after considering all the evidence in the case, you hold a greater belief in the accuracy and reliability of one or a few witnesses' testimony, then you may base your verdict on that testimony, even though a larger number of witnesses may have testified to the contrary.

## Equality of Litigants

Our system of justice requires that you decide the facts of the case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion. It is a violation of your sworn duty to base your verdict upon anything other than the evidence in the case.

In reaching a just verdict, you must consider and decide the case as an action between persons of equal standing in the community and of equal worth. An organization, whether large or small, has the same right to a fair trial as a private individual. All persons, including organizations, stand equal before the law and are to be treated as equals in this court. In other words, the fact that a Plaintiff or Defendant is an organization must not affect your decision.

## Statements and Arguments – Not Evidence

Statements and arguments of the lawyers, such as their opening statements and closing arguments, are not evidence. They are only intended to help you understand and interpret the evidence from each Party's perspective. The questions that either side asked are not evidence. A lawyer's question that contains an assertion of a fact does not provide evidence of that fact, unless a witness answered the question in the affirmative.

## Inadmissible and Stricken Evidence

The lawyers sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting person believed was not proper. You must not hold such objections against the person who made them or the party he represents. It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a question, you should ignore the question, and you must not speculate as to what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer and they should play no part in your deliberations. Likewise, exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations.

## Credibility of Witnesses

In determining whether the Plaintiffs have proved their case, you must consider and weigh the testimony of all the witnesses who have appeared before you.

You are the sole judge of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

In reaching a conclusion as to the credibility of any witness, you may consider any matter that may have a bearing on the subject. You may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of the case, or friendship or hostility toward other people concerned with the case.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in the trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

### Prior Inconsistent Statement Under Oath

You have heard evidence that certain witnesses made earlier statements under oath in depositions and that these statements may be inconsistent with their testimony here at trial. If you find that the earlier statement is inconsistent with the witness's testimony here in court, you may consider this inconsistency in judging the credibility of the witness.   You also may consider the earlier statement as evidence that what was said in the earlier statement was true.

### Nature of Case Not to be Considered

One of the questions you were asked when we were selecting ther jury was whether the nature of the case – that is, RICO – would affect your ability to render a fair and impartial

verdict. There was a reason for that question.  You must not allow the nature of the case itself to affect your verdict.  You must consider only the evidence that has been presented in the case in rendering a fair and impartial verdict.

### Burden of Proof

The party who makes a claim has the burden of proving it. The burden of proof means that the Plaintiffs must prove every element of their claim by a preponderance of the evidence. To establish a fact by a preponderance of the evidence is to prove that it is more likely so than not so. In other words, a preponderance of the evidence means that the evidence produces in your mind the belief that the thing in question is more likely true than not true.

If, after considering all of the evidence, the evidence favoring the Plaintiffs' side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the Plaintiffs on that issue, then the Plaintiffs will have succeeded in carrying the burden of proof on that issue.

The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty. For example, it does not mean proof beyond a reasonable doubt as is required in criminal cases.

Whether there is a preponderance of the evidence depends on the quality, and not the quantity, of evidence. In other words, merely having a greater number of witnesses or documents bearing on a certain version of the facts does not necessarily constitute a preponderance of the evidence.

If you believe that the evidence is evenly balanced on an issue the Plaintiffs had to prove, then your finding on that issue must be for the Defendant.

## Evidence Produced by Adversary

In determining whether any fact has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon that fact, regardless of who produced it. A party is entitled to benefit from all evidence that favors it whether it produced the evidence or its adversary produced it.

## Corporate Party's Agents and Employees

One party in this case is a corporation, OSED. A corporation can act only through individuals as its agents or employees. In general, if any agent or employee of a corporation acts or makes statements while acting within the scope of his or her authority as an agent, or within the scope of his or her duties as an employee, then under the law those acts and statements are of the corporation.

## Nature of the Action

Plaintiffs in this case have one claim, which is that Defendant conspired to violate the RICO law.  RICO stands for Racketeering Influenced and Corrupt Organizations Act.  In order to prove a conspiracy to violate RICO, Plaintiffs must prove that Lezell conspired with Ghosh and did himself participate in the (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeeting activity.  To prove this first element, Plaintiffs must prove that Lezell was employed by or associated with a criminal enterprise and participated directly or indirectly in the conduct of its affairs.  Plaintiffs must prove that Lezell participated in the operation or management of the enterprise itself.  The enterprise need not be an official entity, but may be an ongoing association. To prove a pattern of racketeering activity, Plaintiffs must prove that the enterprise committed at

least two criminal racketeering acts within a ten-year period. Racketeering acts are those punishable under state or federal criminal law, including mail and wire fraud.

It is not enough to merely prove two isolated acts over a ten-year period, however. A single scheme with a single injury to a single victim does not constitute a RICO violation. Plaintiffs must prove that the acts are related and continuous. Simple business disputes or simple business fraud is not enough. To be related, the acts must have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrleated by distinguishing characteristics and are not isolated events. To be continuous, the acts must constitute either a closed period of repeated conduct or past conduct that by its nature projects into the future with a threat of repetition.

### Damages

If you find that the Plaintiffs have carried their burden of showing that it was more likely than not that Defendant conspired to violate RICO, you must then consider the issue of the damages that Plaintiffs have sustained, if any. You must award the Plaintiffs a sum of money that will fairly and reasonably compensate them for their losses. You may only compensate Plaintiffs for their actual economic losses. You may not award damages for any mental suffering, anguish, humiliation, or emotional distress that the Plaintiffs suffered as a result of Defendant's actions.

Similarly, you may not award any damages to punish Defendant or to send him any type of message. You are confined to the damages the Plaintiffs actually suffered.

[ATTORNEYS WILL NOW GIVE CLOSING ARGUMENTS]

Before I excuse you to deliberate, I want to discuss a few final matters with you:

## Selection of Foreperson

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission--to reach a fair and just verdict based on the evidence. Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or his views about the evidence, and who will promote a full and fair consideration of that evidence.

## Cautionary Instruction on Communication and Research

As you retire to the jury room to deliberate, I also wish to remind you of an instruction I gave you at the beginning of the trial. During deliberations, you may not communicate with anyone not on the jury about the case. This includes any electronic communication such as email or text or any blogging about the case. In addition, you may not conduct any independent investigation during deliberations. This means you may not conduct any research in person or electronically via the internet or in another way.

## Communications Between Court and Jury During Jury's Deliberations

If it becomes necessary during your deliberations to communicate with me, you may send a note by deputy, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me except by such a signed note, and I will never

communicate with any member of the jury on any matter concerning the merits of the case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person-- not the clerk or me--how jurors are voting until after you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter – for example, 4-4 or 7-1 or in any other fashion—or whether the vote favors the Plaintiff, the Defendant, or is on any other issue in the case.

### Jurors' Duty to Deliberate

It is your duty as jurors to consult with one another and to deliberate expecting to reach an agreement. You must decide the case for yourself but you should do so only after thoroughly discussing it with your fellow jurors. You should not hesitate to change an opinion when convinced that it is wrong. You should not be influenced to vote in any way on any question just because another juror favors a particular decision or holds an opinion different from your own. You should reach an agreement only if you can do so in good conscience. In other words, you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions.

### Attitude and Conduct of Jurors in Deliberations

The attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance.  It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case.  Furthermore, many juries

find it useful to avoid an initial vote upon retiring to the jury room. Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed. Remember that you are not partisans or advocates in this matter, but you are judges of the facts.

### Unanimity of Verdict

A verdict must represent the considered judgment of each juror, and in order to return a verdict, each juror must agree on the verdict. In other words, your verdicts must be unanimous.

### Exhibits During Deliberations

I will be sending into the jury room with you the exhibits that have been admitted into evidence. You may examine any or all of them as you consider your verdicts. Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

### Furnishing the Jury With a Copy of the Instructions

I will provide you with a copy of my instructions. During your deliberations, you may, if you want, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. If you have any questions about the instructions, you should feel free to send me a note. Please return your instructions to me when your verdict is rendered.

### Delivering the Verdict

When you have reached your verdict, just send me a note telling me you have reached your verdict, and have your foreperson sign the note. Do not tell me what your verdict is. The foreperson should fill out and sign the verdict form that will be provided. We will then call you into the courtroom and ask you your verdict in open court.

Thank you. You may now retire to begin your deliberations.

**FILED**

MAR 0 4 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| YING QING LU, et al., | ) | |
| | ) | |
| V. | ) | CIVIL CASE NO.: **11cv1815 (JEB)** |
| | ) | |
| MARK LEZELL, et al., | ) | |
| | ) | |

### JOINT ACKNOWLEDGMENT CONCERNING TRIAL EXHIBITS

Counsel acknowledge that they have jointly reviewed the exhibits that were admitted into evidence

with the courtroom deputy and have agreed on what exhibits will be submitted to the jury during deliberations.

**Plaintiff:**

Exhibits:____1, 2, 4, and 6_____

_____

_____

_____     Date: _03/04/2015_
**Attorney for the plaintiff**

**Defendant:**

Exhibits:_____1 – 4_____

_____

_____

_____     Date: 3/4/15____
**Attorney for the defendant**

|  | | | | | |
|---|---|---|---|---|---|
| Government | ☐ | | | | |
| Plaintiff | ☒ | | YING QING LU, et al., | | |
| Defendant | ☐ | | VS. | | Civil/Criminal No. 11cv1815 (JEB) |
| Joint | ☐ | | MARK LEZELL, et al., | | |
| Court | ☐ | | | | |

| EXHIBIT NUMBER | DESCRIPTION OF EXHIBITS | MARKED FOR I.D. | RECEIVED IN EVIDENCE | WITNESS | EXHIBITS SENT INTO JURY (date & time) |
|---|---|---|---|---|---|
| 2 | Wire transfer from A. Afsharnia of $50,000.00 to M. Lezell. | 3/2/15 | 3/2/15 | A. Afsharnia | |
| 4 | Email from M. Lezell to Lucy Lu dated 5/28/08: Subject line: Westin-Lu wire Instructions. | 3/3/15 | 3/3/15 | Y. Qing Lu | |
| 1 | Wire transfer Dated 5/29/2008 | 3/3/15 | 3/3/15 | Y. Qing Lu | |
| 6 | Email to M. Lezell Dated 5/28/2008 | 3/3/15 | 3/3/15 | Y. Qing Lu | |
| 8 | Email from M. Lezell to Mark Albanese Dated 6/3/2008 | 3/3/15 | | M. Lezell | |
| 9 | Email from M. Lezell to Mark Albanese dated 6/4/2008 | 3/3/15 | | M. Lezell | |
| 13 | Email from M. Lezell to Mark Albanese dated 6/3/2008 | 3/3/15 | | M. Lezell | |

Pg. 1

USCA Case #15-7028    Document #1567800    Filed: 08/13/2015    Page 67 of 145

Government ☐
Plaintiff ☐
Defendant ☒
Joint ☐
Court ☐

YING QING LU, et al.,

VS.

MARK LEZELL, et al.,

Civil/Criminal No. 11cv1815 (JEB)

| EXHIBIT NUMBER | DESCRIPTION OF EXHIBITS | MARKED FOR I.D. | RECEIVED IN EVIDENCE | WITNESS | EXHIBITS SENT INTO JURY (date & time) |
|---|---|---|---|---|---|
| 3 | Confession Note; Affidavit of Commercial use; and HUD 1. | 3/2/15 | 3/2/15 | A. Afsharnia | |
| 4 | Escrow Agreement | 3/3/15 | 3/3/15 | M. Woods | |
| 1 | Promissory Note | 3/3/15 | 3/3/15 | Y. Qing Lu | |
| 2 | Email From Lezell to Tolliver Dated 5/30/2008 | 3/3/15 | 3/3/15 | Y. Qing Lu | |
| 5 | Email From Dwayne Tolliver to M. Lezell Dated 5/28/2008 | 3/3/15 | | Y. Qing Lu | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Pg. 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Ying Qing "Lucy" Lu | ) | |
| 4600 Connecticut Avenue, N.W., Apt. 721 | ) | |
| Washington, D.C.  20008 | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Mark Lezell d/b/a   Lezell Law, PC | ) | Civil Action No.: |
| 1133 Connecticut Ave., N.W.  12th Floor | ) | |
| Washington, D.C.  20036 | ) | |
| Serve: Mark Lezell, Esq. | ) | |
| 5800 Magic Mountain Drive | ) | |
| Rockville, Md. 20852 | ) | |
| and | ) | |
| Isam Ghosh, d/b/a | ) | |
| Geneva Financial Consultants, LLC | ) | |
| 5105 Backlick Road | ) | |
| Annandale, VA.   22003 | ) | |
| _____ | ) | |

## PROPOSED AMENDED COMPLAINT

COMES NOW Plaintiff, Ying Qing "Lucy" Lu, by and through counsel, hereby files this

Complaint and the following grounds that the above Defendants jointly and severally, unlawfully

conspired against her, thereby violating her rights by committing: (1) RICO violations; (2)

breach of contract; (3) civil conspiracy; (4) negligence; and (5) fraud/intentional

misrepresentation.

This action also seeks damages, including punitive damages, redress of injuries,

injunctive and declaratory relief,  attorney's fees and costs, and other relief, all arising out of

Mark Lezell d/b/a Lezell Law, PC and Isam Ghosh's violation of 18 U.S.C. §1961 *et seq*.,

(RICO), 18 U.S.C. §1341 *et seq*., (Mail and Wire Fraud).

## I. JURISDICTION

1.      This is a civil action arising under the racketeering laws of the United States, 18 U.S.C. §

1964(c) (civil remedies for RICO violations).  This Court therefore has original jurisdiction over

1

this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining

claims pursuant to 28 U.S.C. §1367

2.      Venue is proper in this judicial district per 28 U.S.C. § 1391.

## II.  PARTIES

3.      The Plaintiff Ying Qing "Lucy" Lu ("Plaintiff"), is a resident of the District of Columbia.

4       Defendant, Mark Lezell is a resident of Maryland, and  Lezell Law, PC is a professional

corporation located in Washington, D.C.  owned and operated by Defendant Mark Lezell, Esq. at

all times herein an attorney licensed to practice law in Washington, D.C.

5.      Defendant, Isam Ghosh, operated Westin Development, LLC was at all times relevant

herein, a limited liability corporation operated out of Defendant Mark Lezell's Washington, D.C.

office by Isam Ghosh, its managing member and a resident of the State of Virginia.

## III.  FACTS

6.      In May,2008 Mark Lezell, Esq. conspired with Isam Ghosh to defraud Lucy Lu of money.

7.      Mark Lezell and Isam Ghosh devised schemes and stories to defraud, Lucy Lu, and

utilized wires and emails to accomplish the schemes, in violation of 18 U.S.C. §1341 and § 1343.

8.      Defendants, among other things, schemed as follows: (1)misrepresented to Plaintiff that

Defendant Ghosh was about to receive a large fee in connection with the sale of a building in

Ocean City, Maryland, but needed to borrow some money before his fee was to be paid; (2)

Mark Lezell fraudulently informed Lucy Lu that Isam Ghosh had done everything to earn his fee

and that the fee was absolutely due to Isam Ghosh and would be paid in a short time; and (3)

Lezell fraudulently convinced Plaintiff to deposit $50,000.00 into Defendant Attorney Lezell's

escrow account (see copy of Defendant Ghosh's Declaration admitting the same attached hereto

as Exhibit A), but then later refused to return the funds to Plaintiff pursuant to previously agreed

upon escrow instructions.  Having utilized emails, wires, and telephone to accomplish their

schemes and artifices, Defendants conducted racketeering  activity as defined by 18 U.S.C. §

1961(B).

9.      On May 22, 2008, Mark Lezell knowingly falsely represented by suggestion, to a similarly

situated participant (Afshin Afsharnia) in the Ghosh scheme, that if the deal fell thru he would

have a return of his funds.  See copy of Lezell confirmation and guarantee letter attached hereto

as Exhibit B. The Afsharnia scheme is related in that it shares a similar purpose (to defraud), a

similar result (theft of funds), and similar method of commission (Lezell and Ghosh intentional

misrepresentations.

10.      By promissory note dated May 29, 2008 and signed by Defendant Isam Ghosh, as part of

the same scheme noted in paragraph 9, Defendant Ghosh also received $73,000.00 from

Plaintiff.  See copy of signed copy of the Ghosh promissory note attached hereto as Exhibit C.

To date, Ghosh has refused and not complied with the promises he made in that promissory note.


11.      Earlier, on November 13, 2006, Defendant Isam Ghosh borrowed $250,000.00 from Lucy

Lu which he has unlawfully failed and refused to repay.  In response to this failure to repay

funds borrowed, Plaintiff secured a Default judgment against Ghosh in the amount of

$250,000.00 in Fairfax Circuit Court.  See copy of Party's agreement and default judgment

attached at Exhibit D. This earlier Lucy Lu scheme is related to the May 2008 scheme herein

sued for, and the scheme alleged in the Bridges v. Lezell CA  11-1353 matter, in that it shares a

similar purpose (to defraud), a similar result (theft of funds), and similar method of commission

(Lezell and Ghosh intentional misrepresentations).

12.      On June 5, 2008, in the course of securing investor on the same premise as described in

paragraph 8, above, Defendant Ghosh executed a confessed judgment in the amount of

$70,000.00 prepared by Mark Lezell.  See copy of Confessed Judgment attached at Exhibit E. To date Defendant Ghosh has failed and refused to repay the funds borrowed.

13.     Defendants violated 18 U.S.C. § 1962(b) and 1962(c), by engaging in an enterprise engaged in activities that affect interstate commerce, and by controlling, conducting and participating in the conduct of the enterprise through a pattern of racketeering activity with a clear threat of future criminal activity.

### IV.  The Enterprise, the Members and the Racketeering Activity

**A.   The Enterprise**

14.     Lezell and Ghosh formed an association in fact which constituted an enterprise.  Within this enterprise, Lezell and Ghosh established a system of making decisions in furtherance of their various criminal activities, independent from their respective regular business practices.

15.     The enterprise was formed to promote, obtain and conduct joint ventures and investment business through both legitimate and illegitimate means. The enterprise had an existence well beyond the racketeering acts complained of herein. Importantly, Lezell and Ghosh maintained a system of distributing money obtained from individuals like Plaintiff herein, Lucy Lu.

16.     The enterprise engaged in a pattern of defrauding local business persons.  Indeed, the enterprise was used to defraud not only Lucy Lu, but also Nadir Tawil, Esq., Earnest Bridges, Afshin Afsharnia and approximately 5 other unnamed individuals in the Washington Area.

17.     In the District of Columbia, Maryland and elsewhere, Lezell, and Ghosh being persons associated with the enterprise described in paragraphs 8 - 13 above, which was engaged in, and the activities of which, affected interstate commerce, did unlawfully and willfully conduct and participate, directly and indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering activity, as defined by Title 18, United States Code, Section 1961(5), involving

multiple acts of mail fraud and wire fraud, as chargeable in violation of Title 18, United States

Code §§ 1341, 1343, and 1346.

**B.      The Members**

18.    Mark Lezell, is an Washington, D.C. attorney and he worked with Isam Ghosh d/b/a

sometimes as Westin Development, LLC and as Managing Member of Geneva Financial

Consultants, LLC, housed in his Washington, D.C. law office.  Mark Lezell was associated with

both Westin Development, LLC and Geneva Financial Consultants, LLC, and the property

development enterprise, investment funding, and credit enhancing firm. There was a nexus

between Mark Lezell, the block funding financing enterprise and the pattern of racketeering.

19.     The Lezell Law, PC clients who retained Mark Lezell, Esq. to represent them as legal

counsel reasonably and justifiably relied upon Mark Lezell' public representations that

Defendant Lezell would competently represent them in their legal matters

20.     Isam Ghosh is the Managing Member of Westin Development, LLC.  Isam Ghosh has

declared in writing that he caused Lucy Lu ("Depositor") to deliverer $50,000.00 to Mark Lezell,

for distribution as he directed. See sworn declaration of Isam Ghosh attached at Exhibit A

attached hereto.  Mr. Ghosh by his own statement regarding funds distribution, indicates that he

controlled the enterprise.  There was a nexus between Ghosh, control of the enterprise and the

pattern of racketeering.

21.     Isam Ghosh, and Mark Lezell marketed Geneva Financial Consultants, LLC, Westin

Development, LLC and various other entities as a block funding entity and/or investment firms

that promised financing, credit enhancement and funding goals. There was a nexus between

Lezell, Ghosh, Westin Development, LLC,  and Geneva Financial Consultants, continuing

criminal activity, the block funding financing enterprise and the pattern of racketeering.

22.      By several interstate emails and telephone calls from Lezell,  and  Ghosh,  to Lucy Lu in

 furtherance of the Lezell/ghosh Fraud Conspiracy on or about May 6, 2008 and continuing for

several weeks thereafter, notwithstanding the fact that Plaintiff had been given agreed upon

instructions on how to proceed.

23.      At a glance, looking at the Enterprise and the Members, based on the facts of this case,

1)there are numerous unlawful acts; 2) the length of time over which the acts were committed is

greater than three years; 3)the acts are all similar; 4) there are at least five victims; 5) the core

number of perpetrators is two, namely Lezell and Ghosh; and 6)the character of the unlawful

activity always involves theft of funds via use of the wire and mails, therefore it appears beyond

reasonable argument that a RICO pattern has been established.

## C.  The Racketeering Activity

### a.  Theft of Deposits

### (i)  Early May 2008 - $50,000.

24.      In early May, 2011, Lezell and Ghosh, caused Plaintiff to send through interstate wire

and via electronic mail, at least theee deposits to Lezell's lawfirm escrow account.  The

combined total of the deposit was $50,000.00. At that time, Lezell told Plaintiff that her money

would be safe if she paid the money to Lezell, as it would be deposited in his attorney escrow

account, and that he would make sure Plaintiff was secured.  Plaintiff acknowledging that Lezell

was a D.C. attorney, relied on his integrity.

25.      The money trail to Lezell for wires and checks was set up to make obvious the origin of

the deposited funds from Lucy Lu.    Testimony submitted to the D.C. Bar by Lezell makes it

abundantly clear that Lezzell accepted possession of Lu's funds.  Based on a complaint made to

the  DC Bar Counsel (Lezell/Lu Bar Docket No. 2011-D290, Mark Lezell has been suspended

from the practice of law.  To date, Lezell and Ghosh have refused and failed to return the money wired to Plaintiff.

**(ii)   May 29, 2008  - $73,000.00**

26.      Isam Ghosh executes a promissory note in the amount of $73,000.00 admitting that he had received $73,000 from Lucy Lu to further convince Plaintiff Lu to continue advancing monies to him.  At the time Ghosh executed the promissory note, he knew he was not going to repay Plaintiff her funds forwarded to him.  To date, Ghosh has failed to repay Lu any monies loaned and has clearly breached the aforementioned promissory note.

27.      As a May 29, 2008 e-mail from Mark Lezell to Dwayne Oliver, Esq., Plaintiff's attorney indicates, Lezell was well aware that funds from Lu were wired to his escrow account and as escrow agent he was not to disburse until Lucy Lu was paid $73,000.00.  In fact, Lezell, responded by noting that , "as escrow agent he [I] undertake to apply the deposited funds subject to the conditions agreed to".   The money trail to Lezell for wires and checks was set up to make obvious the origin of the deposited funds from Lucy Lu.    In testimony submitted to the DC Bar Counsel, Mark Lezell untruthfully testified and/submitted testimony that there was "no escrow, or other agreement, between Mr. Lezell and Ms. Lu in connection with the this transaction", and that "at no point, did Mr. Lezell agree to act as escrow agent, or in any other legal capacity" for Ms. Lu. To date, Defendants have refused and failed to return the money wired to Plaintiff.

**(iii)   March 16, 2009 - $250,000.00**

28.    On or about November 13, 2006, Isam Ghosh signed an agreement evidencing the fact that he had borrowed $250,000.00 from Lucy Lu, Plaintiff herein, for various business entities owned by Ghosh.  Ghosh notes in the agreement that he has issued a promissory note to repay the funds borrowed.  To date Ghosh has refused and failed to repay Plaintiff her $250,000.00.

29.    At the time Ghosh executed the agreement promising to repay to Plaintiff the $250,000.00

he had borrowed, he knew that he was not going to repay the funds borrowed.  As a result,

Plaintiff sued Ghosh and obtained a default judgment.  To date, Ghosh has not repaid Plaintiff.

**(iv)   June 5, 2008 - $70,000.00**

30.    On June 5, as a matter establishing **relatedness and continuity**, Defendant Ghosh

executed a Confessed Judgment and received $70,000.00 from Afshin Afsharnia, based on a

promise by Ghosh that Westin Development, LLC was developing a 625 acre project in the State

of Virginia, and within 30 days Afsharnia would receive return of his $70,000.00 deposit and a

50% ownership interest in the development project.   In furtherance of this scheme, Defendant

Lezell participated as the escrow agent, with specific instructions to hold Mr. Afsharnia's funds

until after the development project received its initial funding. Notwithstanding representations

to the contrary, Lezell delivered the $70,000.00 to Westin Development, LLC/Ghosh.

31.    Greater that 30 days have elapsed, and to date both Lezell and Ghosh have failed and

refused to repay the $70,000.00 deposit. At the time Lezell and Ghosh executed the confessed

judgment and promised to repay Afsharnia, both knew that their respective representations were

false.   This criminal conduct was similar to that engaged by defendants against Plaintiff herein.

**b.    Fraudulently Obtaining Money and Inducement of Lu**

32.     On or about  May 6, 2008, Ghosh telephoned Plaintiff and indicated that he was looking

for investors and that he was about to receive a large fee in connection with the sale of a building

in Ocean City, Maryland, but needed to borrow some money before his fee was due to be paid.

33.     On May 22, 2008 Lezell showed Plaintiff a letter prepared by Lezell on behalf of Ghohsh

and Westin Development, LLC, indicating that Lezell was holding $130,000.00 in his escrow

account to be paid to Ghosh, as an inducement to get Plaintiff Lu to deposits funds with Lezell

for Ghosh's benefit.  See copy of Lezell letter attached hereto at Exhibit B.

34.    On May 28, 2008 at 12:01 p.m. Lezell forwarded Dwayne Toliver, Esq. attorney for

Plaintiff, an e-mail noting that upon receipt of $50,000.00 into his account, Lezell would deliver

to Attorney Toliver, Ghosh's executed promissory note.

35.    On May 28,2008 at 7:04 p.m., Attorney Toliver sent an e-mail to Lezell, informing him of

the requirement that he [Mark Lezell], act as the Escrow Attorney for the $50,000.00 that

Plaintiff was to wire into Lezell's account, and that the funds "must be held in escrow and

released only upon full funding and paid only if [Plaintiff] is paid her $73,000.00".

36.    On May 29, 2008, at 2:35 a.m. Lezell sent an email to Attorney Tolliver, naming himself,

Lezell as the Escrow Agent, and stating verbatim that "as escrow agent, I undertake to apply the

deposited funds subject to the conditions agreed to".

37.    Mark Lezell thereafter transferred the funds to Isam Ghosh/Westin Development, LLC,  in

clear violation of the emailed escrow instructions and the his representations to Plaintiff.

38.    To this day, Plaintiff has not recovered from Defendants' actions.  Defendants' engaged in

continuous acts of fraud and racketeering that were designed to unlawfully elicit money from Lu.

39.    The Ghosh/Lezell property development and investment fraud scheme violated both the

federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343 and 1346, in that the scheme was

intended to fraudulently obtain money from persons through the use of the USPS and interstate

wire communications, along with the transmission of e-mail messages and telephone calls back

and forth from Mark Lezell in Washington D.C. to Isam Ghosh in Annandale, Va.

**b.  Predicate Acts**

40.    For the purpose of executing and attempting to execute the scheme and artifice to

defraud citizens of Washington, D.C., in particular, Plaintiff Lucy Lu, of money by causing

funds to be delivered and transmitted in interstate commerce by means of wire communications,

the following mailings and communications, in violation of Title 18, United States Code,

Sections 1346 as incorporated through § 1341 & § 1343:

41.      In connection with racketeering acts (i) thru (iv). above, in the District of Columbia and

elsewhere, Lezell and Ghosh, aided and abetted each other by  executing and attempting to

execute the scheme and artifice to defraud citizens of Washington, D.C.   As part of Defendants

broad fraud, other victims of separate frauds include: Attorney Nadar Tawil, Earnest Brideges

(See Brideges  v. Lezell, (CV 11-1353 JEB), Afshin Afsharnia, and 5 unnamed business victims.

On May 18, 2011, Lezell and Ghosh defrauded Shane Jackson and the members of the

Oklahoma Shelf Exploration and Development, LLC out $50,000 cash and over $10,000,000 in

promised financing.   At the time of this scheme, Defendant Lezell knowingly engaged in the

unauthorized practice of law.   See Exhibit A attached to Plaintiffs Motion for Leave to File

Opposition to Motion to Dismiss and proposed Amended Complaint.

42.     In the instant case,  Plaintiff Lu was the intended victim of theft of money by causing

funds to be delivered and transmitted in interstate commerce by means of wire communications,

the following communications, in violation of Title 18, United States Code,

a.  May 28, 2008, e-mail from Mark Lezell to Dwayne Toliver, Esq.  12:01 pm;

b.  May 28, 2008, e-mail from Mark Lezell to Dwayne Toliver, Esq.   4:14 pm;

c.  May 28, 2008, e-mail from Mark Lezell to Lucy Lu   4:23 pm; (bank wire from Lucy Lu)

d.  May 28, 2008, e-mail from Toliver to Lezell,   5:04 pm;

e.  May 29, 2008, e-mail from Mark Lezell to Dwayne Toliver,  and Isam Ghosh  2:35 am;

f.  May 29, 2008, e-mail from Toliver to Lezell,   3:36 am;

g.  May 29, 2008, e-mail from Toliver to Lezell,   7:54 am;

**c. Defendants Participated in the Enterprise Through Pattern of Racketeering.**

43.  Mark Lezell and Isam Ghosh participated in numerous predicate acts that were continuous and related, and constitute a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5).

44.  The predicate acts engaged in by Mark Lezell and Isam Ghosh are related in that each amounted to a scheme or schemes with the common goal to defraud the public, in particular, Lucy Lu, in order to cause her to wire deposit money into Lezell's escrow account.

45. The continuity of the illegal conduct can be shown because the predicate acts complained of began in November of 2006 and continued occurring through June of 2008, and thereby amounted to a closed period of repeated conduct incurring over a substantial period of time.

**d. RICO Injury**

46. The Plaintiff Lucy Lu has been and continues to be injured in her business and property as a result of Defendants' violations of 18 U.S.C. § 1962(c). As a direct and proximate result of Defendants' acts, Plaintiff has suffered actual and consequential damages.

47. Defendants are liable to Plaintiff for treble damages, together with all costs and reasonable attorneys' fees, as provided for in Title 18, United States Code, Section 1964(c).

<div align="center">

**C<small>OUNT</small> <small>ONE</small>—C<small>ONSPIRACY</small> <small>TO</small> V<small>IOLATE</small> RICO**

</div>

48. Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

49. This count is brought by the Plaintiff Lucy Lu against defendants Mark Lezell and Isam Ghosh (collectively the "RICO Defendants") alleging a cause of action under 18 U.S.C. §1962(d), for injuries due to Defendants control of a RICO enterprise under §18 U.S.C. 1962(b) and for conspiring to violate 18 U.S.C.§ 1962(c).

50. At all times, the plaintiffs and RICO Defendants were "persons" pursuant to § 1961(3).

51. At all times, Lezell Law, PC, a corporation, was an enterprise" per to § 1961(4).

52. At all relevant times, Westin Development, LLC, a corporation, was an "enterprise" pursuant to § 1961(4).

<div align="center">11</div>

53. At all relevant times, the two corporations engaged in, and their respective activities affected, interstate commerce, pursuant to § 1961(4).

54. All of the emails, numerous telephone calls, faxed communications and meetings noted above were made in furtherance of the investment fraud scheme. Therefore all of these communications were made in violation of the mail and wire fraud statutes. The plaintiff was defrauded by one or more of these emails and wires. This pattern of email and wire-transfers occurred over a period of 3 months from the date the investment scheme began when Mark Lezell was employed by Isam Ghosh as his "escrow attorney" and introduced to Lucy Lu, in furtherance of property development and investment fraud scheme. The investments schemes victimized many persons in addition to the Plaintiff. See Bridges v. Lezell, CA 11-1353, D.D.C.

55. Mark Lezell and Isam Ghosh agreed to participate, thus knowingly and willfully became members of a conspiracy by objectively indicating, through their words and actions, their agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of the investment fraud enterprise through a pattern of racketeering activity.

56. At least one of the conspirators committed at least one overt act during the existence of the conspiracy in an effort to accomplish some object or purpose of the conspiracy, as shown by the overt acts described above.

57. Plaintiff assert claims against these RICO Defendants for conspiring to violate § 1962(c), which prohibits any person employed by or associated with an enterprise from participating in the affairs of the enterprise through a pattern of racketeering activity.

58. This conspiracy to violate § 1962(c) and/or § 1962(b), is a violation of § 1962(d).

## COUNT TWO - BREACH OF CONTRACT

59. Plaintiff re-alleges paragraphs numbered 1-58 as if fully set forth herein.

60.  The Plaintiff and Defendants entered, agreed and formed an Escrow Agreement on or about May 28, 2008.   The Escrow Agreement was ratified by the parties conduct and Defendants acceptance of Plaintiff's $50,000 escrow account deposit.

61.   Defendants have failed to pay, without legal excuse, $50,000.00 due to the Plaintiff pursuant to the ratified Escrow Agreement, and the escrow instructions given to Defendant Lezell by Dwayne Oliver, Esq.  Defendant Ghosh also failed to pay Plaintiff $250,000.00 owned pursuant to a prior contractual agreement for which Plaintiff received a default judgment.

62. Therefore Defendants by not returning the $250,000.00, the $50,000 invested and $73,000 promised,  have materially breached the escrow contract  and Plaintiff has suffered loss of funds.

WHEREFORE, Plaintiff  pray  for judgment jointly and severally against Defendants in the amount of **$425,000.00** (Four Hundred and Twenty Five Thousand Dollars) as compensatory damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

## COUNT THREE – CIVIL CONSPIRACY

63.  Plaintiff re-alleges paragraphs numbered 1-62 as if fully set forth herein.

64.   Defendants jointly planned herein the unauthorized taking of Plaintiffs' $50,000 investment return and employed deceit and fraud by way of false statements and representations to Plaintiff  in furtherance of their plan.

65.   As a proximate cause of Defendant Lezell, and Defendant Ghosh's concerted actions, Plaintiff lost $50,0000 as well as the additional $23,000 he was promised based on Agreements.

WHEREFORE, Plaintiff  pray  for judgment jointly and severally against Defendants in the amount of **$225,000.00** (Two Hundred and Twenty Five Thousand Dollars) as compensatory damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

## COUNT THREE - BREACH OF FIDUCIARY DUTY

66.  Plaintiff re-alleges paragraphs numbered 1-65 as if fully set forth herein.

67. When Mr. Ghosh and Mr. Lezell advised and instructed Plaintiff to cause monies to be deposited into Defendant Mark Lezell's escrow account (as escrow agent with duties owed to Plaintiff to only distribute funds as instructed) they did so in order to defraud Plaintiff, when in fact they had no intention of paying the funds promised to Plaintiff.

68. Defendants thereby jointly aided, abetted and conspired to Defraud Plaintiff of $50,000 such acts were characterized by evil motive, intent to injure, ill will and fraud.

WHEREFORE, Plaintiff  pray  for judgment jointly and severally against Defendants in the amount of **$225,000.00** (Two Hundred and Twenty Five Thousand Dollars) as compensatory damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

## COUNT FOUR -  NEGLIGENCE

69. Plaintiff re-alleges paragraphs numbered 1-47 as if fully set forth herein.

70. Defendants Ghosh and Lezell and licensed professionals, owed a dutey of reasonable care to Plaintiff to properly handle monies he had entrusted to them.

71. Defendants Ghosh and Lezell breached their duty when they converted monies invested by Plaintiff through intentional and fraudulent tactics.

72. As a direct and proximate cause of  Ghosh and Lezell's  breach Plaintiff has loss of $323,000 plus interest.

WHEREFORE Plaintiff prays for judgment jointly and severally against Defendants in the amount of **$323,000.000 (compensatory damages), $100,000.00 (punitive damages),** attorneys fees, costs.

## COUNT FIVE – FRAUD / INTENTIONAL MISREPRESENTATION

73. Plaintiff re-alleges paragraphs numbered 1-72 as if fully set forth herein.

74. Defendants Ghosh and Lezell mislead Plaintiff by stating that there was no possibility of losing the $50,000 in funds she had put up and that said funds were guaranteed to be back to her

14

within days.  Defendant Ghosh also misled Plaintiff  by earlier promising in writing to repay

Plaintiff $250,000.00 for business investments and defaulting on that promise.

75.  Defendants Ghosh and Lezell  knew that their statements to Plaintiff were false.

76.   Defendants Ghosh and Lezell made these false statements to Plaintiff with the intent to

mislead him and induce his reliance thereupon.

77.  Plaintiff reasonably relied on Defendants misrepresentations when she gave them $50,000,

and $250,000.00 respectively.

78.  As a direct and proximate cause of Defendants' fraudulent misrepresentation Plaintiff lost

$323,000 plus interest.

WHEREFORE, Plaintiff  pray  for judgment jointly and severally against Defendants in

the amount of **$425,000.00** (Four Hundred and Twenty Five Thousand Dollars) as compensatory

damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

**The Plaintiff hereby demands for a jury trial.**

Respectfully submitted,
_____/s/_____
Randy McRae, Esq. #430494
10640 Campus Way South, Ste. 110
Landover,  Maryland   20785
(301)421–7983
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that, on the __19th__ day of January, 2012,  a copy of the foregoing
Supplement to Motion for Leave was mailed,  electronically, to the following:  Peter Goldman,
526 King Street, Ste. 213, Alexandria, Va.  22314.

_____/s/_____
Randy McRae

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ying Qing "Lucy" Lu | ) |
| 4600 Connecticut Avenue, N.W., Apt. 721 | ) |
| Washington, D.C.  20008 | ) |
| Plaintiff, | ) |
| and | ) |
| Oklahoma Shelf Exploration and | ) |
| Development, LLC ("OSED") | ) |
| 821 East 61st Street, Ste. 210 | ) |
| Tulsa, Oklahoma  74113 | ) |
| Plaintiff, | ) |
| and | ) |
| Bridges Financial, LLC | ) |
| 12530 Fairwood Parkway, Ste. 103 | ) |
| Bowie, Md.  20720 | ) |
| Plaintiff, | ) |
| and | ) |
| Afshin Afsharnia | ) |
| 4041 University Drive, Ste. 301 | ) |
| Fairfax, Va.  22030 | ) |
| Plaintiff. | ) |
| v. | ) |
| | ) |
| Mark Lezell d/b/a   Lezell Law, PC | )   Civil Action No.: 11-01815 |
| 1133 Connecticut Ave., N.W.  12th Floor | )   Judge James Boasbert |
| Washington, D.C.  20036 | ) |
|    Serve: Mark Lezell, Esq. | ) |
|    5800 Magic Mountain Drive | ) |
|    Rockville, Md. 20852 | ) |
|    and | ) |
| Isam Ghosh, d/b/a | ) |
|    Geneva Financial Consultants, LLC | ) |
|    5105 Backlick Road | ) |
|    Annandale, VA.   22003 | ) |

## PROPOSED THIRD AMENDED COMPLAINT

COMES NOW Plaintiff, Ying Qing "Lucy" Lu, by and through counsel, hereby files this

Complaint and the following grounds that the above Defendants jointly and severally, unlawfully

conspired against her, thereby violating her rights by committing: (1) RICO violations; (2) breach

1

of contract; (3) civil conspiracy; (4) negligence; and (5) fraud/intentional misrepresentation.

This action also seeks damages, including punitive damages, redress of injuries, injunctive and declaratory relief,  attorney's fees and costs, and other relief, all arising out of Mark Lezell d/b/a Lezell Law, PC and Isam Ghosh's violation of 18 U.S.C. §1961 *et seq*., (RICO), 18 U.S.C. §1341 *et seq*., (Mail and Wire Fraud).

## I.  JURISDICTION

1.      This is a civil action arising under the racketeering laws of the United States, 18 U.S.C. § 1964(c) (civil remedies for RICO violations).  This Court therefore has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367

2.      Venue is proper in this judicial district per 28 U.S.C. § 1391.

## II.  PARTIES

3.      The Plaintiff Ying Qing "Lucy" Lu ("Plaintiff"), is a resident of the District of Columbia.

4.      Plaintiff Oklahoma Shelf Exploration and Development, LLC is a corporation domiciled and doing business in the State of Oklahoma.

5.      Plaintiff Bridges Financial, LLC is a corporation domiciled and doing business in the State of Maryland.

6.      Plaintiff is a resident of the State of Virginia.

7.      Defendant, Mark Lezell is a resident of Maryland, and  Lezell Law, PC is a professional corporation located in Washington, D.C.  owned and operated by Defendant Mark Lezell, Esq. at all times herein an attorney licensed to practice law in Washington, D.C.

8.      Defendant, Isam Ghosh, operated Westin Development, LLC was at all times relevant herein, a limited liability corporation operated out of Defendant Mark Lezell's Washington, D.C.

office by Isam Ghosh, its managing member and a resident of the State of Virginia.

### III.   FACTS

9.      In May,2008 Mark Lezell, Esq. conspired with Isam Ghosh to defraud Lucy Lu of money.

10.      Mark Lezell and Isam Ghosh devised schemes/stories to defraud, Lucy Lu, and utilized

wires and emails to accomplish the schemes, in violation of 18 U.S.C. §1341 and § 1343.

11.      Defendants, among other things, schemed as follows: (1)misrepresented to Plaintiff that

Defendant Ghosh was about to receive a large fee in connection with the sale of a building in

Ocean City, Maryland, but needed to borrow some money before his fee was to be paid; (2) Mark

Lezell fraudulently informed Lucy Lu that Isam Ghosh had done everything to earn his fee and

that the fee was absolutely due to Isam Ghosh and would be paid in a short time; and (3) Lezell

fraudulently convinced Plaintiff to deposit $50,000.00 into Defendant Attorney Lezell's escrow

account (see copy of Defendant Ghosh's Declaration admitting the same attached hereto as

Exhibit A), but then later refused to return the funds to Plaintiff pursuant to previously agreed

upon escrow instructions.  Having utilized emails, wires, and telephone to accomplish their

schemes/artifices, Defendants conducted racketeering activity as defined by 18 USC § 1961(B).

12.      On May 22, 2008, Mark Lezell knowingly falsely represented by suggestion, to a

similarly situated participant (Afshin Afsharnia) in the Ghosh scheme, that if the deal fell thru he

would have a return of his funds.  See copy of Lezell confirmation and guarantee letter attached

hereto as Exhibit B. The Afsharnia scheme is related in that it shares a similar purpose (to

defraud), a similar result (theft of funds), and similar method of commission (Lezell and Ghosh

intentional misrepresentations.

13.       By promissory note dated May 29, 2008 and signed by Defendant Isam Ghosh, as part of

the same scheme noted in paragraph 9, Defendant Ghosh also received $73,000.00 from Plaintiff.

3

See copy of signed copy of the Ghosh promissory note attached hereto as Exhibit C.  To date,

Ghosh has refused and not complied with the promises he made in that promissory note.

14.     Earlier, on November 13, 2006, Defendant Isam Ghosh borrowed $250,000.00 from Lucy

Lu which he has unlawfully failed and refused to repay.  In response to this failure to repay funds

borrowed, Plaintiff secured a Default judgment against Ghosh in the amount of $250,000.00 in

Fairfax Circuit Court.  See copy of Party's agreement and default judgment attached at Exhibit D.

This earlier Lucy Lu scheme is related to the May 2008 scheme herein sued for, and the scheme

alleged in the Bridges v. Lezell CA  11-1353 matter, in that it shares a similar purpose (to

defraud), a similar result (theft of funds), and similar method of commission (Lezell and Ghosh

intentional misrepresentations).

15.     On June 5, 2008, in the course of securing investor on the same premise as described in

paragraph 8, above, Defendant Ghosh executed a confessed judgment in the amount of

$70,000.00 prepared by Mark Lezell.  See copy of Confessed Judgment attached at Exhibit E. To

date Defendant Ghosh has failed and refused to repay the funds borrowed.

16.     Defendants violated 18 U.S.C. § 1962(b) and 1962(c), by engaging in an enterprise

engaged in activities that affect interstate commerce, and by controlling, conducting and

participating in the conduct of the enterprise through a pattern of racketeering activity with a

clear threat of future criminal activity.

### IV.  The Enterprise, the Members and the Racketeering Activity

**A.   The Enterprise**

17.     Lezell and Ghosh formed an association in fact which constituted an enterprise.  Within

this enterprise, Lezell and Ghosh established a system of making decisions in furtherance of their

various criminal activities, independent from their respective regular business practices.

18.     The enterprise was formed to promote, obtain and conduct joint ventures and investment business through both legitimate and illegitimate means. The enterprise had an existence well beyond the racketeering acts complained of herein. Importantly, Lezell and Ghosh maintained a system of distributing money obtained from individuals like Plaintiff herein, Lucy Lu.

19.     The enterprise engaged in a pattern of defrauding local business persons.  Indeed, the enterprise was used to defraud not only Lucy Lu, but also Nadir Tawil, Esq., Earnest Bridges, Afshin Afsharnia and approximately 5 other unnamed individuals in the Washington Area.

20.     In the District of Columbia, Maryland and elsewhere, Lezell, and Ghosh being persons associated with the enterprise described in paragraphs 8 - 16 above, which was engaged in, and the activities of which, affected interstate commerce, did unlawfully and willfully conduct and participate, directly and indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering activity, as defined by Title 18, United States Code, Section 1961(5), involving multiple acts of mail fraud and wire fraud, as chargeable in violation of Title 18, United States Code §§ 1341, 1343, and 1346.

**B.     The Members**

21.   Mark Lezell, is an Washington, D.C. attorney and he worked with Isam Ghosh d/b/a sometimes as Westin Development, LLC and as Managing Member of Geneva Financial Consultants, LLC, housed in his Washington, D.C. law office.  Mark Lezell was associated with both Westin Development, LLC and Geneva Financial Consultants, LLC, and the property development enterprise, investment funding, and credit enhancing firm. There was a nexus between Mark Lezell, the block funding financing enterprise and the pattern of racketeering.

5

22.     The Lezell Law, PC clients who retained Mark Lezell, Esq. to represent them as legal counsel reasonably and justifiably relied upon Mark Lezell' public representations that Defendant Lezell would competently represent them in their legal matters

23.     Isam Ghosh is the Managing Member of Westin Development, LLC.  Isam Ghosh has declared in writing that he caused Lucy Lu ("Depositor") to deliverer $50,000.00 to Mark Lezell, for distribution as he directed. See sworn declaration of Isam Ghosh attached at Exhibit A attached hereto.  Mr. Ghosh by his own statement regarding funds distribution, indicates that he controlled the enterprise.  There was a nexus between Ghosh, control of the enterprise and the pattern of racketeering.

24.     Isam Ghosh, and Mark Lezell marketed Geneva Financial Consultants, LLC, Westin Development, LLC and various other entities as a block funding entity and/or investment firms that promised financing, credit enhancement and funding goals. There was a nexus between Lezell, Ghosh, Westin Development, LLC,  and Geneva Financial Consultants, continuing criminal activity, the block funding financing enterprise and the pattern of racketeering.

25.     By several interstate emails and telephone calls from Lezell,  and  Ghosh,  to Lucy Lu in furtherance of the Lezell/ghosh Fraud Conspiracy on or about May 6, 2008 and continuing for several weeks thereafter, notwithstanding the fact that Plaintiff had been given agreed upon instructions on how to proceed.

26.     At a glance, looking at the Enterprise and the Members, based on the facts of this case, 1)there are numerous unlawful acts; 2) the length of time over which the acts were committed is greater than three years; 3)the acts are all similar; 4) there are at least five victims; 5) the core number of perpetrators is two, namely Lezell and Ghosh; and 6)the character of the unlawful

activity always involves theft of funds via use of the wire and mails, therefore it appears beyond reasonable argument that a RICO pattern has been established.

**C.  The Racketeering Activity**

**a.  Theft of Deposits**

**(i)  Early May 2008 - $50,000.**

27.      In early May, 2011, Lezell and Ghosh, caused Plaintiff to send through interstate wire and via electronic mail, at least theee deposits to Lezell's lawfirm escrow account.  The combined total of the deposit was $50,000.00. At that time, Lezell told Plaintiff that her money would be safe if she paid the money to Lezell, as it would be deposited in his attorney escrow account, and that he would make sure Plaintiff was secured.  Plaintiff acknowledging that Lezell was a D.C. attorney, relied on his integrity.

28.       The money trail to Lezell for wires and checks was set up to make obvious the origin of the deposited funds from Lucy Lu.    Testimony submitted to the D.C. Bar by Lezell makes it abundantly clear that Lezzell accepted possession of Lu's funds.  Based on a complaint made to the  DC Bar Counsel (Lezell/Lu Bar Docket No. 2011-D290, Mark Lezell has been suspended from the practice of law.  To date, Lezell and Ghosh have refused and failed to return the money wired to Plaintiff.

**(ii)  May 29, 2008  - $73,000.00**

29.      Isam Ghosh executes a promissory note in the amount of $73,000.00 admitting that he had received $73,000 from Lucy Lu to further convince Plaintiff Lu to continue advancing monies to him.  At the time Ghosh executed the promissory note, he knew he was not going to repay Plaintiff her funds forwarded to him.  To date, Ghosh has failed to repay Lu any monies loaned and has clearly breached the aforementioned promissory note.

30.     As a May 29, 2008 e-mail from Mark Lezell to Dwayne Oliver, Esq., Plaintiff's attorney

indicates, Lezell was well aware that funds from Lu were wired to his escrow account and as

escrow agent he was not to disburse until Lucy Lu was paid $73,000.00.  In fact, Lezell,

responded by noting that , "as escrow agent he [I] undertake to apply the deposited funds subject

to the conditions agreed to".   The money trail to Lezell for wires and checks was set up to make

obvious the origin of the deposited funds from Lucy Lu.    In testimony submitted to the DC Bar

Counsel, Mark Lezell untruthfully testified and/submitted testimony that there was "no escrow,

or other agreement, between Mr. Lezell and Ms. Lu in connection with the this transaction", and

that "at no point, did Mr. Lezell agree to act as escrow agent, or in any other legal capacity" for

Ms. Lu. To date, Defendants have refused and failed to return the money wired to Plaintiff.

**(iii)   March 16, 2009 - $250,000.00**

31.    On or about November 13, 2006, Isam Ghosh signed an agreement evidencing the fact that

he had borrowed $250,000.00 from Lucy Lu, Plaintiff herein, for various business entities owned

by Ghosh.  Ghosh notes in the agreement that he has issued a promissory note to repay the funds

borrowed.  To date Ghosh has refused and failed to repay Plaintiff her $250,000.00.

32.    At the time Ghosh executed the agreement promising to repay to Plaintiff the $250,000.00

he had borrowed, he knew that he was not going to repay the funds borrowed.  As a result,

Plaintiff sued Ghosh and obtained a default judgment.  To date, Ghosh has not repaid Plaintiff.

**(iv)   June 5, 2008 - $70,000.00**

33.    On June 5, as a matter establishing **relatedness and continuity**, Defendant Ghosh

executed a Confessed Judgment and received $70,000.00 from Afshin Afsharnia, based on a

promise by Ghosh that Westin Development, LLC was developing a 625 acre project in the State

of Virginia, and within 30 days Afsharnia would receive return of his $70,000.00 deposit and a

50% ownership interest in the development project.   In furtherance of this scheme, Defendant

Lezell participated as the escrow agent, with specific instructions to hold Mr. Afsharnia's funds

until after the development project received its initial funding. Notwithstanding representations

to the contrary, Lezell delivered the $70,000.00 to Westin Development, LLC/Ghosh.

34.    Greater that 30 days have elapsed, and to date both Lezell and Ghosh have failed and

refused to repay the $70,000.00 deposit. At the time Lezell and Ghosh executed the confessed

judgment and promised to repay Afsharnia, both knew that their respective representations were

false.   This criminal conduct was similar to that engaged by defendants against Plaintiff herein.

**b.    Fraudulently Obtaining Money and Inducement of Lu**

35.    On or about  May 6, 2008, Ghosh telephoned Plaintiff and indicated that he was looking

for investors and that he was about to receive a large fee in connection with the sale of a building

in Ocean City, Maryland, but needed to borrow some money before his fee was due to be paid.

36.    On May 22, 2008 Lezell showed Plaintiff a letter prepared by Lezell on behalf of Ghohsh

and Westin Development, LLC, indicating that Lezell was holding $130,000.00 in his escrow

account to be paid to Ghosh, as an inducement to get Plaintiff Lu to deposits funds with Lezell

for Ghosh's benefit.  See copy of Lezell letter attached hereto at Exhibit B.

37.   On May 28, 2008 at 12:01 p.m. Lezell forwarded Dwayne Toliver, Esq. attorney for

Plaintiff, an e-mail noting that upon receipt of $50,000.00 into his account, Lezell would deliver

to Attorney Toliver, Ghosh's executed promissory note.

38.   On May 28,2008 at 7:04 p.m., Attorney Toliver sent an e-mail to Lezell, informing him of

the requirement that he [Mark Lezell], act as the Escrow Attorney for the $50,000.00 that

Plaintiff was to wire into Lezell's account, and that the funds "must be held in escrow and

released only upon full funding and paid only if [Plaintiff] is paid her $73,000.00".

39.8.    On May 29, 2008, at 2:35 a.m. Lezell sent an email to Attorney Tolliver, naming himself, Lezell as the Escrow Agent, and stating verbatim that "as escrow agent, I undertake to apply the deposited funds subject to the conditions agreed to".

40.    Mark Lezell thereafter transferred the funds to Isam Ghosh/Westin Development, LLC,  in clear violation of the emailed escrow instructions and the his representations to Plaintiff.

41.    To this day, Plaintiff has not recovered from Defendants' actions.  Defendants' engaged in continuous acts of fraud and racketeering that were designed to unlawfully elicit money from Lu.

42.    The Ghosh/Lezell property development and investment fraud scheme violated both the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343 and 1346, in that the scheme was intended to fraudulently obtain money from persons through the use of the USPS and interstate wire communications, along with the transmission of e-mail messages and telephone calls back and forth from Mark Lezell in Washington D.C. to Isam Ghosh in Annandale, Va.

43.    On May 18, 2011, Defendants continued their RICO enterprise by defrauding Shane Jackson, and the members of the Oklahoma Shelf Exploration and Development, LLC ("OSED") out of $50,000 cash and over $10,000,000. in promised financing.  We have documents, including and Escrow Agreement signed by Mark Lezell and OSED's demand for payment  In this case Mark Lezell represented that he was a practicing DC Attorney, however he was suspended from the practice of law in the District of Columbia on January 11, 2011.  The point is that at the time of this RICO act, Mr. Lezell was engaged in the unauthorized practice of law. Please be advised that OSED has forwarded complaints regarding this scheme to: 1) an Assistant US Attorney for Oklahoma; 2) the Northern Oklahoma Region FBI – Special Agent; and 3) the Tulsa Police Department, Officer Greg Douglass, Case # 2012 000 200.

44.    In July, 2009, pursuant to the escrow agreement, Bridges Financial, LLC was instructed by

10

Defendands to place $70,000 into Attorney Lezell's escrow account to be held until a Hot Ice

credit enhancement account ("CEA") financing deal was consummated and accepted by Hot Ice.

If Hot Ice did not accept and consummate the CEA deal before August 31, 2009, the $70,000

deposited funds were to be returned to Plaintiff.   On or about August 12, 2009 Bridges caused

$70,000 in cash to be deposited in Defendant Lezell's escrow account. The signatories to the

escrow agreement were Bridges and Defendant Lezell.  Attached to the escrow agreement were

guarantees of repayment of the funds by GFC (Isam Ghosh, Managing Member),  and Hot Ice

Entertainment.   Soon after Defendant Lezell received  Bridges' (and others') monies which were

represented to be held in Lezell's escrow account, he immediately wired funds to Defendant

Geneva Financial Consultants, LLC of Virginia.  ("GFC").

45.    On May 22, 2008, Lezell obtained $50,000 by knowingly and falsely representing by

suggestion, to a similarly situated participant (Afshin Afsharnia) in the Ghosh scheme, that if the

deal fell thru Afsharnia would have a return of his  $50,000,  Afsharnia never received his funds.

 The Afsharnia scheme is related in that it shares a similar purpose (to defraud), a similar result

(theft of funds), and similar method of commission (Lezell and Ghosh intentional

misrepresentations.

**b.  Predicate Acts**

46.   For the purpose of executing and attempting to execute the scheme and artifice to

defraud citizens of Washington, D.C., in particular, Plaintiff Lucy Lu, of money by causing funds

to be delivered and transmitted in interstate commerce by means of wire communications, the

following mailings and communications, in violation of Title 18, United States Code, Sections

1346 as incorporated through § 1341 and § 1343:

47.     In connection with racketeering acts (i) thru (iv). above, in the District of Columbia and elsewhere, Lezell and Ghosh, aided and abetted each other by executing and attempting to execute the scheme and artifice to defraud citizens of Washington, D.C.   As part of Defendants broad fraud, other victims of separate frauds include: Attorney Nadar Tawil, Earnest Brideges (See Brideges  v. Lezell, (CV 11-1353 JEB), Afshin Afsharnia, and 5 unnamed business victims. On May 18, 2011, Lezell and Ghosh defrauded Shane Jackson and the members of the Oklahoma Shelf Exploration and Development, LLC out $50,000 cash and over $10,000,000 in promised financing.  At the time of this scheme, Defendant Lezell knowingly engaged in the unauthorized practice of law.  See above par. 43-45, and See Exhibit A attached to Plaintiffs Motion for Leave to File Opposition to Motion to Dismiss and proposed Amended Complaint.

48.     In the instant case,  Plaintiff Lu was the intended victim of theft of money by causing funds to be delivered and transmitted in interstate commerce by means of wire communications, the following communications, in violation of Title 18, United States Code,

a.  May 28, 2008, e-mail from Mark Lezell to Dwayne Toliver, Esq.  12:01 pm;

b.  May 28, 2008, e-mail from Mark Lezell to Dwayne Toliver, Esq.   4:14 pm;

c.  May 28, 2008, e-mail from Mark Lezell to Lucy Lu   4:23 pm; (bank wire from Lucy Lu)

d.  May 28, 2008, e-mail from Toliver to Lezell,   5:04 pm;

e.  May 29, 2008, e-mail from Mark Lezell to Dwayne Toliver,  and Isam Ghosh  2:35 am;

f.   May 29, 2008, e-mail from Toliver to Lezell,   3:36 am;

g.   May 29, 2008, e-mail from Toliver to Lezell,   7:54 am;

**c.  Defendants Participated in the Enterprise Through Pattern of Racketeering.**

49.  Mark Lezell and Isam Ghosh participated in numerous predicate acts that were continuous and related, and constitute a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5).

50.  The predicate acts engaged in by Mark Lezell and Isam Ghosh are related in that each amounted to a scheme or schemes with the common goal to defraud the public, in particular, Lucy Lu, in order to cause her to wire deposit money into Lezell's escrow account.

51. The continuity of the illegal conduct can be shown because the predicate acts complained of began in November of 2006 and continued occurring through June of 2008, and thereby amounted to a closed period of repeated conduct incurring over a substantial period of time.

**d. RICO Injury**

52. The Plaintiff Lucy Lu has been and continues to be injured in her business and property as a result of Defendants' violations of 18 U.S.C. § 1962(c). As a direct and proximate result of Defendants' acts, Plaintiff has suffered actual and consequential damages.

53. Defendants are liable to Plaintiff for treble damages, together with all costs and reasonable attorneys' fees, as provided for in Title 18, United States Code, Section 1964(c).

<u>C</u><u>OUNT ONE</u>—<u>C</u><u>ONSPIRACY TO</u> <u>V</u><u>IOLATE</u> <u>RICO</u>

54. Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

55. This count is brought by the Plaintiff Lucy Lu against defendants Mark Lezell and Isam Ghosh (collectively the "RICO Defendants") alleging a cause of action under 18 U.S.C. §1962(d), for injuries due to Defendants control of a RICO enterprise under §18 U.S.C. 1962(b) and for conspiring to violate 18 U.S.C.§ 1962(c).

56. At all times, the plaintiffs and RICO Defendants were "persons" pursuant to § 1961(3).

57. At all times, Lezell Law, PC, a corporation, was an enterprise" per to § 1961(4).

58. At all relevant times, Westin Development, LLC, a corporation, was an "enterprise" pursuant to § 1961(4).

59. At all relevant times, the two corporations engaged in, and their respective activities affected, interstate commerce, pursuant to § 1961(4).

60. All of the emails, numerous telephone calls, faxed communications and meetings noted above were made in furtherance of the investment fraud scheme. Therefore all of these communications were made in violation of the mail and wire fraud statutes. The plaintiff was defrauded by one or more of these emails and wires. This pattern of email and wire-transfers occurred over a period of 3 months from the date the investment scheme began when Mark Lezell was employed by Isam Ghosh as his "escrow attorney" and introduced to Lucy Lu, in furtherance of property development and investment fraud scheme. The investments schemes victimized many persons in addition to the Plaintiff. See Bridges v. Lezell, CA 11-1353, D.D.C.

61.  Mark Lezell and Isam Ghosh agreed to participate, thus knowingly and willfully became members of a conspiracy by objectively indicating, through their words and actions, their agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of the investment fraud enterprise through a pattern of racketeering activity.

62. At least one of the conspirators committed at least one overt act during the existence of the conspiracy in an effort to accomplish some object or purpose of the conspiracy, as shown by the overt acts described above.

63.  Plaintiff assert claims against these RICO Defendants for conspiring to violate § 1962(c), which prohibits any person employed by or associated with an enterprise from participating in the affairs of the enterprise through a pattern of racketeering activity.

64. This conspiracy to violate § 1962(c) and/or § 1962(b), is a violation of § 1962(d).

## COUNT TWO - BREACH OF CONTRACT

65.  Plaintiff re-alleges paragraphs numbered 1-64 as if fully set forth herein.

66.   The Plaintiff and Defendants entered, agreed and formed an Escrow Agreement on or about

May 28, 2008.   The Escrow Agreement was ratified by the parties conduct and Defendants

acceptance of Plaintiff's $50,000 escrow account deposit.

67.   Defendants have failed to pay, without legal excuse, $50,000.00 due to the Plaintiff pursuant

to the ratified Escrow Agreement, and the escrow instructions given to Defendant Lezell by

Dwayne Oliver, Esq.  Defendant Ghosh also failed to pay Plaintiff $250,000.00 owned pursuant

to a prior contractual agreement for which Plaintiff received a default judgment.

68.   Therefore Defendants by not returning the $250,000.00, the $50,000 invested and $73,000

promised,  have materially breached the escrow contract  and Plaintiff has suffered loss of funds.

WHEREFORE, Plaintiff  pray  for judgment jointly and severally against Defendants in

the amount of **$425,000.00** (Four Hundred and Twenty Five Thousand Dollars) as compensatory

damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

## COUNT THREE – CIVIL CONSPIRACY

69.  Plaintiff re-alleges paragraphs numbered 1-68 as if fully set forth herein.

70.   Defendants jointly planned herein the unauthorized taking of Plaintiffs' $50,000 investment

return and employed deceit and fraud by way of false statements and representations to Plaintiff

in furtherance of their plan.

71.   As a proximate cause of Defendant Lezell, and Defendant Ghosh's concerted actions,

Plaintiff lost $50,0000 as well as the additional $23,000 he was promised based on Agreements.

WHEREFORE, Plaintiff  pray  for judgment jointly and severally against Defendants in

the amount of **$225,000.00** (Two Hundred and Twenty Five Thousand Dollars) as compensatory

damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

## COUNT THREE - BREACH OF FIDUCIARY DUTY

72.  Plaintiff re-alleges paragraphs numbered 1-71 as if fully set forth herein.

73.  When Mr. Ghosh and Mr. Lezell advised and instructed Plaintiff to cause monies to be deposited into Defendant Mark Lezell's escrow account (as escrow agent with duties owed to Plaintiff to only distribute funds as instructed) they did so in order to defraud Plaintiff, when in fact they had no intention of paying the funds promised to Plaintiff.

74  Defendants thereby jointly aided, abetted and conspired to Defraud Plaintiff of $50,000 such acts were characterized by evil motive, intent to injure, ill will and fraud.

WHEREFORE, Plaintiff  pray  for judgment jointly and severally against Defendants in the amount of **$225,000.00** (Two Hundred and Twenty Five Thousand Dollars) as compensatory damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

## COUNT FOUR -  NEGLIGENCE

75.  Plaintiff re-alleges paragraphs numbered 1-74 as if fully set forth herein.

76.  Defendants Ghosh and Lezell and licensed professionals, owed a dutey of reasonable care to Plaintiff to properly handle monies he had entrusted to them.

77.  Defendants Ghosh and Lezell breached their duty when they converted monies invested by Plaintiff through intentional and fraudulent tactics.

78.  As a direct and proximate cause of  Ghosh and Lezell's  breach Plaintiff has loss of $323,000 plus interest.

WHEREFORE Plaintiff prays for judgment jointly and severally against Defendants in the amount of **$323,000.000 (compensatory damages), $100,000.00 (punitive damages),** attorneys fees, costs.

## COUNT FIVE – FRAUD / INTENTIONAL MISREPRESENTATION

79.  Plaintiff re-alleges paragraphs numbered 1-78 as if fully set forth herein.

80. Defendants Ghosh and Lezell mislead Plaintiff by stating that there was no possibility of losing the $50,000 in funds she had put up and that said funds were guaranteed to be back to her within days.  Defendant Ghosh also misled Plaintiff  by earlier promising in writing to repay Plaintiff $250,000.00 for business investments and defaulting on that promise.

81. Defendants Ghosh and Lezell  knew that their statements to Plaintiff were false.

82.   Defendants Ghosh and Lezell made these false statements to Plaintiff with the intent to mislead him and induce his reliance thereupon.

83. Plaintiff reasonably relied on Defendants misrepresentations when she gave them $50,000, and $250,000.00 respectively.

84. As a direct and proximate cause of Defendants' fraudulent misrepresentation Plaintiff lost $323,000 plus interest.

WHEREFORE, Plaintiff  pray  for judgment jointly and severally against Defendants in the amount of **$425,000.00** (Four Hundred and Twenty Five Thousand Dollars) as compensatory damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

**The Plaintiffs hereby demand for a jury trial.**

Respectfully submitted,
___/s/  Randy McRae___
Randy McRae, Esq. #430494
10640 Campus Way South, Ste. 110
Landover,  Maryland   20785
(301)421−7983
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that, on the __30th__ day of October, 2012, a copy of the foregoing Motion for Leave and proposed Third Amended Complaint was mailed first class, to the last known address of the following: Isam Ghosh, 22047 Chelsy Paige Square, Ashburn, Va.  20148, and to Mark Lezell, 1615 L Street, N.W., Suite 1350, Washington, D.C. 20036.

___/s/_Randy McRae_____
Randy McRae

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Ying Qing "Lucy" Lu                    )
　　　　Plaintiff,                         )
　　　　　　　　　　　　　　　　　　　)        Civil Action No.: 11-01815
v.                                     )        Judge  James  Boasberg
　　　　　　　　　　　　　　　　　　　)
Mark Lezell d/b/a Lezell Law, PC et al,  )
　　　　Defendants,                       )

## 2nd  MOTION FOR LEAVE TO INTERVENE OR IN THE ALTENATIVE FOR JOINDER

　　　　Comes now, the Oklahoma Shelf Exploration Development , LLC ("OSED");

Bridges Financial, LLC; and Afshin Afsharnia, by their undersigned attorney, pursuant to

Fed. R. Civ. Proc. 24, 19, 20,  and  the local rules, move for leave to participate in the

above captioned matter as a Plaintiff Iintervenor, upon the grounds that: 1)  Intervenors

interest are not adequately represented by the existing parties; 2) this motion is timely;

and 3) each Intervenor has adequate interest in the subject of this matter;

　　　Pursuant to Local Rule 7m, on April 18, 2012, I certify that I spoke to opposing

Counsel by telephone in a good faith attempt to narrow the areas of disagreement.  The

parties did in fact have the required discussions, however the Motion remains opposed.

 In support of this Motion, Plaintiff submits the attached Memorandum .

　　　　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　Randy McRae #430494
　　　　　　　　　　　　　　　　　10640 Campus Way South, #110
　　　　　　　　　　　　　　　　　Largo, Maryland  20774
　　　　　　　　　　　　　　　　　(202) 421-7983

## CORRECTED CERTIFICATE OF SERVICE

　　　　This is to certify that, on the __17th day of May, 2012,  a copy of the foregoing
Motion for Leave was mailed first class, to the last known address of the following: Isam
Ghosh, 22047 Chelsy Paige Square, Ashburn, Va.  20148, and to Mark Lezell, 1615 L
Street, N.W., Suite 1350, Washington, D.C. 20036.

　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　Randy McRae

1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Ying Qing "Lucy" Lu         )
      Plaintiff,         )
                         )     Civil Action No.: 11-01815
v.                         )     Judge  James  Boasberg
                         )
Mark Lezell d/b/a Lezell Law, PC et al,  )
      Defendants,          )

**MEMORANDUM OF POINTS IN SUPPORT OF MOTION
FOR LEAVE TO INTERVENE**

It is well settled that, under Fed. R. Civ. P. Rule 24 provides that a party may intervene as a party as a matter of right or to intervene as a permissive intervenor.

**FACTS**

As similarly situated victims of frauds perpetrated by Defendants, movants have been directly affect by Defendants acts, and seek to intervene based on the following:

On May 18, 2011, Defendants continued their RICO enterprise by defrauding Shane Jackson, and the members of the Oklahoma Shelf Exploration and Development, LLC ("OSED") out of $50,000 cash and over $10,000,000. in promised financing.  We have documents, including and Escrow Agreement signed by Mark Lezell and OSED's demand for payment  In this case Mark Lezell represented that he was a practicing DC Attorney, however he was suspended from the practice of law in the District of Columbia on January 11, 2011.  The point is that at the time of this RICO act, Mr. Lezell was engaged in the unauthorized practice of law.  Please be advised that OSED has forwarded complaints regarding this scheme to: 1) an Assistant US Attorney for Oklahoma; 2) the Northern Oklahoma Region FBI – Special Agent; and 3) the Tulsa Police Department, Officer Greg Douglass, Case # 2012 000 200.

In July, 2009, pursuant to the escrow agreement, Bridges Financial, LLC was

instructed by Defendands to place $70,000 into Attorney Lezell's escrow account to be

held until a Hot Ice credit enhancement account ("CEA") financing deal was

consummated and accepted by Hot Ice.  If Hot Ice did not accept and consummate the

CEA deal before August 31, 2009, the $70,000 deposited funds were to be returned to

Plaintiff.   On or about August 12, 2009 Bridges caused $70,000 in cash to be deposited

in Defendant Lezell's escrow account. The signatories to the escrow agreement were

Bridges and Defendant Lezell.  Attached to the escrow agreement were guarantees of

repayment of the funds by GFC (Isam Ghosh, Managing Member),  and Hot Ice

Entertainment.   Soon after Defendant Lezell received  Bridges' (and others') monies

which were represented to be held in Lezell's escrow account, he immediately wired

funds to Defendant Geneva Financial Consultants, LLC of Virginia.  ("GFC").

   On May 22, 2008, Lezell obtained $50,000 by knowingly and falsely representing by

suggestion, to a similarly situated participant (Afshin Afsharnia) in the Ghosh scheme,

that if the deal fell thru Afsharnia would have a return of his  $50,000,  Afsharnia never

received his funds.  The Afsharnia scheme is related in that it shares a similar purpose

(to defraud), a similar result (theft of funds), and similar method of commission (Lezell

and Ghosh intentional misrepresentations.  Accordingly, Intervenors filed this Motion.

## ARGUMENT

### 1. Legal Standard for Intervention of a Party

FRCP Rule 24(a)(2), which governs intervention as of right, states in pertinent part:

Upon timely application anyone shall be permitted to intervene in an action . . . (2) when
the applicant claims an interest relating to the property or transaction which is the
subject of the action and the applicant is so situated that the disposition of the action
may as a practical matter impair or impede the applicant's ability to protect that interest,
unless the applicant's interest is adequately represented by existing parties.

3

Fed. R. Civ. P. 24(a)(2). The D.C. Circuit has determined that intervention as of right depends upon the applicants' ability to satisfy five prerequisites: (1) the timeliness of the motion; (2) a showing of "adequate interest"; (3) a possible impairment of that interest; (4) a lack of adequate representation by the existing parties to the action; and 5) standing to sue. *Fund for Animals v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003) (Court granted Mongolian ministry's motion to intervene in case challenging ESA legality of argali sheep trophy importation).  OSED, Bridges Financial, and Afsharnia ("Intervenors") each clearly satisfy each of these five prerequisites.

**2. This Motion Is Timely**

Under the circumstances, Intervenors have moved to intervene in this case in a timely manner. "[T]timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case."  *U.S. v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). (intervention granted by Court of Appeals for the purpose of appealing discovery order). At the time that Intervenors are filing this motion, neither Lezell nor Ghosh has yet filed an answer to initial Plaintiff – Lu's Complaint. The Administrative record has not been lodged and no briefing has commenced. No prejudice will come to any party from the granting of this motion at this relatively early stage of the litigation. Consequently, this motion to intervene meets the timeliness requirement.

**3.  Intervenors Have Substantial Legal Interests**

Each Intervenor has substantial legal interests in the subject matter of this suit, stated plainly, each has a substantial cash interest in this matter . As described above, OSED, Bridges Financial, and Afsharnia are similarly situated victims of frauds and schemes perpetrated by Defendants Lezell and Ghosh. Defendants activities are prohibited RICO acts and Intervenors are protected by a variety of state and Federal laws.

**4. Permissive Intervention**

If this Court does not find that Intervenors demonstrate the five requirements for intervention as of right, we requests permissive intervention under FRCP Rule 24(b):

Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).3 "Rule 24(b) . . . provides basically that anyone may be permitted to Intervene if his claim and the main action have a common question of law or fact." *Nuesse v. Camp*, 385 F.3d 694, 704 (D.C. Cir. 1967). Although the rule speaks in terms of a "claim or defense" this is not interpreted strictly so as to preclude permissive intervention." *Id.*

Here, permissive intervention is appropriate even if the Court denies the motion to intervene as of right. As discussed above, Intervenor's motion to intervene is timely and it and their members have a significant protectable interest in the subject matter of this action. Furthermore, intervention will not unfairly prejudice the parties. Permissive intervention is not a substitute for intervention as of right. If the party qualifies for intervention under Rule 24(a), the Court must grant that status. Fed. R. Civ. P. 24(a). In this case it is beyond reasonable argument that Intervenors qualify and have stated a question of law or fact in common.

**5. Your Honor's Recent Opinions Support Granting Intervenors' Application**

The Intervenors seek to intervene at this juncture because it is clear with the district court's decision on March 16, 2012,granting a motion for leave to pursue RICO claims, that their interests have been solidified. Prior to that time, there was some likelihood that plaintiffs' lawsuit would not necessarily have any impact on the relevant Defendants, however since that time it is clear that the RICO claims must be dealt with. The district court had held that the plaintiffs did in fact  have standing to challenge the use of wires and mail in a RICO enterprise.  Moreover, although this Court gave Defendants until March 30, 2012 to "file their response", for reasons unknown  the Defendants did not bother to re-assert their initial motion to dismiss, thus no defense has been established. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Additionally, since that time, Defendants counsel has moved to withdraw, and Defendants have failed to timely respond to Plaintiff's Motion to Freeze Assets.

Respectfully submitted,

_____/s/_____
Randy McRae  #430494
10640 Campus Way South, Ste. 110
Largo, Maryland  20774
(202) 421-7983

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Ying Qing "Lucy" Lu                              )
      Plaintiff,                                )
                           )          Civil Action No.: 11-01815
v.                                                        )          Judge  James  Boasberg
                           )
Mark Lezell d/b/a Lezell Law, PC et al,  )
      Defendants,                             )

**ORDER**

    Upon consideration of the Plaintiff's Motion for Leave to File its Motion to

Intervene, any opposition thereto, and for cause shown, it is hereby this  _____  day of

May, 2012.

        **ORDERED** that the motion is GRANTED,

        **SO ORDERED**.

                                    _____
                                    Judge
                                    U.S. District Court

Copies: Randy McRae, Esq.
          10640 Campus Way South, Ste. 110
           Largo, Maryland   20774
          Counsel for Plaintiff

          Peter Goldman, Esq.
          526 King Street, Ste. 213
          Alexandria, Va.  22314
          Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YING QING 'LUCY' LU            ) | |
| ) | |
|     Plaintiff,            ) | |
| ) | |
|     v.                    ) | Civil Action No. 1:11cv01815 |
| ) | Judge Boasberg |
| ISAM GHOSH, et al.            ) | |
| ) | |
|     Defendants.            ) | |

_____

**DEFENDANT ISAM GHOSH'S AND MARK LEZELL'S MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO**
**STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

Defendants, Isam Ghosh and Mark Lezell, through undersigned counsel, hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3), and Fed. R. Civ. P. 12(b)(6) and 9(b), to dismiss the Plaintiff's Complaint for Lack of Subject Matter Jurisdiction, and Failure to State Claims Upon Which Relief can be Granted. As grounds for this Motion, the Defendants state as follows:

**I. THE ALLEGATIONS IN THE COMPLAINT.**

The plaintiff, Ying Qing 'Lucy' Lu, has filed an action in this Court alleging violation of one (1) federal statute, and five (5) state law causes of action: (1) civil RICO; (2) breach of contract; (3) civil conspiracy; (4) breach of fiduciary duty; (5) negligence; and (6) fraud/intentional misrepresentation. (Complaint, p. 1.)

In a nutshell, the plaintiff accuses the Defendants of not returning either $50,000.00, or $73,000.00, that the plaintiff

allegedly invested with defendant Ghosh in relation to a real estate project.

**II. ARGUMENT**

**A. THE COMPLAINT FAILS TO ALLEGE PROPER SUBJECT MATTER JURISDICTION IN THIS COURT.**

The plaintiff's Complaint alleges that jurisdiction is based upon '28 U.S.C. Sec. 1332, 1331 and 1343, and diversity of citizenship.' (Complaint, Para. 1.)

The Complaint also claims that jurisdiction is proper 'under 28 U.S.C. Sec. 2240, this being an action for declaratory relief....' (Complaint, Para. 2.)

The Complaint also alleges jurisdiction in this Court based upon the RICO cause of action under 18 U.S.C. Sec. 1962. (Complaint, Para. 3.)

**1. The Applicable Legal Standard As To Diversity Jurisdiction Under 28 U.S.C. Sec. 1332(a).**

It is well established that '[a] case falls within the federal court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is *no plaintiff and no defendant who are citizens of the same state.*' *Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 388 (1998). (Emphasis added.)

Similarly, the Supreme Court instructs that '...28 U.S.C. Sec. 1332(a), thus applies *only to cases* in which *each plaintiff is diverse from each defendant.*' *Caterpillar Inc. v. Lewis,* 519 U.S.

2

61, 68 (1996). (Emphasis added.) *See also Lewis v. Government of the District of Columbia*, 534 F.Supp.2d 20, 22 (D.D.C. 2008) ('for jurisdiction to exist under 28 U.S.C. Sec. 1332, there must be complete diversity between the parties, which is to say that the plaintiff may not be a citizen of the same state as any defendant'); *Anderson v. Wiggins*, 460 F.Supp.2d 1, 7 (D.D.C. 2006) (court held that case clearly lacked diversity as one of the defendants resided in same city as plaintiff).

> **2. The Complaint Alleges That Both The Plaintiff
>    And A Defendant Are Residents Of Or Maintain
>    <u>A Principal Place Of Business In The Same Jurisdiction</u>.**

The Plaintiff alleges in her Complaint that she is a 'resident of the District of Columbia'. (Complaint, Para. 4).

The Plaintiff also alleges that defendant Lezell, while a resident of Maryland, maintains his principal place of business (Lezell Law, PC), a professional corporation 'located in Washington, D.C.' (Complaint, Para. 5.) The Complaint's caption identifies Mr. Lezell's principal place of business as being located at 1133 Connecticut Ave., N.W., 12th Floor, Washington, D.C. 20036.

Further, while the plaintiff has sued Mr. Lezell in his individual capacity ('Mark Lezell d/b/a Lezell Law, PC'), the allegations against Mr. Lezell are in his professional capacity, as opposed to his individual status. Accordingly, Mr. Lezell enjoys the protection afforded by his corporate status (Lezell Law, PC),

and Lezell Law, PC, with its principal place of business in Washington, D.C., is the proper defendant.

Under 28 U.S.C. Sec. 1332(c)(1), a corporation is deemed to be a citizen of any state where it has its principal place of business.

Under *Schact* and *Caterpillar*, the failure of the Plaintiff to allege complete diversity between herself and all of the defendants precludes diversity jurisdiction in this Court under Sec. 1332(a).

Further notwithstanding the plaintiff's claims for damages, the amounts in dispute in the plaintiff's Complaint appear to be $50,000.00 (Complaint, Para. 11), or $73,000.00 (Complaint, Para. 17). Under 28 U.S.C. Sec. 1332(a), diversity jurisdiction is only available if the amount in dispute exceeds $75,000.00.

### 3. The Applicable Legal Standard As To Federal Question Jurisdiction Under 28 U.S.C. Sec. 1331.

Federal district courts are courts of limited jurisdiction, and possess 'only that power conferred by [the] Constitution and [by] statute.' *Kokkonen v. Guardian Life Insurance Company*, 511 U.S. 375, 377 (1994). 'There is a presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff in the case, to establish that the Court has subject matter jurisdiction over the matter.' *McNutt v. General Motors Acceptance Corporation of Indiana*, 298 U.S. 178, 182-183 (1936).

When an inquiry, pursuant to a Motion to Dismiss under Fed. R.

Civ. P. 12(b)(1), focuses on a Court's jurisdictional authority to hear a claim, the Court may give the plaintiff's factual allegations more scrutiny and may consider materials outside the pleadings. *See Anderson v. Wiggins*, 460 F.Supp.2d at 6.

'A plaintiff properly invokes section 1331 jurisdiction when [he] pleads a colorable claim 'arising under' the Constitution or laws of the United States.' *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 513 (2006) (*citing Bell v. Hood*, 327 U.S. 678, 681–85 (1946)). An action invoking federal question jurisdiction 'may be dismissed for want of subject matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous''. *Id*. at 513 n. 10 (citations omitted).

### 4. The Plaintiff's Complaint Fails To Invoke The Constitution And Any Federal Statute Or Law.

While the plaintiff invokes Sec. 1331 in his attempt to claim subject matter jurisdiction in this Court, the Complaint makes no express or other reference to the Constitution of the United States, or to any federal statute or law, with the exception of the RICO count (18 U.S.C. Sec. 1962). The deficiencies in the RICO conspiracy count will be addressed below. Instead, the plaintiff alleges the remaining five causes of action identified above, all of which are manifestly state common law causes of action.

By comparison, the plaintiff in *Arbaugh* sued her former employer, alleging sexual harassment in violation of Title VII of

the Civil Rights Act of 1964, and she invoked federal question jurisdiction under Sec. 1331. In the instant case before this Court, the plaintiff simply does not allege any federal statutory or constitutional questions or issues.

The plaintiff alleges subject matter jurisdiction under Sec. 1331 'solely for the purpose of obtaining jurisdiction' in this Court, as contemplated in *Arbaugh*, 546 U.S. at 513 n. 10. Accordingly, the allegations in the plaintiff's Second Amended Complaint do not confer federal question subject matter jurisdiction in this Court under Sec. 1331.

## 5. The Applicable Legal Standard As To Jurisdiction Under 28 U.S.C. Sec. 1343.

28 U.S.C. Section 1343 – Civil Rights and Elective Franchise – confers jurisdiction based upon an alleged deprivation of rights under 42 U.S.C. Sec. 1985; injuries or damages suffered in relation to a deprivation of equal rights under federal or state laws; and deprivation of voting rights. *See Howell v. Cataladi*, 464 F.2d 272, 274 (3rd Cir. 1972) (Sec. 1343 confers only jurisdiction only in the federal courts; it does not supply a substantive basis for relief).

## 6. The Plaintiff's Complaint Fails To Allege A Civil Rights Or Voting Rights Deprivation.

While the plaintiff seeks to invoke jurisdiction in this Court under Section 1343, the Complaint does not allege any civil rights or voting rights deprivation or damages. Instead, the Complaint alleges a straightforward commercial dispute between and among the

parties. Accordingly, the allegations in the plaintiff's Complaint do not confer civil rights/voting rights subject matter jurisdiction in this Court under Sec. 1343. *See Fisher v. Lynch*, 531 F.Supp.2d 1253 (D. Kan. 2008) (plaintiff's defamation claim, under Kansas law, did not fall under Sec. 1343 or the civil rights laws, since the plaintiff did not assert a cognizable claim for violation of the civil rights laws).

### 7. **28 U.S.C. Sec. 2240 Is Inapplicable.**

The plaintiff's Complaint alleges that jurisdiction in this Court is proper under '28 USC Sec. 2240, this being an action for declaratory relief.' (Complaint, Para. 2.)

It does not appear that a law under 28 USC Sec. 2240 currently exists. Under 28 USCA Sec. 2240, the Annotated Code states 'Reserved for Future Legislation.'

28 U.C.S. Sec. 2201 (Declaratory Judgments) does not create substantive or subject matter jurisdiction. Instead, it states in pertinent part ' In a case of actual controversy within its jurisdiction....', a federal court is authorized to issue a declaratory judgment.

### 8. **The Plaintiff's RICO Conspiracy Cause Of Action Fails To State A Claim Upon Which Relief Can Be Granted.**

The plaintiff, having otherwise failed to properly allege jurisdiction in her Complaint, also seeks to invoke the subject matter jurisdiction of this Court by adding a civil RICO conspiracy under 18 U.S.S. Sec. 1962(c). For several reasons reviewed below,

the proposed RICO cause of action fails to state a claim upon which relief can be granted, and it does not comport with pleading standards as set forth by the United States Supreme Court.

### a. **The Applicable Legal Standard As To Pleading**.

Through two recent decisions, the United States Supreme Court has raised the standards for pleading sufficiency. 'To survive a Motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the previous standard under *Conley v. Gibson*, 355 U.S. 41 (1957)).

A claim is facially plausible when the pleaded factual content 'Allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Iqbal*, 129 S.Ct. at 1949 (*citing Twombley*, 550 U.S. at 556). 'The plausibility standard ... asks for more than a sheer possibility that a defendant acted unlawfully.' *Id*.

'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' *Iqbal*, 129 S.Ct at 1949 (*citing Twombley*, 550 U.S. at 555).

### b. **The Applicable Legal Standard As To Pleading Under 18 USC Sec. 1962.**

As distinguished from the standard commercial dispute, the civil RICO statute under 18 U.S.C. Sec. 1962 requires a series of complex facts, elements and factors, properly pled, to be deemed sufficient.

A violation of Sec. 1962(c) consists of four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. The RICO Act requires at least two predicate criminal racketeering acts, punishable under certain state or federal laws, including mail and wire fraud. *See Western Associates Limited Partnership v. Market Square Associates*, 235 F.3d 629, 633 (D.C. Cir. 2001).

Further, the pattern requirement includes the elements of relatedness and continuity: the predicates must be related, and that they pose of threat of continued criminal activity. The criminal acts must similar purposes, results, victims, or methods of commission, or otherwise must be interrelated by distinguishing characteristics. *Id.* (*citing H.J. Inc. v, Northwestern Bell Telephone Company*, 492 U.S. 229, 239 (1989)).

In deciding whether a RICO pattern has been established, the trial court should consider six factors; the number of unlawful acts; the length of time over which the acts were committed, the similarity of the acts, the number of perpetrators, and the character of the unlawful activity. *Western Associates Limited Partnership* at 631 (*citing Edmondson & Gallagher v. Alban Towers*

9

*Tenants Association*, 48 F.3d 1260, 1265 (D.C. Cir. 1995)).

   c. **The Plaintiff's RICO Count Is Inadequately Pled.**

   Paragraphs 11-17 in the Complaint generally allege nothing more than a state law commercial contract dispute.

   Paragraphs 18-26 of the Complaint are precisely the kind of threadbare, conclusory allegations deemed insufficient under *Iqbal* and *Twombley*.

   Paragraphs 21a-g (self-styled predicate acts) constitute nothing more than threadbare, conclusory allegations, with no descriptions of the contents of any of the e-mails. It is also unclear whether e-mail communications are applicable communications covered under mail and wire fraud statutes.

   Further, the plaintiff has not pled or alleged any of the elements of fraud as related to these alleged e-mail predicate acts, and with the degree of specificity required. *See, i.e., Williams v. Equity Holding Corporation*, 498 F.Supp. 2d 831, 842 (E.D. Va. 2007) (when mail or wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with particularity, pursuant to Rule 9(b)).

   Fundamentally, the Complaint completely fails to allege with the sufficiency required under *Iqbal* and *Twombley* the basic civil RICO elements and factors reviewed above. The plaintiff completely fails to plead the pattern requirement (other instances of similar illegal conduct), including the elements of relatedness and

10

continuity. The predicates must be related, and that they pose of threat of continued criminal activity. The criminal acts must similar purposes, results, victims, or methods of commission, or otherwise must be interrelated by distinguishing characteristics. *See Western Associates Limited Partnership,* 235 F.3d at 633.


To conclude, the plaintiff has failed to allege the basic elements of a civil RICO cause of action, and where the plaintiff has attempted to do so, the allegations are threadbare or conclusory.

### C. **CONCLUSION**

As the Court can see, the plaintiff apparently believes that this case must be filed in this Court. However, the plaintiff makes fundamental pleading errors and omissions, or otherwise attempts to shoehorn a civil RICO cause of action into a set of facts that can best be described as an individual, isolated commercial dispute about $73,000.00, at most.

Defendants Ghosh and Lezell respectfully submit that this Court should dismiss the action, with prejudice, or otherwise direct the plaintiff not to file this matter in this Court again.

In accordance with Local Rule 7(m), undersigned counsel attempted to confer with opposing counsel as to this Motion. The parties were unable to agree as to the issues raised in this Motion.

Respectfully submitted,


_____/s/_____
Peter L. Goldman, # 416622
O'REILLY & MARK, P.C.
524 King Street
Alexandria, Virginia 22314
(703) 684-6476 (o)
(703) 549-3335-8935 (f)
pgoldmanatty@aol.com
Counsel for Defendants
Ghosh and Lezell


## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2011, a copy of the foregoing Motion to Dismiss was sent via ECF, and was mailed, first class, postage prepaid, to: Randy McRae, Esq., 10640 Campus Way South, Suite 110, Landover, Maryland 20785.


_____/s/_____
Peter L. Goldman


12

2

3

USCA Case #15-7028    Document #1567800         Filed: 08/13/2015    Page 122 of 145

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Ying Qing "Lucy" Lu | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No.: 11-01815 |
| v. | ) | Judge  James  Boasberg |
| | ) | |
| Mark Lezell d/b/a Lezell Law, PC et al, | ) | |
|     Defendants, | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

By the instant Motion, on November 20, 2012, Defendant Mark Lezell d/b/a  Lezell Law

pursuant to Fed. R. Civ P 12(b)(1) and 12(b)(6),  moved  this Honorable Court to Dismiss

Plaintiff's complaint on the grounds that the Complaint: 1) lacks subject matter jurisdiction, and

2) fails to state claims upon which relief can be granted.   In response and Opposition, Plaintiff

submits this Memorandum and states as follows:

### ARGUMENT

**A.**   **Legal Standard for Motion to Dismiss under Rule 12(b)(1).**

It is well settled that the District Court Rules permit "dismissal of a claim only if,

construing the allegations in the Complaint in favor of the Plaintiff, it is beyond doubt that

Plaintiff can prove no set of facts that would justify relief".  On a motion to dismiss for lack of

subject matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the

plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. FED.

R. CIV. P. 12(b)(1); _Mostofi v. Napolitano_, 841 F. Supp. 2d 208, 210 (D.D.C. 2012) (citing

_Lujan v. Defenders of Wildlife_, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992));

_Kim v. United States_, 840 F. Supp. 2d 180, 184 (D.D.C. 2012); _Shekoyan v. Sibley Int'l Corp._,

217 F. Supp. 2d 59, 63 (D.D.C. 2002). As the Supreme Court has explained "many times," the

1

"district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); *see also Micei Int'l v. DOC*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) ("[T]wo things are necessary to create jurisdiction in an Article III tribunal other than the Supreme Court . . . The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it.") (internal citations and quotation marks omitted). For this reason, a "federal district court's initial obligation is to ascertain its subject matter jurisdiction." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 45 (D.D.C. 2009), *aff'd*, No. 10-cv-5015, 2010 U.S. App. LEXIS 13869 (D.C. Cir. July 6, 2010). When a court lacks subject matter jurisdiction, it must dismiss the case. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 48 (D.D.C. 2011); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

The Court must be assured that it is acting within the scope of its jurisdictional authority and therefore must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 67-68 (D.C. Cir. 2003); *Westberg v. FDIC*, 759 F. Supp. 2d 38, 41 n.1 (D.D.C. 2011); *Dubois v. Wash. Mut. Bank*, No. 09-cv-2176, 2010 U.S. Dist. LEXIS 91855, at *5 (D.D.C. Sept. 3, 2010); *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 135 (D.D.C. 2009); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001). In evaluating subject-matter jurisdiction, the Court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l*

*Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

**B.     Motion to Dismiss for Failure to State a Claim under 12(b)(6).**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "'merely consistent with' a defendant's liability," *id*. at 678 (quoting *Twombly*, 550 U.S. at 557); "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id*. (internal citation omitted); *accord Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). The Court "must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

Defendant Lezell, by the instant motion, with knowledge of this Court's ruling dated March 16, 2012, and in absence of his co-Defendant, Isam Ghosh, contend essentially, that even though this Court has already found sufficient jurisdiction, and although there has been no denial or dispute of the facts by the Co-Defendant  Ghosh; that this Court was wrong in earlier finding jurisdiction.  Further Defendant Lezell contends that, in looking at the Third Amended Complaint, there is no set of facts presented by Plaintiffs, which would entitle Plaintiffs to relief.

Defendant Lezell's contentions are misplaced.   Because Defendant Lezell has failed to challenge this Court's earlier finding of jurisdiction, because Defendant Ghosh has failed to deny or dispute his conduct in the facts alleged, and because the facts alleged by the multiple plaintiffs in this matter, if true, would entitle those Plaintiffs to relief, Defendant Lezell's Motion to Dismiss must be denied as a matter of law.

**C.**   **Defendant Lezell's Lack of Subject matter Jurisdiction, Paragraph A,  repeats almost verbatim Lezell's Opposition to Plaintiff's Motion for Leave which was earlier ruled on by this Court, thus warrants Defendant Lezell's Motion to Dismiss be denied.**

Plaintiff incorporates fully herein and by reference, all arguments, authorities cited, exhibits and references in "Plaintiff's Reply to Defendants Opposition to Plaintiff's Motion for Leave to File an Opposition to Defendants Motion to Dismiss". See Doc. 12 filed 02/09/12 herein.

In part 1 of Defendant Lezell's subject matter jurisdiction argument, he repeats almost verbatim, 1) the applicable standard [Def. Mot. page 2, para. #1 taken directly from Defendants Opposition to Plaintiff's Motion for Leave, pg 4 and pg 5].   Secondly, Defendant Lezell's Rico Conspiracy Cause argument [Def. Mot. page 3, para. #2 thru pg 4, pg 5 and pg 6, para. 1] repeat verbatim the earlier argument offered by Defendant Lezell in  his Opposition to Plaintiff's Motion For Leave, pg 5 thru pg 8.  The only added reference is made by Defendant Lezell in arguing that this Court lacks jurisdiction is a reference to this Court's ruling in the Bridges v. Lezell, matter.  The point here is that this Court has already looked at these verbatim arguments when reviewing Plaintiff's Motion for Leave, and has found these verbatim arguments to be unpersuasive.  See Doc No 14, Memorandum and Order, dated 3/16/12, herein.   As this Court earlier opined, 1) the allegations in this case are different from Bridges; 2) unlike Bridges, this is not a single scheme with a single injury to a single specified victim case; 3) in this case there is ample evidence of the threat of continued criminal activity, and lastly, 4) the existence of

4

multiple alleged victims and multiple alleged schemes distinguishes this case from other cases.

Memorandum Opinion, p. 8.  Defendant Lezell has not offered any newly discovered evidence,

additional facts, authorities or case law that would imply that this Court is in err.

**D.   Defendant Lezell's argument that the Afsharnia allegations are inadequately plead and reliance on the law of the Bridges case is erroneous.**

Defendants Lezell argues that: 1) Mr. Afsharnia is not identified by name; 2) Paras. 19 and

47 makes a fleeting reference to Mr. Afsharnia; 3) Paras. 33 and 34 alleges a default on a

confessed judgment to Mr. Afsharnia, thus the claims do not constitute "proper RICO pleading.

Defendant Lezell's arguments are not supported by the facts and evidence presented earlier

(attached to the Proposed Amended Complaint) and evidence submitted herewith attached at

Exhibits B and E.

Significantly, paragraph 33 and 34 laid out the acts perpetrated by Mr. Lezell and his partner

Defendant Sam Ghosh.  Included in the attached documents is a confessed judgment notarized

and signed by Isam Ghosh, and outlined of the deal papers, sent by Defendant Lezell, and signed

by Defendant Lezell, which attest to the transaction with Mr. Afsharnia.  Based on the attached

documents, signatures attested to, and failure by either Defendant Lezell or Defendant Ghosh to

dispute the transaction, it is beyond reasonable argument to suggest that Defendant Lezell was

not apart of a scheme to defraud Mr. Afsharnia.

**E.   Defendant Lezell's contention that the OSED allegations are inadequately plead flies in the face of the OSED affidavit.**

Defendant Lezell notes that allegations concerning the Oklahoma Shelf Exploration and

Development Corporation ("OSED") are contained in Third Amended Complaint para. 43  and

47.  Defendant Lezell then contends that the allegations are woefully inadequate for RICO

pleading.  Defendant Lezell's contentions are contractdicted by  the Shane Jackson (see affidavit

of Shane Jackson, President of OSED, attached to Plaintiffs Reply to Defendants Oppostion to

Plaintiff's Motion for Leave to File an Opposition to Motion to Dismiss).  In the sworn affidavit

Mr. Jackson makes clear that both Defendant Lezell and Defendant Ghosh engaged in conduct

and a scheme to defraud his group.  See Exhibit attached to Doc. 12.

**F.   Defendant Lezell's assertion that Plaintiff's claim is a single scheme/single injury/single victim claim is not consistent with the case record herein.**

   Defendant Lezell asserts that the vast majority of the allegations in the Third Amended

Complaint relate only to Ms. Lu' claims.  Thereafter, Defendant Lezell asserts that the

attachment documents were not included.  Lastly, Defendant Lezell asserts that this case is often

incomprehensible and inchoherent. (Defendant Lezell indicates that he has not received the

exhibits noted as attached to the previous filings. Exhibits A thru E are attached hereto).

Disparaging remarks aside, Defendant Lezell has not bothered to offer even a scintilla of

evidence to justify dismissal of this case and had not offered any legal authority, case law or

support of why, as escrow agent admittedly in receipt of funds from each of the noted Plaintiffs

and others, he should not be held liable, for at least a return of the funds received and accepted by

him, a then practicing attorney.  In the instant matter, based on the similar purposes for taking

Plaintiff's monies by Defendant Lezell, the variety of victims connected to Defendant Lezell, the

similar method by which Lezell and Ghosh perpetrated their schemes, and the continuing

potential for criminal activity, Defendant Lezell's Motion to Dismiss must be denied as a matter

of law. Accordingly, Defendants Motion to Dismiss on the basis of failure to plead a federal

question must be denied as a matter of law.  Corley v. Rosewood Care Ctr., Inc. of Peoria, 142

F.3d 1041, 1048 (9th. Cir. 1998).(continuity and relatedness established).

## CONCLUSION

   Where based on the foregoing discussion, and authorities cited, Plaintiff respectfully

submits that the Defendant' Motion should be denied.

Respectfully submitted,

__/s/_ Randy McRae_____
Randy McRae, Esq.  #430494
10640 Campus Way South, Ste. 110
Largo, Md.  20774
(202) 421-7983
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the __8th___ day of  January, 2013, a copy of  Plaintiff's Opposition to Defendant's Motion to Dismiss was mailed electronically  to:

Peter Goldman, 525 King Street, Alexandria, Virginia,  22314

_/s/  Randy McRae
Randy McRae

# EXHIBIT A

## OFFICE OF BAR COUNSEL

**LEZELL/ LU**
**Docket No. 2011-D290**

### DECLARATION OF ISAM GHOSH

I, Isam Ghosh, declare as follows:

1.     As Managing Member of Westin Development LLC ("Westin"), I caused to be borrowed Fifty Thousand Dollars ($50,000) from Lucy Lu in May 2008.

2.     By agreement of Westin and Lucy Lu, such loan proceeds were delivered to Mark L. Lezell for distribution as I directed.

3.     I authorized, directed and witnessed the payment of Eight Thousand Dollars ($8,000) of such loan proceeds by Mr. Lezell to Lucy Lu.

4.     I represent that Westin received the balance of such loan proceeds – Forty-Two Thousand Dollars ($42,000) - from Mr. Lezell

I declare that the foregoing is true and correct to the best of my knowledge and belief.

Executed: August 10, 2011

Isam Ghosh

# EXHIBIT B

3

Mark L. Lezell
Lezell Law, PC
1133 Connecticut Avenue, NW
Twelfth Floor
Washington, D.C. 20036

o 202-719-8930
f 202-719-8996
e 240-383-6285
mLezell@Lezell-law.com

May 22, 2008

VIA EMAIL: mak@albaneselaw.com

Mark S. Albanese, Esq.
Albanese & Associates, P.C.
4041 University Drive
Suite 301
Fairfax, Virginia 22030

Re: Isam Ghosh – Afshin Afsharnia

Dear Mr. Albanese:

On behalf of Mr. Isam Ghosh, this will confirm our telephone conversation this morning, as follows:

In furtherance of the funding commitment of Mr. Ghosh's Westin Development LLC, I am holding, in escrow, One Hundred Thirty Dollars ($130,000.00) to be paid and delivered to Mr. Ghosh upon the consummation of said commitment, which is anticipated to be completed this month.

With respect to the foregoing, I understand your client, Mr. Afshin Afsharnia, intends to wire transfer Fifty Thousand Dollars ($50,000.00) to my account to be delivered to Mr. Ghosh. In furtherance of same, please note attached wire transfer details.

If you have any questions or concerns as to this confirmatory letter, please don't hesitate to contact me. Best regards.

Lezell Law, PC

By: _____

Mark L. Lezell

cc: Mr. Isam Ghosh

132

# EXHIBIT C

## PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, WESTIN DEVELOPMENT LLC, a Virginia limited liability company (the "Maker"), promise to pay to the order of LUCY LU, her successors or assigns (the "Holder"), at such place as Holder may from time to time designate in writing, the total principal sum of Seventy-Three Thousand Dollars ($73,000), on or before June 13, 2008.

All payments hereon shall be payable in lawful money of the United States. If any payment hereunder becomes due and payable on a day that is not a business day in the District of Columbia, the relevant payment obligation shall be extended to the next business day. In the event that any payment is not actually received by Holder within ten (10) days of the date such payment is called for by Holder, Maker agree to pay a late charge equal to eighteen percent (18%) of the total amount of the delinquent payment. All payments received hereon shall be applied first to costs of collection, second to the payment of late charges and interest, if any, third to the reduction of the balance due. Except as expressly set forth herein, failure to make demand under this Note for any period of time shall not constitute a waiver of the right to do so at any subsequent time.

This Promissory Note may, at the option of Maker, be prepaid, in whole or in part, at any time. Any such prepayment shall be without premium or penalty but shall include the payment of accrued interest on the amount prepaid to and including the date of prepayment.

In the event of default in the timely payment of any installment of the principal sum hereof, the entire unpaid principal sum hereof shall thereupon immediately become and be due and payable.

Notwithstanding anything contained herein to the contrary, the unpaid principal sum of this Note, together with all accrued interest thereon, shall be accelerated and become immediately due and payable, without presentment for payment, demand, protest and notice of protest or any further notice or demand of any kind, all of which are hereby expressly waived, if any of the following events shall occur:

(1)  Maker makes an assignment for the benefit of creditors or admits in writing its inability to pay its debts generally as they as they become due;

(2)  Maker apply to any tribunal for the appointments of a custodian of any substantial part of their assets, or commences any proceedings relating to them under any bankruptcy, insolvency, reorganization or moratorium law or any other law for the relief of debtors of any jurisdiction;

(3)  any such application is filed, or any such proceedings are commenced, against Maker, and Maker indicates their approval, consent or acquiescence; or

(4)  a court of competent jurisdiction shall enter an order, judgment or decree appointing, without the consent of Maker, a custodian for the whole or substantially

134

all of Maker' property, or approving a petition filed against Maker seeking reorganization or arrangement of Maker under any bankruptcy or insolvency laws or any other law for the relief of debtors of any jurisdiction.

Notwithstanding the foregoing, and not in limitation of the foregoing, Holder shall have all and any other remedies available to it at law or in equity by reason of Maker' default hereunder.

Failure to exercise any option to accelerate the maturity of this Promissory Note or to foreclose, or the acceptance by Holder of partial payments or partial performance, shall not constitute a waiver of the right to exercise the same in the event of any subsequent Event of Default.

Maker promises to pay all costs of collection, including reasonable attorneys' fees, upon the occurrence of an event of default, whether suit is brought or not.

This Promissory Note may be amended only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

MAKER COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN, KNOWINGLY AND VOLUNTARILY BY THE MAKER AND THIS WAIVER IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A JURY TRIAL WOULD OTHERWISE ACCRUE.

This Note shall be governed by and construed under the laws of the District of Columbia and shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns.

> PRINCIPAL SUM OF THIS
> PROMISSORY NOTE :
> Seventy-Three Thousand Dollars ($73,000)

Date of Execution: May 29, 2008

IN WITNESS WHEREOF, the undersigned has caused this Promissory Note to be executed on the day and year first above written.

Westin Development, LLC

By: _____
Jean Ghosh, President





vmGINIA
. IN THE Cm.CUIJ COURT OF F AIRFAX COUNTY

YINGQINGLU
Aka LucyLu
    v.                        Case No. 2008-10418

ISAMGHOSH

### Default Judgment

Plaintiff filed a motion for default judgment under Va Sup CtR 2:8, and defendant

has failed to timely plead or otherwise defend that service of process on defendant was

proper and that this court has subject matter and territorial jurisdiction.

It is ordered that a default judgment be entered infav()rof:P~aihtiffYing Qiflg L'l

and against defendant Isam Gh~sh for $250,~()O.00plus interest at 12% from November

13,2006 until paid, $1450.00 attorney's fees and her costsexpelldedin this case.


Enter: _3/16/09_

_Jonath Mache_
           Judge


I ask for this:

~~U ~~

Counsel for Plaintiff
St~ti:~'tfA. Bamberger
1$ff9<?ld Bridge Road, Suite 2
Wpodbridge, VA 22192
703:~551-4979
VA:Bar # 34125

_Illanleien_
_03/18/09_

MEMORANDUM AND AGREEMENT

This memorandum and agreement is entered into between Ying Qing Lu, aka Lucy Lu (Lender) and Isam Ghosh (Borrower), this _____ day November, 2006.

The parties understand and agree as follows:

1.      Between 2005 and the date of this agreement, Lender has been lending money to Borrower, individually, and to various, corporations, LLCs, and other business entitites owned and/or controlled by Borrower.

2.      In order to evidence these loans, Borrower would issue checks to the Lender with the understanding and agreement that Lender would not cash the checks, but hold them as evidence of the loan.

3.      The parties further understand and agree that in addition to the checks issued by Borrower to Lender, Borrower also executed a promissory note on September 15, 2005, payable to Lender in the amount of $140,000.00, based upon a loan in September 2005 of $125,000.00.

4.      The parties understand and agree that not all loans made by Lender are evidenced by a check payable to Lender from Borrower, or the promissory note issued to Lender by Borrower.

5.      The parties understand and agree that the total amount owed by Borrower to Lender is two hundred fifty thousand dollars ($250,000.00) and Borrower has executed a promissory note to Lender for that amount this date.

6.      In partial payment of the amount owed, Borrower agrees to assign to Lender a promissory note held by Borrower from a third party.  The amount owed by the third party to the Borrower is $50,000.00.  When Lender receives payment for this note from the third party in the amount of $50,000.00, Lender shall credit Borrower for the payment and reduce the amount owed by $50,000.00, or the amount actually collected and received by Lender from the third party.

7.      The parties understand and agree that the Promissory Note dated September 15, 2005 executed by Borrower for Lender in the amount of $125,000.00 shall be cancelled and void as of the date that Borrower executes the new promissory note in the amount of $250,000.00

8.      By executing this Agreement, the parties herein agree and acknowledge that the checks issued by Borrower to Lender shall be considered null and void, and Lender shall not try to negotiate these checks and/or otherwise collect against these checks.

9.      The parties further understand and agree that all loans made by Lender to Borrower were for business purposes and were not personal loans made to Lender.

11-13-06                    1                    11-13-06

138

# EXHIBIT A 

3

## CONFESSED JUDGMENT NOTE

--------------------------------------------------------------------------------------------------

$70,000.00                                                    _____, Virginia

                                                             June ___ 2008

## IMPORTANT NOTICE THIS INSTRUMENT CONTAINS A CONFESSION OF

## JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT

## RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO

## OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

1.      **FOR VALUE RECEIVED**, We, the undersigned, (hereinafter referred to as the "Maker(s)" or "Borrower(s)") promise to pay to AFSHIN AFSHARNIA, ("hereinafter "Holder(s)" or "Lender(s)") or order, the principal sum of SEVENTY THOUSAND AND 00/100 DOLLARS ($70,000.00).  Said principal and interest shall be due and payable under the following terms identified in paragraph 2.

2.      This Note shall not bear interest and shall be due and payable on or before 30 days from the date herein.

3.      Borrower further promises to pay reasonable closing costs, attorney's fees, court costs, and any other expenses, losses, charges, damages, incurred, or advances made by Lender in the preparation of the loan documents, the protection of its rights, or caused by Borrower's default under the terms of the Note.

4.      Maker also agrees to pay all costs of collection, including reasonable attorney fees; and in the event the loan is not paid on or before the maturity date, there shall be late charges of 5%, and a $50.00 protest fee for any check returned "not paid" by the Bank.

5.      Prepayment Penalty:  No prepayment penalty

6.      Default in the payment of said principal, for a period of five (5) days after any of the same shall become due and payable; or deprivation of the premises secured by process or operation of law, or default in the performance of any of the other agreements or provisions in the deed of trust securing this note; or failure to keep said premises insured for the benefit and to the satisfaction of the Holder(s) of this note; or dissolution of the Maker(s); or the filing of any petition in bankruptcy; or if Maker(s) makes an assignment for the benefit of any creditor; or any other proceeding under the Federal Bankruptcy Act by the Maker(s); shall render the whole of this note due and payable at the option of the Holder(s) hereof, without necessity for demand and



notice. Upon acceleration by default or otherwise, before and after maturity, including after judgment, the Holder(s) shall be entitled to interest in the amount of 2% per month until paid.

7.    Failure by the Holder (s) hereof to declare a default shall not constitute a waiver of any subsequent default. Maker(s) further promise to pay reasonable attorney fees, court costs and any other expenses, losses, charges, damages incurred or advances made by Lender(s) under the terms of this Promissory Note.

8.    The terms of this Promissory Note shall not be varied, altered or modified except by a writing signed by the party to be charged.

9.    The Maker(s) and all parties hereto including sureties, guarantors and endorsers hereby waive presentment for payment, protest and notice of protest and non-payment of this Promissory Note, and consent that Lender(s) or Holder(s) hereof may from time to time extend the time for payment of any installment or any part thereof without releasing any sureties, guarantors, or endorsers or without notice to any of them. The parties heretofurther waive any relief whatsoever arising out of the evaluation, appraisement, exemption and Homestead Laws wherever applicable.

10.    No delay on the part of the Lender(s) in exercising any power or right under this Promissory Note shall operate as a waiver of the power or right, nor shall any single or partial exercise of any power or right preclude further exercise of that power or right. The rights and remedies specified in this Promissory Note are cumulative and not exclusive of any rights and remedies that Lender may otherwise possess.

11.    The provisions of this instrument are to be construed according to, and are to be governed by the Laws of the Commonwealth of Virginia.

12.    The Maker(s) herein agrees that any transfer of title of the premises securing this Note shall, at the option of the Holder(s) herein, its successors or assigns, immediately render this Note due and payable.

NOTICE:  THIS DEBT IS SUBJECT TO CALL IN FULL OR THE TERMS HEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY SECURING THIS DEBT, OR A BENEFICIAL INTEREST THEREIN.

13.    Reference in this Note to the Maker(s), endorser, guarantor and surety in the singular shall include the plural and should this note be signed by more than one Maker(s), all obligations contained herein shall be the joint and several obligation of each signatory.

**TO THE CLERK OF THE CIRCUIT COURT OF
FAIRFAX COUNTY, VIRGINIA,**

Greetings: Be it known to you Westin Development, LLC, a Virginia limited liability company and Isam Ghosh are justly indebted unto Afshin Afsharnia, in the sum of SEVENTY THOUSAND AND 00/100 DOLLARS ($70,000.00), as to which debt we hereby waive the benefit of the homestead and all other exemptions; and do hereby constitute and appoint MARK S. ALBANESE, attorney under the laws of the Commonwealth of Virginia, as our true and lawful attorney-in-fact and with full power and authority hereby given to appear before you in your said office and have him to confess judgment against us in favor of the payee of this note, or assigns, for said sum of money thereon from the 5th day of June, 2008, until paid, together with the costs of confessing and entering up said judgment; and I/we further agree to pay attorney's fees for the collection of said note in the amount of reasonable attorney fee, and for which I/we authorize said attorney-in-fact to confess judgment against us with waiver of the homestead and all other exemptions.

**Borrower hereby warrants and represents that the proceeds of this loan are for investment or commercial use within the provisions of 6.1330-75 of the Code of Virginia, as amended.**

[SIGNATURES TO FOLLOW]

Borrower:

Westin Development, L.L.C., a Virginia limited
liability company

By: Isam Ghosh, President

District of Columbia
~~COMMONWEALTH OF VIRGINIA AT LARGE~~
IN THE CITY/COUNTY OF _____, to-wit:

I, the undersigned Notary Public in and for the jurisdiction aforesaid, do hereby certify
that Isam Ghosh, Manager of Westin Development, L.L.C., a Virginia limited liability company,
whose name is signed to the foregoing bearing date on the __5th__ day of June, 2008 personally
appeared before me and acknowledged the same.

GIVEN under my hand and seal this __5th__ day of __June__, 2008.

Notary Public

My Commission Expires:
My Registration Number:

Alexis Y. Brown
Notary Public, District of Columbia
My Commission Expires 6/30/2011

143

Lezell Law, P.C.
1133 Connecticut Avenue, NW
Twelfth Floor
Washington, D.C. 20036

Mark L. Lezell
o-202-719-8930
f-202-719-8996
c-240-383-6285
mLezell@LezellLaw.com

June 20, 2008

VIA FEDX 703-385-8880

Mark Albanese, Esq.
Albanese 7 Associates, P.C.
4041 University Drive
Suite 301
Fairfax, Virginia 22030

Re: Afsharnia-Ghosh

Dear Mark:

As requested, enclosed please find the originally-executed copy of the following documents:

1.    Confessed Judgment Note

2.    Assignment of Funds

3.    Affidavit of Commercial Use

4.    Deed of Trust – Maryland

5.    Deed of Trust – Virginia.

Best regards.

Lezell Law, P.C.

By: _____
Mark L. Lezell

Guarantor:

_____

By:  Isam Ghosh

District of Columbia
~~COMMONWEALTH OF VIRGINIA AT LARGE~~
IN THE CITY/COUNTY OF _____, to-wit:

I, the undersigned Notary Public in and for the jurisdiction aforesaid, do hereby certify that Isam Ghosh, whose name is signed to the foregoing bearing date on the 5th day of June, 2008 personally appeared before me and acknowledged the same.

GIVEN under my hand and seal this 5th day of June , 2008.

_____
Notary Public

My Commission Expires:
My Registration Number:

Alexis Y. Brown
Notary Public, District of Columbia
My Commission Expires 6/30/2011

145